IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

                Plaintiff,

v.                                  CASE NO. 16-3222-SAC

LINDSEY WILDERMUTH, et al.,

                Defendants.

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 civil rights complaint.

**I. Nature of the Matter before the Court**

Plaintiff is an inmate at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. He is serving a sentence of life imprisonment (hard 25) for premeditated first degree murder. Mr. Sperry was previously housed at the Lansing Correctional Facility ("LCF") in Lansing, Kansas, but was transferred to EDCF as a result of his placement in administrative segregation. Mr. Sperry describes the nature of his case as follows: "In September 2015, prison officials started targeting plaintiff for mistreatment and retaliation. The KDOC has a system established where every member in the administration conspires with every other member to violate the constitutional and civil rights of plaintiff and every other inmate." ECF No. 25 at 4. He then goes on to bring ten (10) counts.[1] To summarize, Plaintiff claims: (1) he was illegally

---

[1] Plaintiff originally brought fourteen (14) counts, but Counts IV, IX, XIII, and XIV were severed as improperly joined, leaving Counts I, II, III, V, VI, VII, VIII, X, XI, and XII in this action.

placed in administrative segregation for 17 months; (2) he was held for just over two months in a cell infested with roaches; (3) he has been systematically prevented from getting an 8-hour period of continuous sleep since January 25, 2016; (4) Defendants have illegally seized two of Plaintiff's books, three periodicals, and one photograph; (5) he was denied access to the law library while he was held in administrative segregation; (6) and (7) some of Plaintiff's personal property, including some of his legal materials, was illegally seized; (8) none of the 25+ disciplinary hearings he has received have been fair, unbiased, or properly documented; (9) the prison grievance system is meaningless and manipulated by Defendants to automatically deny all relief and to create obstacles between prisoners and judicial review; and (10) he was denied all of his rights while housed in administrative segregation.

Mr. Sperry names 18 defendants and requests injunctive and declaratory relief, as well as compensatory and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding *in forma pauperis*, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. Discussion

The Court finds that some of Plaintiff's claims are subject to dismissal for failure to state a claim upon which relief may be granted.

#### A. Count II – "Inhumane Living Conditions"

In his second count, Plaintiff alleges that from September 23, 2015, until early December, 2015, after being placed in administrative segregation, he was housed in a portion of LCF that was infested with cockroaches. He states that "[a]nywhere from 3 to 20 roaches could be observed crawling across" the cell at any given time and "[e]very single night [he] was awakened by roaches crawling over his body." He filed Form-9s and grievances about the roaches. Defendant Wildermuth responded that an exterminator sprays regularly but it doesn't do any good. Plaintiff states Defendant Wildermuth "finally" moved him after more than ten weeks. Plaintiff also states

that Defendants Pryor, Burris, Goddard, and Roberts failed to take any corrective measures to eradicate the roaches.

Plaintiff alleges that his exposure to roach infested cells violates the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment. *See* U.S. Const. amend. VIII. To be considered cruel and unusual, a condition of confinement must: 1) be grossly disproportionate to the severity of the crime warranting punishment, 2) involve the wanton and unnecessary infliction of pain, or 3) deprive an inmate of the minimal civilized measure of life's necessities. *See Rhodes v. Chapman,* 452 U.S. 337, 346–47 (1981). Under the Eighth Amendment, prisons are required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

"An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency" claimed. *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes,* 452 U.S. at 347). "Alternatively, a condition must be sufficiently serious so as [to] constitute a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993)). "The subjective component requires that a . . . prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). The subjective component is met if the prisoner shows the defendants

"knew he faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)). "[T]he Eighth Amendment requires only 'reasonable safety,'" so that "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide,* 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer,* 511 U.S. at 844–45).

Plaintiff has not stated a claim for a constitutionally inadequate condition of confinement. He has not alleged a condition that is sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or sufficiently serious so as to constitute a substantial risk of serious harm. The condition Plaintiff describes, while unsavory, does not reach this threshold.

However, even if Plaintiff's allegations were found to meet the objective component, they do not meet the subjective one. To meet the subjective component, Plaintiff must allege the defendants acted with deliberate indifference. This he has not done. His allegations show that an exterminator was treating the unit regularly. Prison officials were taking reasonable measures to abate the condition. *See Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992) (insect infestation may violate Eighth Amendment, but court would not intervene where the problem addressed by monthly treatment); *see also Shannon v. Graves*, No. 98-3395-KHV, 2000 WL 206315, *9 (D. Kan. Jan. 5, 2000). Count II is subject to dismissal.

**B. Count III – "Sleep Deprivation"**

In Count III, Plaintiff complains of two conditions at EDCF that result in depriving him of sleep. First, he states that the staff at EDCF "purposely awaken every inmate every few hours to assure that his sleep is disrupted." ECF Doc. 25, at 9. Plaintiff then provides the schedule:

6

| | |
|---|---|
| 00:00 – 03:00 | Cleaning crew in the unit. |
| 02:00 – 03:00 | Sheet exchange, sweat turn in, blanket exchange. |
| 04:00 – 04:30 | Breakfast served. |
| 05:00 – 05:30 | Breakfast trays collected. |
| 06:30 – 08:30 | Yard, cell cleaning, or barber |
| 06:30 – 08:30 | Ice passed out. |
| 10:30 – 11:00 | Lunch served. |
| 12:00 – 14:00 | Unit Team and Mental Health counselors make rounds. |
| 14:30 – 16:30 | Showers. |
| 17:00 – 17:30 | Dinner served. |
| 17:30 – 18:00 | Dinner trays collected. |
| 18:00 – 22:00 | Sheets, sweats, blankets, toilet paper passed out. |
| 22:30 – 23:00 | Standing I.D. count. |

The second condition Plaintiff complains of is a fluorescent night light in his cell that shines 24 hours a day.

Plaintiff claims he should be allowed an 8-hour block of time to get continuous sleep. He alleges this "[c]onsistent and extended sleep deprivation or interruption" has caused him to lose weight, made him irritable, causes extreme stress, exacerbates his Hepatitis-C infection, caused diabetes, and causes inflammation of his joints.

Plaintiff states he submitted several Form-9s and grievances to Defendants Patterson, Jackson, Heimgartner, Burris, Goddard, and Roberts, but "they refused to take any corrective measures." Plaintiff claims these defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He also alleges the named defendants conspired to violate his civil rights by "failing to prevent or correct the sleep deprivation."

To be properly named as a defendant in a § 1983 action, a person must personally participate in the alleged violation of constitutional rights. *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions,

7

has violated the Constitution."). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). It is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

None of the defendants Plaintiff names are proper. Plaintiff does not make a single allegation that any of the named defendants personally participated in the alleged violation, other than responding to grievances. Plaintiff does not claim any of these defendants created the schedule or any facts pointing to a conspiracy directed at Plaintiff to deprive him of sleep. The schedule he provides was presumably applicable to all inmates.

Further, Plaintiff's allegations do not demonstrate that he has been deprived of the minimal civilized measure of life's necessities. *See Chrisco v. Raemisch*, No. 17-CV-01036-PAB-MEH, 2018 WL 949319, at *11 (D. Colo. Feb. 20, 2018) (finding awakening prisoner three or four times a night to perform restraint checks was not sufficient to show deprivation of the "minimal civilized measure of life's necessities"); *Silverstein v. Fed. Bureau of Prisons*, No. 07–cv–02471–PAB–KMT, 2011 WL 4552540, at *18 (D. Colo. Sept. 30, 2011) (finding that conditions where a prisoner was able to get 4–5 hours of sleep "do[ ] not objectively amount to a serious deprivation of the basic human need for sleep"); *Walton v. Grounds*, No. SA–10–CA–60–NSN, 2011 WL 632842, at *2 (W.D. Tex. Feb. 11, 2011) (finding "intermittent disruptions" to a prisoner's sleep

insufficient to state an Eighth Amendment claim without injury); *Blakely v. Snively*, No. C07–1803RAJ, 2008 WL 4643831, at *6–7 (W.D. Wash. Oct. 17, 2008) (finding conditions where an inmate heard an hourly "vibrating bang" from a security door during his sleep not "sufficiently serious" to state and Eighth Amendment claim).

Plaintiff's allegations also do not show a condition sufficiently serious so as to constitute a substantial risk of serious harm to Plaintiff. Plaintiff supplies only a conclusory list of alleged harms.

Count III is subject to dismissal.

**C. Count VII – Seizure of Personal Property - Racketeering**

Plaintiff alleges as one of his claims in Count VII that Defendants "are operating a racket of selling him property that they later come and illegally seize just so they can sell him more stuff." He claims Defendants' actions constitute a "clear violation of commerce laws and the RICO act." This claim is subject to dismissal. The Court finds no factual support for Plaintiff's claim of racketeering. Among other things, Plaintiff fails to allege he has been "injured in his business or property by reason of" the alleged violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c); *see also Peterson v. Shanks*, 149 F. 3d 1140, 1145 (10th Cir. 1998) ("A private RICO claim can only be brought by a plaintiff claiming a personal injury arising from the use or investment of racketeering income."). Plaintiff fails to state an actionable civil RICO claim.

**D. Count VIII – Seizure or Loss of Personal Property**

Plaintiff alleges he lost several books and a fan when he was taken to segregation at LCF. He further alleges several of his legal manuals and a book manuscript were seized when he complained of the property loss. Plaintiff also claims his laundry bag containing several articles

of clothing was lost. He filed property claims for all of the lost or seized property, which were denied.

A negligent or intentional deprivation of property under color of state law is not cognizable as a cause of action under § 1983 if the plaintiff has adequate state remedies. *Hudson v. Palmer*, 468 U.S. 517, 532-34 (1984); *see also Gillihan v. Schillinger*, 872 F.2d 935, 939 (10th Cir. 1989), *overruled on other grounds by Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010). Plaintiff had post-deprivation remedies in the form of the prison property claim process, which he utilized. The fact that his claims were denied, standing alone, does not demonstrate a violation of due process. In addition, Plaintiff has not suggested that the state courts provided no meaningful post-deprivation remedy, such as a tort action under state law. *See Scott v. Case Manager Owens (SCF)*, 80 F. App'x 640, 643 (10th Cir. 2003) (citing *see Hudson*, 468 U.S. at 532–34; *Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures.")). The Court concludes that Plaintiff has failed to state an arguable claim for relief with regard to the taking of his property, and that this claim is subject to dismissal.

### E. Count X – Unfair Disciplinary Proceedings Generally

Plaintiff claims Defendants have failed to give him fair, unbiased, and properly documented disciplinary hearings. In other words, he appears to be challenging the procedures used in disciplinary hearings, not the validity of a particular disciplinary conviction. He claims violation of his Fourteenth Amendment right to due process and First Amendment right of access to the courts, as well as state law violations.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones,* 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to

prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Disciplinary actions implicate a liberty interest entitled to procedural due process protection only when they inevitably affect the duration of the prisoner's sentence. *Sandin v. Conner,* 515 U.S. 472, 484, 487 (1995); *Klein v. McClaury*, 221 F.3d 1352 (10th Cir. 2000) (Table).

While he makes many broad, conclusory statements about disciplinary hearings in Kansas prisons, Plaintiff only briefly mentions four specific disciplinary hearings. One occurred in 2012, well outside the limitation period of two years. *See Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008); Kan. Stat. Ann. § 60–513(a)(4). The other three, according to Plaintiff's allegations, apparently did not affect the duration of his sentence. Consequently, he was not entitled to due process under the Fourteenth Amendment.

As for Mr. Sperry's First Amendment claim, the right of access to the courts is not implicated by his allegations of deficient process in disciplinary hearings. Constitutional standards are satisfied if inmates are given "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Count X of the complaint fails to state a claim and is subject to dismissal.

### F. Count XI – Prison Grievance System is "Meaningless Mockery"

Plaintiff alleges that he has filed over a hundred grievances and has assisted other inmates with thousands more grievances and "not a single time has the proceeding resulted in a finding in favor of the inmate." He claims the grievance system is a "sham" and a "mockery that serves no purpose other than to prevent inmates from receiving relief from abuses" by prison staff.

Even if Mr. Sperry alleged more than conclusory statements to support his general claims of grievance mishandling, the Court would find that he states no constitutional claim. This is because a prison inmate has no federal constitutional right to a prison grievance procedure. *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished). It therefore follows that he has no constitutional right to relief through such a procedure. For these reasons, allegations that "KDOC administrators" manipulated the grievance procedure to "automatically deny all relief" and to "create multiple obstacles" and "delay relief indefinitely" do not rise to the level of a federal constitutional claim. *See Walters v. Corrections Corp. of America,* 119 F. App'x 190, 191 (10th Cir. 2004) (unpublished) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), *cert. denied,* 546 U.S. 865 (2005); *Sims v. Miller,* 5 F. App'x 825, 828 (10th Cir. 2001) (unpublished) ("[I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance procedures, he failed to allege the violation of a federal constitutional right."); *see also Walker v. Mich. Dept. of Corrections,* 128 F. App'x 441, 445 (6th Cir. 2005) (unpublished) (collecting cases).

Plaintiff claims that Defendants have denied him access to the courts by "making a meaningless mockery out of the prison grievance system." However, to state a denial of access claim, Plaintiff must demonstrate that the act of which he complains actually "hindered his efforts

to pursue a legal claim" in court and thus caused him "actual injury." *Lewis v. Casey,* 518 U.S. 343, 348, 350 (1996). Plaintiff has not alleged any actual prejudice to contemplated or existing litigation, such as the inability to meet a particular filing deadline or that a non-frivolous legal claim has otherwise been dismissed, frustrated, or impeded. *Id.* at 350, 353. Thus, he has not alleged facts showing this essential element of a denial of access claim.

Count XI is subject to dismissal.

### G. State Law Claims

In each of the five counts discussed above, Plaintiff includes conclusory claims of violations of Kansas law. Alleged violations of state law do not state a claim of federal constitutional violation and are not a proper basis for a federal civil rights complaint. Thus, Plaintiff's claims that Kansas statutes, regulations, or common law have been violated do not entitle him to relief under § 1983. Moreover, the Court must dismiss claims based on vague or conclusory allegations, because the Court is not a *pro se* party's advocate. *See Hall,* 935 F.3d at 1110. Although Plaintiff's complaint must be construed liberally, the Court will not construct legal arguments for a *pro se* litigant. *See Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005).

The Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. However, supplemental jurisdiction is dependent on the Court having a basis for original jurisdiction. Since the Court finds that Plaintiff's claims of violation of federal law in Counts II, III, VIII, X, XI, and the RICO claim in Count VII are subject to dismissal, the Court declines at this point to exercise supplemental jurisdiction over Plaintiff's state law claims associated with those counts.

**IV. Response Required**

For the reasons stated herein, it appears that portions of Plaintiff's complaint are subject to dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why Counts II, III, VIII, X, XI, and the RICO claim in Count VII of his complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the aforementioned portions of his complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **November 16, 2018**, in which to show good cause, in writing, why Counts II, III, VIII, X, XI, and the RICO claim in Count VII of his complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

DATED: This 16th day of October, 2018, at Topeka, Kansas.

**s/ Sam A. Crow**
**SAM A. CROW**
**U.S. Senior District Judge**