Sherri Price, Legal Counsel, SC #16485
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66048
Telephone: (913) 727-3235 x58277

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JEFFREY J. SPERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 16-3222-SAC |
| **LINDSEY WILDERMUTH, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## REPORT IN "MARTINEZ v. AARON" INVESTIGATION
## CIVIL RIGHTS COMPLAINT

On November 7, 2016, Plaintiff Jeffrey J. Sperry, an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas, filed an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the District of Kansas. Plaintiff filed an amended complaint on November 28, 2017 which contained allegations of multiple civil rights violations. Plaintiff named Linsdey Wildermuth, Raymond Roberts, Johnnie Goddard, Douglas Burris, Bill Shipman, Rex Pryor, Colette Winkelbauer, Andrew Lucht, Christopher Ross, Kevin Bosch, disciplinary hearing officer Hunt, K. Lee, James Heimgartner, Robert Sapien, Phillip Patterson, Larry Hoshaw, Daniel Jakcson, and Hannah Booth in their individual and official capacities as defendants.

On May 7, 2019, the Court ordered the preparation of a *Martinez v. Aaron* report by the Kansas Department of Corrections (KDOC) with regard to the allegations set forth by Plaintiff in Counts I, II, III, V, VI, VII, VIII, X, XI and XII. The court summarized Plaintiff's charges as

(1) Illegally placed in administrative segregation for 17 months;

(2) Held for just over two months in a cell infested with roaches;

(3) Systematically prevented from getting an 8 hour period of sleep since January 25, 2016;

(4) Illegal seizure of two of Plaintiff's books, three periodicals and one photograph;

(5) Denied access to the law library while held in administrative segregation;

(6) -- (7)  Illegal seizure of some of Plaintiff's personal property including some of his legal materials;

(8) None of the 25+ disciplinary hearings involving Plaintiff were fair, unbiased or properly documented;

(9) Prison grievance system is meaningless and manipulated by Defendant to automatically deny all relief and to create obstacles between prisoners and judicial review;

(10)    Denial of all rights while housed in administrative segregation.

These alleged violations occurred at Lansing Correctional Facility (LCF) and El Dorado Correctional Facility (EDCF).

Jeffrey J. Sperry is an inmate who has been in the custody of the Secretary of Corrections since March 19, 1997 serving an off grid sentence for murder in the first degree. He was housed at LCF from October 10, 1997 to January 22, 2016 when he was transferred to EDCF. *See* Exhibit A (KASPER Profile for Jeffrey J. Sperry).

**A. Placement in Administrative Segregation (Count I)**

Plaintiff was initially placed in segregation for prehearing detention on September 23, 2015 after he was issued a disciplinary report for dangerous contraband. *See* Exhibit B (Administrative Segregation Report 01-16-0683).

On October 23, 2015, Plaintiff was classified by the Segregation Review Board as Other Security Risk (OSR) and was placed in administrative segregation. *See* Exhibit C (Administrative Segregation Review dated October 23, 2015).

An administrative segregation report was completed on October 30, 2015 which set forth the facts in support of this classification. The report was authored by Defendant Wildermuth and the classification was authorized and approved by Deputy Warden Winkelbauer. A copy of the report was provided to Plaintiff on November 4, 2015. *See* Exhibit D (Administrative Segregation Report 01-16-1000).

Case management and custody determinations are governed by Internal Management Policy and Procedure (IMPP) 11-206. In addition to regularly scheduled case management reviews, an inmate's custody must be reviewed when circumstances so warrant such as a change in special management status. *See* Exhibit E (IMPP 11-206) at III.B.2. The appeal process to challenge a custody classification requires an

offender submit a form 9 to the warden through the unit team counselor within 72 hours after receiving the custody classification decision.  If the warden did not participate in the custody classification decision, then the warden reviews the decision and the offender's written appeal and returns a written response to the offender.  The warden's decision is considered final.  IMPP 11-206 (Ex. E) at III.B.3.

Rather than follow this process, Plaintiff filed a grievance on October 6, 2015. He was notified in the responses provided to the grievance by Defendants Wildermuth, Pryor and Burris that this was not the appropriate process.   All responses cited the specific prohibition in K.A.R. 44-15-1012 of using the grievance procedure as a substitute for the classification decision making process. The final response from Defendant Burris was sent to Plaintiff nearly a week before the administrative segregation report changing his classification to OSR was served on Plaintiff.  *See* Exhibit F (Invalid Grievance dated October 6, 2015).

Plaintiff did not file an appeal of this classification with the warden as required by IMPP 11-106.  *See* Exhibit G (Affidavit of Brett Peterson).

On March 10, 2017, Plaintiff was released from administrative segregation to complete the behavior modification program.  *See* Exhibit H (Administrative Segregation Review dated March 10, 2017).

### B. Roach infested Cell (Count 2)

Plaintiff complains that the cellhouse at LCF where he was housed from September 23, 2015 to December 2015 was infested with roaches.  Plaintiff claims

cockroaches were visible in the cellhouse and that he was awakened nightly by roaches crawling over his body. He alleges he was kept in this cellhouse as "part of a continuing conspiracy to violate Plaintiff's civil rights and subject him to tortious acts."

On September 30, 2015, Plaintiff filed a grievance claiming the cells in which he had been housed in C-1 Cellhouse were infested with roaches. He made no specific allegations other than to claim "roaches transmit diseases and epitomize the filthy conditions." The response, authored by Defendant Wildermuth, stated that cellhouse had been sprayed for bugs in September and again on October 1, 2015 and that the facility was sprayed monthly by the provider.

Plaintiff appealed this response to the warden who took no further action, finding that the response by Defendant Wildermuth was appropriate. Plaintiff's appeal to the Secretary of Corrections was denied and no further action was taken, finding that the response rendered by the facility staff was appropriate. *See* Exhibit I (Grievance No. AA20160105).

### C.  Sleep Deprivation (Count 3)

Plaintiff claims that staff at EDCF "purposely awaken every inmate every few hours to assure that his sleep is disrupted." He alleges that "this has caused [him] to lose weight, made him irritable, caused extreme stress, and exacerbates his untreated Hepatitis-C infection and caused onset diabetes, and cases inflammation of his joints."

Plaintiff filed a grievance on February 23, 2016 requesting that "EDCF establish an 8 hour block of time at night for me…to get a proper, uninterrupted nights sleep." He

alleged that between standing count at 10:30 p.m. to breakfast at 4:00 a.m., tray pick-up at 4:30 a.m., yard at 6:30 a.m., lunch at 10:30 a.m., standing count at 3:30 p.m., dinner at 4:45 p.m. and count at 9:00 p.m., he was unable to get "proper sleep." He claimed that, as a result, he was "tired all the time", suffering the symptoms of diabetes, exacerbation of his Hepatitis-C infection and insufficient energy to properly exercise. He also asserted he was stressed and irritable, unable to focus on his business and legal work. Plaintiff also acknowledged that all inmates - not just him - were being deprived of proper sleep.

Defendant Jackson responded to this grievance indicated that the policies and procedures were drafted and approved by the facility warden and were in line with all state and federal laws and furthermore there was no evidence that offenders were sleep deprived as a result of the facilities schedule.

Plaintiff appealed this response to the Warden, who found that no further action was necessary based on the review of Defendant Jackson's response. Plaintiff than appealed to the Secretary of Corrections who found the staff response was appropriate. *See* Exhibit J (Grievance no. CA00019921).

In his amended complaint, Plaintiff alleges further interruptions in his daily schedule including cleaning crews, sheet, sweats and blanket exchange, unit team and mental health counselor rounds, showers and passing out of supply items which interfere with his sleep and also makes reference to fluorescent night lights – none of which were addressed in the grievance.

There is no evidence in Plaintiff's medical records of a complaint regarding a lack of sleep or any impact of his health as the result of his alleged lack of sleep. No evidence of weight loss during this period and no mention of diabetes. Plaintiff attributed the joint pain – which he admitted to having for a long time – to athletics and playing sports while in school. There is no record of any reports of irritability or extreme stress which Plaintiff could have easily discussed with the mental health personnel who would visit his cell weekly.  *See* Exhibit K (Medical Records -- September 23, 2015 to March 30, 2017).

### D. Censorship of books, publication and photos (count 5)

Plaintiff claims that Defendants seized and censored his publications, books and photographs in retaliation for his complaints and litigation, conspired to violate his First and Fourteenth Amendment rights, and committed numerous tortious acts.

All publications received by mail for intended delivery to inmates are reviewed and, on an individual basis for each publication, a decision is made to either allow such publication within KDOC facilities or to censor and deny delivery of certain publications based upon the criteria set forth in K.A.R. 44-12-313 and 44-12-601.  Any decision to allow or censor a publication applies to all departmental facilities.  The censorship decision may be appealed by an inmate to the Secretary of Corrections or his designee. *See* Exhibit L (IMPP 12-134/IMPP 12-134A).

Incoming or outgoing mail, other than legal, official or privileged mail, may be censored when there is a reasonable belief that

(1) there is a threat to institutional safety, order, or security or
(2) there is a threat to the safety and security of public officials or the general public;
(3) the mail is being used in furtherance of illegal activities;
(4) the mail is unauthorized correspondence between offenders, including former inmates;
(5) the mail contains sexually explicit material.

K.A.R. 44-12-601(d)(1).   Sexually explicit materials contain nudity or contain any display, actual or simulated or any description of sexual intercourse or sodomy, masturbation, bestiality or sadomasochistic abuse if the purpose of the material is sexual arousal or gratification.  K.A.R. 44-12-313.

The inmate addressee of a censored publication must make disposition of the censored publication materials at the inmate's expense by either sending the publication to a location of his/her choosing, at his/her expense or having the publication destroyed. If the inmate refuses or fails to make disposition of the publication within 30 calendar days of the final action regarding the publication, the publication shall be destroyed. IMPP 12-134 (Ex. L) at VI.

    1) *Full Blast* by Janet Evanovich

Plaintiff alleges the book, *Full Blast*, was censored in April of 2014.  He asserts that there was no basis for the censorship which he alleges "has absolutely no graphic sex scenes."  The book was censored on the grounds that it met the criteria for sexually explicit material as set out in K.A.R. 44-12-313.  *See* Exhibit M (Notification of Publication Seizure/Censorship – *Full Blast* by Evanovich).

Plaintiff claims that he appealed the censorship of this book but there is no record of such an appeal.  *See* Exhibit N (Affidavit of Doug Burris) at ¶ 3.

    2)  *US Weekly (December 21, 2015 issue)*

On December 14, 2015, Plaintiff was sent a notice that the December 21, 2015 issue of US Weekly had been rejected because the magazine posed a threat to the safety and security of the facility due to the inclusion of drink recipes.

Plaintiff appealed the censorship.  Rather than choose one of the disposition options provided by the regulation, Plaintiff requested that the item be retained for court action.  In his appeal, Plaintiff claimed the censorship was absurd and unjust but did not claim any retaliation or conspiracy.

On December 28, 2015, his appeal was denied.  Defendant Burris indicated that the departmental mail review officer withheld the publication due to content that met the description of sexually explicit material and due to content that met the criteria for censorship of mail.  Defendant Burris found that the response rendered by the mail review officer was appropriate and supported by the evidence submitted.  *See* Exhibit O (Appeal of Censored Material (US Weekly Dec. 21st)).

    3)  *WIRED (Jan. 2016 issue)*

On January 6, 2016, notification was sent to Plaintiff that the January 2016 issue of Wired magazine had been rejected because the contents posed a threat to the safety and security of the facility in that it contained information and direction for constructing a weapon.

On January 7, 2016, Plaintiff filed a protest of mail censorship challenging the basis for censorship and denied that the magazine posed a threat to the facility. Plaintiff made no mention of retaliation nor any reference to a conspiracy to deprive him of his constitutional rights. Plaintiff did not choose one of the designated dispositions for magazine but instead wrote that "I'm not paying for illegal censorship and this magazine will become evidence in my lawsuit if it is not returned to me."

Plaintiff's protest was denied by Defendant Burris who found that the mail review officer's response was appropriate and was supported by the evidence presented. *See* Exhibit P (Appeal of Censored Material (Wired January 2016)).

4) <u>WIRED (April 2016 issue)</u>

The April 2016 issue of Wired magazine was censored because it included content to incite violent behavior. Plaintiff appealed the censorship claiming it was arbitrary and unjustified. Plaintiff made no mention of retaliation or any type of conspiracy.

The appeal was denied on April 21, 2016. Defendant Burris found that the response rendered by the mail review officer was appropriate and supported by the evidence presented. *See* Exhibit Q (Appeal of Censored Material (Wired April 2016)).

5) <u>Sexually Explicit Photos</u>

On April 8, 2016, Plaintiff was sent a notice of mail censorship on the basis that the item contained sexually explicit materials. The items were held in the facility mailroom pending disposition and/or protest instructions. The notice, completed by

Defendant Sapien, indicated that if a protest was not received within 15 business days of the notice, the material would be disposed of pursuant to K.A.R. 44-5-111.

Plaintiff filed a protest on April 11, 2016 claiming that the censorship was arbitrary and baseless, was done in retaliation for his requesting names for civil action and that the regulation was unconstitutional. He requested that the material be mailed to the Butler County District Court if his protest was not granted.

The protest was denied by Defendant Burris on May 25, 2016.  *See* Exhibit R (Notice of Mail Censorship (April 8, 2016)).

6) *The Target* by David Baldacci

On May 24, 2016, Plaintiff was sent a notification of seizure/censorship for *The Target* by David Baldacci.  The notification, signed by Defendant Shipman, indicated that it had been censored because of content that posed a threat to the safety and security of the facilities.

Plaintiff appealed this censorship claiming it was "B.S." and argued that there was absolutely nothing that could be considered a threat to the safety and security of correctional facilities. He alleged the censors were incompetent and were making arbitrary and unconstitutional decisions that violated his constitutional and property rights.  Plaintiff requested that the book be mailed to the Butler County District Court if his appeal was denied.

Defendant Burris denied the appeal on June 13, 2016. He found the response rendered by the mail review officer was appropriate and supported by the evidence presented. *See* Exhibit S (Appeal of Censored Material (The Target by Baldacci)).

### E. Access to Law Library (Count 6)

Plaintiff claims that his access to the law library was denied or interfered with in retaliation for litigation against the KDOC and staff.

EDCF General Orders provides that offenders on restriction status may access the legal reference library by form 9 request. Segregation offenders request legal reference materials by submitting a form 9 to the librarian or by submitting specific legal materials requests to their unit team for clarification when presented to the librarian. Legal clerks are assigned by the librarian to attempt to find requested material if the request is specific enough to identify the material needed. *See* Exhibit T (EDCF General Order 14-101).

On May 5, 2016, plaintiff filed a grievance claiming he needed access to the law library for two hours at least three times a week. He complained that the inmates working in the law library were not properly trained and could not perform the legal research he needed in a timely manner. He indicated that it took four to five days to receive a response to his request to the library making it impractical to complete the necessary research in the time frames set by the court.

Defendant Jackson responded to the grievance stating that the facility was unable to grant Plaintiff the access he requested because he was housed in restrictive

housing on OSR status.  The facility was unable to permit him to physically go to the law library as it would jeopardize the safety and security of staff and other offenders. Defendant Jackson also indicated the access to the law library currently granted to Plaintiff complied with the facilities policies and procedure.  Defendant Jackson urged plaintiff to request assistance from inmate legal services if needed because offenders working in the law library count not assist or offer advice to plaintiff other than printing the cases he requested.

Plaintiff appealed this response to the warden and the Secretary of Corrections who both upheld Defendant Jackson's response.  *See* Exhibit U (Grievance No. CA00020020).

### F. Seizure of Personal Property (Count 7 and 8)

Plaintiff makes numerous claims in count 7 regarding property loss or seizure. Plaintiff first claims that, in September of 2015, upon being transferred to segregation, he was only allowed to retain immediate possession of half of his property. The remainder was sent to property in an alleged arbitrary division of property that violated department policy and included a large majority of his legal property. Plaintiff admits that his property exceeded his limits set by department policy. He alleges he filed a grievance regarding this issue which was denied but there is no record of any such grievance.  Burris Affidavit, Ex. N at ¶ 4.

Plaintiff then asserts, upon his transfer to EDCF in January of 2016, he was required to reduce his property to the levels set by department policy. He did so but

refused to sign any documents related to the disposition of excess property. He alleges he filed grievances and property claims regarding this issue but there is no record of any grievance regarding this issue or of any property claim for a loss that occurred in January of 2016.  Burris Affidavit, Ex. N at ¶¶ 4-5.

He also claims that Defendant Heimgartner issued a memo permitting him to exceed the legal property limit by storing the boxes in property but that Defendants Hoshaw, Patterson and Jackson refused to provide him access to the documents as he needed.  Such an exception was granted in May of 2016 by Deputy Warden Donley permitting Plaintiff under certain circumstances to keep limited excess legal work.  *See* Exhibit V (Memorandum dated May 27, 2016).  There is no record, however, of any grievance regarding this issue.  Burris Affidavit, Ex. N at ¶ 4.

Finally, plaintiff asserts that the defendants seized and destroyed his property for malicious, vindictive and retaliatory purposes as part of an ongoing conspiracy to violate his rights. There is no evidence that plaintiff filed any grievance raising this issue.  Burris Affidavit, Ex. N at ¶ 4.

In Count 8, Plaintiff claims that defendants Roberts, Goddard, Burris, Pryor and Ross unlawfully seized or lost his personal property in September and November of 2015.  It appears that property claims were filed for losses alleged to have occurred on September 23, 2015 ($150.00) and November 13, 2015 ($25.00).  Burris Affidavit, Ex. N at ¶ 6. Documentation with regard to these claims, however, no longer exists as these

documents were destroyed in 2018 in compliance with departmental document retention policies.  *See* Exhibit W (Affidavit of Chris Ross).

### G. Disciplinary Hearing (Count 10)

Plaintiff complains that defendants Roberts, Goddard, Pryor, Hunt and Bosch violated his constitutional rights and committed state torts by failing to provide "fair, unbiased and properly documented disciplinary hearings."

Plaintiff refers specifically to cases handled by Defendant Bosch in December of 2014 and July of 2015.  Plaintiff pled no contest to the charges in the cases from December and waived a number of his rights by doing so.  He specifically acknowledged that no promises, threats or inducements had been made to him in exchange for his pleas.  *See* Exhibit X (Disposition and Hearing Record Case nos. 2056 and 4321).  Despite the limited right of appeal in cases in which an offender pleads guilty or no contest, Plaintiff filed no appeal with regard to these cases.  *See* Exhibit Y (Affidavit of Chris Hunt).

Contrary to Plaintiff's assertion, he plead not guilty in the July case and a hearing was held.  Plaintiff received disciplinary segregation and privilege restrictions as sanctions and filed an appeal but made no mention of the strong arming or bias by Defendant Bosch as he now alleges in his complaint in this action.  *See* Exhibit Z (Disposition and Hearing Record Case no. 298 with Appeal to the Secretary).

In the June 2014 disciplinary case, Plaintiff plead not guilty and a hearing was held at which Plaintiff fully participated.  Sanctions included disciplinary segregation and

restriction on privileges. *See* Exhibit AA (Disposition and Hearing Records Case no. 4798). Plaintiff did not file any appeal regarding this disciplinary action. Hunt Affidavit, Ex. Y.

Plaintiff attempted to file grievances raising this issue in December 2015. Both grievances, however, were determined to be improper as they concerned the inmate disciplinary procedure which was the appropriate arena in which to make these claims. *See* Exhibit BB (Grievance (undated); Grievance (dated December 23, 2015)).

### H.   Grievance Process (Count 11)

Plaintiff alleges that Defendants Roberts, Goddard, Burris, Pryor, Heimgartner, Wildermuth, Jackson and Patterson violated his constitutional rights and committed state torts by "making a meaningless mockery out of the prison grievance system." He provides no specific complaints but rather generalizes that despite filing or assisting with the filing of hundreds of grievances, "not a single time has the proceeding resulted in a finding in favor of the inmate."

Plaintiff attempted to file a grievance regarding this issue in May of 2016. His specific request in that grievance, however, was not any claim that his constitutional rights had been violated or that he had suffered injuries as a result of tortious conduct. Rather, he requested that the grievance process be managed and operated by a neutral and independent organization. This request was denied by Defendant Jackson in the unit team response. Plaintiff then forwarded this complaint to the warden who rejected the grievance as Plaintiff had failed to show any attempt at informal resolution of this

issue. The Secretary of Corrections designee, Defendant Burris, found the facility responses appropriate and took no further action. *See* Exhibit CC (Grievance dated May 9, 2016).

### I. Administrative Segregation Conditions (Count 12)

Plaintiff claims that Defendants Roberts, Goddard, Burris, Heimgartner, Jackson and Patterson denied "all of his rights while illegally housed in administrative segregation."

On March 17, 2016, Plaintiff filed a grievance in which he requested that he "be given all of my privileges and property as I would have in population that are not inconsistent with the particular circumstances for my being placed in admin. seg." He specifically requested that he be granted "contact visits, no more cuffs and leashes when out of my cell, . . . all of it property . . ., my own hygiene items in shower, fresh favorites, monthly meals and every other privilege enjoyed by General Population."

The unit team response, prepared by Defendant Hoshaw, stated that the cellhouse rules set forth the restrictions on privileges, property and programs while housed in segregation or restricted housing units." He urged Plaintiff to work with the segregation review board to set a plan in place that allow him to return to General population so that he could enjoy the privileges allowed those inmates so classified.

Plaintiff appealed this response to the warden who found that his request went to the classification making process and that the grievance was improper.

Plaintiff then appealed to the secretary of corrections, arguing that his grievance

addressed the facility's "refusal to give me all of my rights, privileges, benefits, property, etc. that general population inmates have, as IMPP 20-105 mandates."

The Secretary denied his request finding that the request was clearly about the classification decision making process and that the regulation prohibits the use of the grievance procedures to address this concern.  *See* Exhibit DD (Grievance dated March 17, 2016).

It does not appear that Plaintiff was treated differently from any other inmate in restrictive housing or administrative segregation.

Respectfully submitted,

s/ Sherri Price #16485

CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of June, 2020, a true and correct copy of the above and foregoing Martinez Report was mailed first class postage prepaid to Jeffrey Sperry, #47031, plaintiff pro se.

/s/     Sherri Price

## **EXHIBIT LIST**

A. KASPER display for Jeffrey Sperry
B. Administrative Segregation Report 01-16-0683
C. Administrative Segregation Review dated October 23, 2015
D. Administrative Segregation Report 01-16-1000
E. IMPP 11-206
F. Invalid Grievance dated October 6, 2015
G. Affidavit of Brett Peterson
H. Administrative Segregation Review dated March 10, 2017
I. Grievance No. AA20160105
J. Grievance no. CA00019921
K. Medical Records -- September 23, 2015 to March 30, 2017
L. IMPP 12-134/IMPP 12-134A
M. Notification of Publication Seizure/Censorship – *Full Blast* by Evanovich
N. Affidavit of Doug Burris
O. Appeal of Censored Material (US Weekly Dec. 21st)
P. Appeal of Censored Material (Wired January 2016)
Q. Appeal of Censored Material (Wired April 2016)
R. Notice of Mail Censorship (April 8, 2016)
S. Appeal of Censored Material (The Target by Baldacci)
T. EDCF General Order 14-101
U. Grievance No. CA00020020
V. Memorandum dated May 27, 2016
W. Affidavit of Chris Ross
X. Disposition and Hearing Record Case nos. 2056 and 4321
Y. Affidavit of Chris Hunt
Z. Disposition and Hearing Record Case no. 298 with Appeal to the Secretary
AA. Disposition and Hearing Records Case no. 4798
BB. Grievance (undated); Grievance (dated December 23, 2015)
CC. Grievance dated May 9, 2016
DD. Grievance dated March 17, 2016