# KANSAS DEPARTMENT OF CORRECTIONS

| **Kansas** Department of Corrections | **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | **SECTION NUMBER** 11-106 | **PAGE NUMBER** 1 of 7 |
|---|---|---|---|
| | | **SUBJECT:** **DECISION MAKING:  Case Management** | |
| **Approved By:** *Ray Roberts* Secretary of Corrections | | **Original Date Issued:** | **08-15-82** |
| | | **Current Amendment Effective:** | **01-20-14** |
| | | **Replaces Amendment Issued:** | **10-21-08** |

## POLICY

Unit Team Counselors shall provide case management to all offenders, which includes developing a recidivism-reduction case plan, and which includes managing custody and classification issues.

## DEFINITIONS

<u>Assigned Counselor</u>:  Any Unit Team Counselor assigned any function in any case, per the classification administrator or designee.

<u>Case Management</u>:  The overall management of the case including addressing recidivism-reduction through a case plan with goals and addressing all custody and classification issues.

<u>Case Plan</u>:  A set of goals and steps to address risk/need areas with an offender to reduce the risk of that offender recidivating in the future that includes using motivational interviewing, assessing motivation and readiness, and guiding the offender to participate in risk/recidivism-reduction programs and services with progress tracked and recorded.

<u>Case Review</u>:  The process of the Unit Team Counselor reviewing the status of the case on various issues related to risk reduction, risk containment, custody and classification.

<u>Custody Classification</u>:  A process to assess the level of danger an offender poses to correctional security or to the community in the event of authorized or unauthorized access to the public.  Custody classification is conducted through the use of objective criteria established in the Inmate Custody Classification Manual.

<u>Internal Classification</u>:  A process to assess through the completion of the Multi-Occupancy Housing form (within 72 hours of intake) and Internal Classification Checklist (within 30 days of intake) the potential for an offender to be aggressive (particularly sexually aggressive) or vulnerable to victimization (particularly sexual victimization).  This information is then used to inform housing, bed, work, education and program assignments with the goal of keeping the offenders deemed aggressive separate from those deemed vulnerable.

<u>Program Management Committee</u>:  Senior level staff at the facility chaired by the Warden or designee who makes decisions about custody, movement, and other critical security and risk containment issues.

## PROCEDURES

I.    **Case Management**

    A.    Each offender admitted to the KDOC shall participate at the Reception and Diagnostic Unit (RDU) in an assessment process per IMPP 11-102, assessing risk/needs using the Level of Services Inventory – Revised (LSI-R) per IMPP 11-113, completing a PREA Assessment per IMPP 10-103, and otherwise identifying areas of risk and need.  When this process is completed,

**EXHIBIT**

E

prepare a recommended program plan per IMPP 11-107, with recommendations for programming to address risk/recidivism-reduction.  Before transferring the offender from RDU, each offender shall be assigned an incentive level per IMPP 11-101, and a custody level per the Custody Classification Manual and process.

     1.     When a parole violator with no new sentence is admitted, an abbreviated process will be used for admission, whether the offender is admitted at RDU or another facility.

B.     When the offender is finished with the admission process, and sent to a correctional facility or living unit where s/he will reside during incarceration, after any initial further assessment, review or orientation completed by the facility/unit is finished, within seven (7) days the offender shall be assigned a Unit Team Counselor.

C.     The assigned Unit Team Counselor shall be responsible for case management with the offender, which shall include developing a risk/recidivism-reduction case plan, updating custody and classification, and conducting periodic case reviews.  The risk/recidivism-reduction work shall be coordinated with custody and classification, and the case review shall be used to address all aspects of the case.

## II.    Case Planning

A.     When a Unit Team Counselor is assigned a case, that Counselor shall review the electronic master file, risk/need profile of the offender, recommendations from RDU, and in consideration of the offender's time to serve, status as a known aggressor or known victim per the screening at admission under IMPP 10-139 related to sexual abusiveness and victimization, risk or recidivating (LSI-R risk level), areas of risk/need per the LSI-R and RDU, custody, classification, level of motivation and ability, develop a recidivism-reduction case plan for all moderate (19-31 on LSI-R) and high (32+) risk offenders.  The case plan should be opened and work should begin on the case plan within 30 days of the case assignment.  (The 120-day review process shall suffice for low risk offenders, remembering that the focus should be on reinforcing pro-social and sustained employment.)

     1.     The RDU LSI-R score shall be used to develop the case plan.  Except, if the offender did not receive an LSI-R at the most recent admission, due to the length of his/her current incarceration, the Unit Team Counselor shall rely upon the most recent LSI-R available.  If no LSI-R has ever been completed on the offender, an LSI-R shall be completed by a certified assessor.

     2.     The program plan shall be used as recommendations, but in the course of case planning, different programs may be accessed for advancing the case plan when appropriate.

     3.     When establishing case plans, the criteria for placement in offender programs per IMPPs 10-101, 10-102, 10-104, 10-108 and 10-109 may provide guidance.  However, ultimately referrals to programs and services to advance recidivism-reduction plans shall be based upon the offender's current risk/need.

     4.     Based on the case plan, the Unit Team Counselor shall make referrals to programs and services as needed, working with program providers to get the offender enrolled; helping to keep the offender motivated and engaged; and addressing progress or issues that arise during the course of the program or service.  When making program referrals, the offender's status as a known aggressor or known victim per the screening at admission under IMPP 10-139 shall be considered.

     5.     The case plan shall be prepared using the electronic Case Plan in TOADS.

          a.     When the Unit Team Counselor meets with the offender to work on the plan, progress notes shall be made in the plan reflecting updates.

    b.    If an offender is transferred from one Unit Team Counselor to another, the sending Unit Team Counselor shall make an entry in the case plan indicating the status of progress on the case plan, including status in any programs; and, the receiving Unit Team Counselor shall continue the work on the case plan, making any modifications deemed appropriate.

    c.    When the offender reaches the point where reentry planning begins per IMPP 11-117, as part of preparing the reentry plan, progress made during case planning shall be summarized in the reentry plan.  The case plan will end and the reentry plan begins.

        (1)    The Unit Team Counselor shall meet with the offender at appropriate intervals to advance the case plan. The 120-day case review discussed in Section III. below shall provide an opportunity to check progress, and ensure that the case plan is moving forward.

            (a)    If the offender has three (3) years or more to serve, and/or is low risk/need, and the case plan does not need to progress as quickly, the case plan updates shall occur less frequently than every 120 days.

            (b)    If the offender has less than three (3) years to serve, and/or is higher risk/need, progress on the plan needs to occur more quickly, and review of the case plan shall occur at least every 120 days, and more often if needed to ensure the plan is completed before release.

B.    Awarding and withholding good time credits shall be in accordance with K.A.R. 44-6-115a.

    1.    The "assigned programs" for purposes of K.A.R. 44-6-115a(e) shall be:

        a.    Sex offender treatment, unless the provider has determined the offender is low risk enough to not require SOTP or to get SOTP in the community, or unless the offender lacks sufficient time at admission to serve to complete SOTP in prison.

        b.    Any program the Unit Team Counselor has included in the case plan.

    2.    Any other program the offender enrolls in shall be voluntary, and shall not be considered an "assigned program" for purposes of K.A.R. 44-6-115a(e).

## III.    Case Review, Custody & Classification

A.    Each case shall have a regularly scheduled case review, which shall occur:

    1.    Every 120 days for offenders with three (3) years or less to serve.

    2.    Annually for offenders with more than three (3) years to serve.

B.    After the initial custody classification at admission, each offender's case shall be reviewed for custody at the offender's regularly scheduled case review, for all custodies except minimum, which shall be event-driven.

    1.    It is in the Warden's discretion whether to make any classification decision (custody, housing, visitation, etc.) part of the case review process, or to make other arrangements for custody review of all cases.

    2.    Custody reviews shall occur outside of regularly scheduled reviews at any other time when the circumstances warrant, including readmission as a violator, pending disciplinary report, conviction of a disciplinary infraction, STG validation, MDT Assessment, notice of ICE

status in question, unsuccessful termination from any program, identification of a detainer, receipt of a new journal entry, incentive level change (up or down), change in mental health level or diagnosis or special management status, transfer to a new living unit/facility, or for any other reason the facility deems appropriate.

3.  Within 72 hours after receiving a custody classification decision, the offender may appeal the decision to the Warden by submitting the appeal through the Unit Team Counselor on a form 9.

    a.  If the Warden did not participate in the custody classification decision, the Warden shall review the decision and the offender's written appeal, and return a written response to the offender within 15 working days of receipt.

    b.  If the Warden was a participant in the custody classification decision, the offender's appeal shall be forwarded to the Deputy Secretary of Facilities Management or designee for review, who shall return a written response to the offender within 15 working days of receipt.

    c.  The decision of the Warden or Deputy Secretary or designee shall be final.

C.  At the case review described in Section III.A. above, in addition to addressing custody, the Unit Team Counselor shall address:

1.  Ensuring housing, job and program assignments are made consistent with IMPP 10-139, related to sexual victimization and abusiveness.

    a.  When an offender has been identified as a known aggressor or known victim per the screening for sexual abuse and victimization pursuant to IMPP 10-139, the Counselor shall take that into consideration in making and reviewing housing, job and program assignments.

        (1)  A chronological entry shall be made in TOADS at the time of the case review, which specifically reflects that known aggressor or known victim status was considered when such occurs and impacts housing, job or program placement.

2.  Good time award.  Annual good time awards shall be submitted as three (3) separate 120 day awards, which may be completed on an annual schedule.

3.  Updates to emergency notification, disposition of deceased body, telephone list and visiting list.

4.  Any changes in central monitoring are necessary, and submit such changes per IMPP 12-125.

5.  The offender's privileges/incentives level for accuracy.

6.  Detainers, including any known pending, and including asking the offender about any that may have been overlooked and following up on new information.

7.  The offender's sentence summary, and if the offender raises an issue, or there is an apparent question or discrepancy, that shall be reported to the Classification Administrator.

8.  Employment, addressing issues that require attention, and ensuring the employment situation is the most suitable for the offender in consideration of his/her employment needs upon release.

9.   Housing, addressing any issues that require attention, and ensuring the offender's housing situation is the most suitable for the offender.

   a.   If multi-occupancy housing is being considered, screening shall occur for any sexual victimization and abusiveness, pursuant to IMPP 10-139.

10.   Victim issues, including domestic violence and orders of protection.

11.   The offender's identification documents, including birth certificate, social security card, driver's license or Kansas identification (unless these are already being addressed as part of the recidivism-reduction case plan), taking steps to assist the offender in obtaining information and documentation so s/he will have community identification.

12.   If the offender is managed as a sex offender, consult with the Unit Team Manager on the status of treatment; whether the offender needs to be referred for treatment; whether an override is necessary or appropriate; reviewing treatment progress reports or discharge summaries; reviewing any violation reports if there has been a revocation; considering whether the offender is likely to be reviewed by the Sexually Violent Predator Multi-Disciplinary Team; all to ensure that the offender's case management and case plan are consistent with the offender's sexual offending history, including custody, visitation, phone and visiting lists, property and release plan. The Unit Team Counselor shall first contact his/her Unit Team Manager prior to contacting the Director of Sex Offender Management if s/he has questions about the information contained in the treatment reports/discharge summary, violation reports, or otherwise related to sex offending history or behavior.

13.   If the offender has a diagnosed mental illness, the Unit Team Counselor shall consult with the mental health staff at the facility to determine the impact of the mental illness on the offender's custody, classification and case plan, and ensure that work done on the case is coordinated with mental health care, including involving a discharge planner in reentry planning when the offender is eligible for those services.

14.   If the offender is an appropriate candidate for a custody level by exception or needs a transfer to another facility for any reason, the Unit Team Counselor shall make a recommendation for an exception or transfer to the Program Management Committee.

15.   Any work that needs to be done on the risk/recidivism-reduction case plan.

D.   The Counselor shall make a TOADS chronological entry only when a significant development or event occurs, unrelated to progress on the case plan which should be documented in the case plan. (NOTE: Detainers, disciplinary reports, other behavior issues, visitation issues, etc. often do pertain to the case plan.)

## IV.   Parole Violators No New Sentence and Cases Controlled by the Prisoner Review Board

A.   When parole violators with no new sentence are admitted, RDU will conduct an abbreviated assessment if they are admitted at RDU; thereafter, or in the event the admission is directly to another male facility, parole violator cases, the Unit Team Counselor shall:

1.   Complete an inmate custody classification.

2.   Complete any necessary screening relating to sexual victimization and abusiveness pursuant to IMPP 10-139.

3.   Review the violation report from the parole officer to determine what caused the revocation; and meet with the offender to determine what case planning can be done to help the offender stabilize, and use the abbreviated reentry plan to reflect any case planning that was accomplished.

4.      Review the proposed residence plan from the parole officer, or if one was not included contact the revoking parole officer for a proposed residence plan; and work with the parole officer and release planner to prepare a release plan.

5.      If the offender is managed as a sex offender, consult with the treatment provider to identify any issues related to sex offending behavior that should be addressed as part of release planning.

6.      Complete and submit an abbreviated reentry plan.

B.      When an offender's release is controlled by the Prisoner Review Board (PRB),

1.      The Reentry and Release Planning office shall take the following action upon receipt of an offender's parole hearing results,

a.      Notify the Classification Administrator and the offender's Unit Team Counselor of the decision within two (2) working days.

b.      Assist the Unit Team Counselor in addressing housing or treatment placements required for the offender's release.

c.      Track offenders who have been paroled or placed on continued status for timely follow up.

d.      Notify the PRB when the necessary steps have been accomplished to finalize the release plan, for a final decision on completed cases.

2.      The offender's Unit Team Counselor shall

a.      Notify the offender of the decision, using the automated notice from the Board in TOADS.

b.      Work on the offender's residence plan for paroled offenders, and work on a case plan to address issues identified by the Board for continued offenders, updating the Reentry and Release Planning office on progress, so that office can report back to the Board when the work is completed, to either release the offender or make a decision on continued cases.

## V.      Supporting and Reporting Case Management

A.      Each facility shall establish a case management team, made up of representation of unit team, program providers (KDOC and contract), the Classification Administrator and the R3Coordinator, to address program support of case management, including establishing referral and placement processes, and to track and increase program completion rates and outcomes.  This group shall provide local oversight of the processes and content of programs and services for reducing recidivism, to ensure offenders are assessed, placed, make progress and complete programs as effectively as possible to enhance risk/recidivism-reduction.

B.      The Wardens shall ensure that training targeted to the duties and responsibilities of Unit Team Counselors related to case planning and case management is available, and is current, accurate, and sufficient to provide information and skills to Unit Team Counselors to manage cases effectively and engage in risk/recidivism-reduction work with offenders.

C.      Each Unit Team Counselor shall use his/her caseload report in TOADS to track progress and status on each case, to ensure case planning is occurring as required, in addition to the 120-day case reviews.

     D.      Each Unit Team Manager shall complete a Case Management Review with each Counselor, including reviewing two (2) cases per supervised Counselor per quarter, focusing on cases within 36 months of release, using Attachment A.

     E.      Each Unit Team Manager shall make quarterly reports to the Classification Administrator using Attachment B and attaching copies of all Case Management Reviews completed that quarter to help the Classification Administrator and Warden and his/her leadership team assess and continue building capacity for unit team staff to deliver risk/recidivism-reduction services.

     F.      Classification Administrators shall hold quarterly meetings with Unit Team Managers for the express purpose of engaging in planning and problem-solving to support risk/recidivism-reduction. The Classification Administrator shall provide the Warden with reports from the quarterly meetings, using Attachment C.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are considered to be compliant with all applicable Federal statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS REQUIRED**

None.

**REFERENCES**

K.S.A. 75-5248
K.A.R. 44-6-115a
IMPP 10-101, 10-102, 10-103, 10-104, 10-108, 10-109, 10-116, 10-117, 10-139, 11-101, 11-102, 11-107, 11-113, 11-117, 12-125

**ATTACHMENTS**

Attachment A – Case Management Review, 3 pages
Attachment B – Unit Team Quarterly Report to Classification Administrator, 1 page
Attachment C – Classification Administrator Quarterly Report to Warden, 1 page

**CASE MANAGEMENT REVIEW**

Counselor: _____    UTM: _____    Date: _____

**Case Review #1:**

Inmate Name / #: _____    Release Date: _____    LSI-R: _____

1. Is there a case plan?
   a. How many goals?
   b. Are goals related to the LSI-R risk/need areas?
   c. Are there progress notes?
   d. Is the Counselor identifying and using resources effectively to support the plan?
2. Is custody current?
3. Is good time current?
4. Are 120-day reviews completed timely and accurately?
5. If the offender was identified by the RDU screening per IMPP 10-139 related to sexual abuse and victimization as a known aggressor or known victim, has this been considered when making housing, job and program placements?
6. Has community identification been addressed?
7. Have detainers been addressed?
8. Has the inmate been screened for work release?
9. Has a mentor been considered/matched?
10. Is the inmate a sex offender, and if so has his/her SOTP need been addressed?
11. Does the inmate have a viable residence plan at release, and what has been done to address this?

**Case Review #2:**

Inmate Name / #: _____    Release Date: _____    LSI-R: _____

1. Is there a case plan?
   a. How many goals?
   b. Are goals related to the LSI-R risk/need areas?
   c. Are there progress notes?
   d. Is the Counselor identifying and using resources effectively to support the plan?
2. Is custody current?
3. Is good time current?
4. Are 120-day reviews completed timely and accurately?
5. If the offender was identified by the RDU screening per IMPP 10-139 related to sexual abuse and victimization as a known aggressor or known victim, has this been considered when making housing, job and program placements?
6. Has community identification been addressed?
7. Have detainers been addressed?
8. Has the inmate been screened for work release?
9. Has a mentor been considered/matched?
10. Is the inmate a sex offender, and if so has his/her SOTP need been addressed?
11. Does the inmate have a viable residence plan at release, and what has been done to address this?

Comments: _____

_____

**INTERACTION:**

After observing at least two interactions between the Counselor and inmates regarding case planning,

      1.     Is the Counselor addressing risk/need areas?

      2.     Is the Counselor engaging and motivating the inmate?

      3.     Is the Counselor using good time as an incentive?

      4.     Is the Counselor responding to resistance and behavior appropriately/effectively?

      5.     Did the Counselor use any of the EPICS tools (see attached)?

Comments: _____

_____

**CASELOAD MANAGEMENT:**

      1,     Is the Counselor reviewing his/her caseload report and using it effectively to management cases?

      2.     Is the Counselor using multi-discipline teams or other resources to address problem cases?

Comments: _____

_____

**OVERVIEW:**

Two strengths: _____

_____

Two areas for growth: _____

_____

_____          _____

      Unit Team Manager                                Date

_____          _____

      Counselor                                       Date

**EPICS TOOLS**

## Role Clarification

1. Identify the KDOC goals; public safety offender change.
2. Ask offender what he hopes to accomplish while under supervision.
3. Identify what you hope to accomplish with/for this offender.
4. Define the supervision process; conditions of supervision; negotiable/non-negotiable situations; role of offender, officer, tx provider and other MDT members in parole process.

## Behavioral Analysis

1. Explain the document to the offender.
2. Have the offender complete the document.
3. Review the completed document.
4. Interview the offender.
5. Ask the offender what trends he sees and whether the results help identify anything he would like to work on.
6. Begin developing, with the offender, targets to change in an effort to reduce risk.

## RACE

Recognize, Avoid, Cope, Evaluate

1. Recognize – Identify one high-risk person, place, or thing related to the Behavioral Analysis Chart.
2. Develop an action plan to avoid the high-risk influence-not a passive process.
3. Develop an action plan for coping with high-risk influence if that influence cannot be avoided.
4. Evaluate the outcome.

## CHART

Check-in, Homework, Assess and Apply, Reinforce Teach

1. Check-in:  any crisis situations that need to be addressed.
2. Homework:  review of any homework assignments.
3. Assess & Apply:  help the offender identify foreseeable real-life situations in which the offender can use the skill.
4. Reinforce:  reinforce any progress the offender has made.
5. Teach:  corrective feedback and/or structured learning.

## Effective Use of Reinforcement

1. Tell the offender what they did that you like and why it is important.
2. Ask the offender to describe the short- and long-term benefits of continuing to use the behavior you are discussing.
3. Contract with the offender to use the skill/behavior you are discussing in the future again.

## Effective Use of Disapproval

1. Identify inappropriate behavior, tell offender in an objective manner that you disapprove of what was said or done.
2. Ask the offender to explore the short- and long-term consequences of continuing to engage in that behavior.
3. Ask the offender to identify and discuss pro-social alternatives that could replace the unacceptable behavior.
4. Contract with the offender to use the pro-social alternative in the future.

-------------- If intervention is administered add steps 5 and 6 --------------

5. Tell the offender what the consequences will be.
6. Deliver the consequences.

## Effective Use of Authority

1. Identify a situation where the offender is in a decision-making position.
2. Present the available choices and the attendant consequences of each choice.
3. At the next available opportunity follow-up by determining if objectives were met.
4. In general, be sure to look for and reward compliance.

## Teaching the Cognitive Model

1. Identify a problem behavior or situation that would benefit from the cognitive model and offer the model as a solution.
2. Explain the three main components of the cognitive model:  external forces, internal thoughts, behavior.
3. Ask the offender to examine his situation using the cognitive model.
4. Contract with the offender to use the cognitive model in a future situation.

## Problem Solving

1. Stop and think and identify the problem.
2. Clarify goals.
3. Generate alternative solutions and choose the best option.
4. Develop the Plan.
5. Implement the plan.
6. Evaluate the plan.

Attachment B, IMPP 11-106
Effective 01-20-14

**UNIT TEAM QUARTERLY REPORT TO CLASSIFICATION ADMINISTRATOR**

UTM: _____     Living Unit: _____     Month: _____

**Note:  Attach copies of Case Management Review Forms completed in this quarter.**

Number of Case Management Reviews completed this month.

      a.      # with case plans: _____

      b.      # with 2 risk-reduction goals: _____

      c.      # with current custody:_____

      d.      # with current good time: _____

      e.      Observations about resource use: _____

      f.      Observations about case planning: _____

What recidivism-reduction goal did the unit focus on this month?

What barrier to recidivism reduction did the unit identify this month, and how did you address it?

Example of a success in program participation:

Issue(s) identified to be addressed regarding program placement/participation/completion and recommendation to address:

Issue(s) identified about case planning and recommendation to address:

## CLASSIFICATION ADMINISTRATOR QUARTERLY REPORT TO WARDEN

Number of Case Management Reviews completed this month.

     a.    # with case plans: _____

     b.    # with 2 risk-reduction goals: _____

     c.    # with current custody:_____

     d.    # with current good time: _____

     e.    Observations about resource use: _____

     f.    Observations about case planning: _____

What recidivism-reduction goals did the facility focus on this month?

What barriers to recidivism reduction did the facility identify this month, and how were they addressed?

What key issue(s) did the Case Management Committee address this month, with what outcome(s)?

Do you/the Unit Team Managers have recommendations for policy or procedure issues to review to continue implementing recidivism reduction?

How would you rate the capacity of the unit team staff to deliver recidivism-reduction services and strategies with offenders at this time, 1 being low, 5 being high?