IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEFFREY J. SPERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No. 16-CV-3222-SAC |
| | ) | |
| LINDSEY WILDERMUTH, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In his amended complaint, inmate Jeffrey Sperry alleges that "[t]he KDOC has a system established where every member in the administration conspires with every other member to violate the constitutional and civil rights of plaintiff and every other inmate." Doc. 25 at 4. As the complaint stands, it includes as defendants 18 current or former employees and officials of the Kansas Department of Corrections (KDOC) and contains ten counts. *See* Doc. 31 at 1 n.1; Doc. 28 (severing four counts and dismissing six defendants). Each count, in turn, recites an indiscriminate list of federal constitutional amendments, Kansas torts, and other legal theories. Sperry names defendants in both their individual and official capacities. Doc. 25 at 1-3. He seeks injunctive relief, including several mandatory injunctions, a declaratory judgment stating that the defendants have violated his rights, and compensatory damages. Doc. 25 at 22-24.

Defendants move for dismissal, or alternatively summary judgment, for various reasons. The complaint violates the pleading requirements of Rule 8. It also fails to state plausible claims for relief. Moreover, Sperry did not exhaust his admistrative remedies for some claims. And the official-capacity claims are largely barred by the Eleventh Amendment.

1

## Statement of Facts

### *Procedural History*

Sperry's original complaint in this case was 47 pages long and contained 202 numbered paragraphs. Doc. 1. The Court issued a notice of deficiency and ordered Sperry to resubmit his complaint on a court-approved form as required by Local Rule 9.1(a). Doc. 3. Sperry then filed a form complaint with the original 47-page complaint attached. Doc. 4. Magistrate Judge Waxse issued an initial screening order identifying several deficiencies in the complaint, one of which was improper joinder of the at least 94 claims against 24 defendants in one case. Doc. 9 at 4, 6-9.

Sperry was "given the opportunity to file an amended complaint that cures the deficiencies discussed" and was warned that failure to do so might result in the action being dismissed without further notice. Doc. 9 at 14-15. Instead, Sperry filed a motion to reconsider, which the Court denied. Doc. 10, 13. Sperry then filed a notice of intent to stand on complaint, Doc. 14, and unsuccessfully attempted to appeal the denial of his motion for reconsideration. Doc. 15, 18. Sperry was given a new deadline to file an amended complaint. Doc. 20. He filed his amended complaint on November 28, 2017. Doc. 25.

Upon review, the Court noted that "[i]n complete disregard of Judge Waxse's order, the amended complaint contains the same 14 counts and names the same 24 defendants as the original complaint" with only "some minor changes in wording but . . . no justification for disregarding the previous order." Doc. 26 at 3. Sperry was ordered to show cause why several improperly joined counts should not be dismissed or severed into separate lawsuits. Doc. 26 at 7. Sperry was also given yet another opportunity to file a proper amended complaint curing the deficiencies outlined by the Court. Doc. 26 at 7. Instead, Sperry filed another motion for reconsideration, which was

denied. Doc. 27, 28. And because Sperry failed to show good cause, the Court severed Counts IV,

IX, XIII, and XIV into separate lawsuits.[1] Doc. 28 at 2-3.

On October 16, 2018, the Court issued another memorandum and order to show cause on

the amended complaint. Doc. 31. In this order, the Court found that five of the ten remaining counts

and part of another count failed to state a claim, and Sperry was ordered to show cause why they

should not be dismissed. Doc. 31 at 14. Sperry filed a response, Doc. 34, and the Court ordered

the KDOC to prepare a *Martinez* report to assist it in screening the claims. Doc. 35. The *Martinez*

report was filed on June 19, 2020. Doc. 48.

### *Material Facts for Summary Judgment in accordance with D. Kan. Rule 56.1*

#### Failure to Exhaust Counts I & XII

1. The process to challenge a custody classification is set forth in KDOC's Internal
   Management Policy and Procedure (IMPP) 11-206 at III.B.3. Doc. 48-5 at 4.

2. Under IMPP 11-206, an inmate must submit a Form 9 to the warden through the unit
   team counselor within 72 hours after receiving a custody classification decision to
   challenge it. Doc. 48-5 at 4.

3. Sperry received a copy of his administrative segregation report on November 4, 2015.
   Doc. 48-4.

4. Sperry did not file a classification appeal of this decision. Doc. 48-7 ¶ 3.

#### Failure to Exhaust Censorship of "Full Blast"

5. The process to challenge a censorship decision is set forth in IMPP 12-134 and 12-134A
   at V. Doc. 48-12 at 3-4, 9.

---

[1] While this order lists Count IV twice among the four claims to be severed, this was a typographical error. The last count listed was missing a numeral and should have read Count XIV. *See* Doc. 31 at 1 n.1.

6. When an inmate's publication is withheld, he receives a Notification of Publication Seizure/Censorship identifying the publication and the reason why it was withheld. Doc. 48-12 at 5, 12.

7. To appeal this decision an inmate must complete the appeal section of the notice form and submit it through his unit team within 15 business days. Doc. 48-12 at 5, 12.

8. Sperry received notification of the seizure of "Full Blast" in April 2014. Doc. 48-13.

9. Sperry did not appeal the seizure of "Full Blast." Doc. 50-1 ¶ 3.

Failure to Exhaust Count VII

10. Sperry did not file an appeal of any grievances related to:

    a. Not being permitted to possess half of his property, including a large majority of his legal property, upon transfer to segregation at Lansing Correctional Facility (LCF) in September 2015, Doc. 50-1 ¶ 4a;

    b. Being required to reduce his property to the levels set by department policy upon transfer to El Dorado Correctional Facility (EDCF) in January 2016, Doc. 50-1 ¶ 4b; or

    c. The EDCF unit team staff's refusal to provide him access to his excess legal materials stored in the property room, Doc. 50-1 ¶ 4c.

11. Sperry did not file a property claim alleging a property loss in January 2016. Doc. 50-1 ¶ 5.

Failure to Exhaust Count VIII

12. Sperry filed property claims for losses alleged to have occurred on September 23, 2015 for $150 and November 13, 2015 for $25. Doc. 50-1 ¶ 6.

13. Sperry never filed any grievances alleging that staff at LCF and EDCF seized and destroyed his property for malicious, vindictive, and retaliatory purposes as part of an ongoing conspiracy to violate his rights. Doc. 50-1 ¶ 4d.

## Argument and Authorities

### *Motion to Dismiss Standard*

On a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint and determine whether those facts, and any inferences reasonably drawn from them, legally state a claim for relief. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "detailed factual allegations" are not required, a plaintiff must provide "more than labels and conclusions," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted).

A defendant may also move to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Id.* "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

*Summary Judgment Standard*

Under Rule 56, summary judgment is required "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A dispute is genuine if it is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Whether a dispute is material is determined by substantive law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (1998) (citing *Anderson*, 477 U.S. at 248). Where there is no genuine dispute of material fact regarding just one of the essential elements a plaintiff must prove, then summary judgment must issue in the defendants' favor. *See Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671).

## I.    The complaint violates the pleading requirements and fails to state plausible claims for relief.

### A.  Sperry's shotgun approach does not comply with Rule 8.

The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). While pro se pleadings are liberally construed, they must "follow the same rules of procedure that govern other litigants." *Hall v. Witteman*, 584 F.3d 859, 863-64 (10th Cir. 2009) (citations omitted). When "even a liberal reading of the plaintiffs' complaint does not bring it within the ambit of Rule 8(a)(2), the district court properly dismisse[s] the action." *Whitehead v. Shafer*, 295 F. App'x 906, 908 (10th Cir. 2008).

Thus, the Court has dismissed "'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant"—for failure to comply with Rule 8. *D.J. Young Pub. Co. v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, No. 12-CV-2011-KHV, 2012 WL 4211669, at *3 (D. Kan. Sept. 18, 2012), *aff'd* 520 F. App'x 636 (10th Cir. 2013) (quoting *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F.Supp.2d 1151, 1153 (D.Minn.2011)). Such complaints "unfairly burden defendants and courts," shifting to them "the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* That is the case here.

As the Magistrate Judge noted, Sperry is apparently "employing the shotgun approach, including a long list of claims in hopes that something hits the mark." Doc. 9 at 13-14. In each of the ten counts, he names various combinations of the 18 defendants and lists several federal constitutional amendments, state law provisions, and other legal theories, followed by a rambling narrative of "supporting facts." Count I, for example, lists ten defendants and alleges violations "under the First, Eighth, and Fourteenth Amendments of the United States Constitution, and further constitutes a conspiracy to violate plaintiff's civil rights; plus it constitutes the torts of outrageous conduct, mistreatment of a confined person, breach of fiduciary duty, and negligence, under Kansas law," followed by a 2,112-word narrative. Doc. 25 at 5-8. Sperry makes no attempt to delineate his allegations to put defendants on notice of how each individual defendant is claimed to be liable to him under each theory. He leaves it up to the Court and defendants to construct his claims for him.

"It is neither the court's nor the [defendants'] role to sift through a lengthy, conclusory and poorly written complaint to piece together the cause of action." *Arena Land & Inv. Co. v. Petty*, 69 F.3d 547 (10th Cir. 1995) (citing *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368,

371-72 (10th Cir. 1989)). There is a difference between "liberal construction" and "whether the trial court [is] obligated to construct a cause of action from allegations in a complaint filed by a party who [is] unwilling or unable to plead the cause of action himself." *Glenn*, 868 F.2d at 372. Sperry was given more than one opportunity to amend his complaint to correct the significant deficiencies outlined by the Court. He chose to proceed on his amended complaint, which defies the Court's clear and detailed instructions to only name proper defendants and adequately allege facts to support the elements of his claims. Sperry's failure to comport with the pleading requirements, despite notice of his complaint's deficiencies, supports dismissal.

A "district court act[s] well within its discretion" in dismissing a case for failing to satisfy the pleading standards of Rule 8(a)(2). *Whitehead*, 295 F. App'x at 908 (affirming dismissal where "[t]he complaint recite[d] an array of statutory and common-law causes of action with little, if any, connection to the factual allegations"); *see also Washington v. Collins*, 517 F. App'x 614, 615 (10th Cir. 2013) (affirming dismissal where "the magistrate judge put Plaintiff on notice of the deficiencies in his complaints, [but] Plaintiff's amendments failed to correct those problems"). In *Muathe v. Fifth Third Bank*, No. 14-2207-JTM, the Court dismissed a plaintiff's "disjunct and rambling complaint" that included 13 counts against 22 defendants, yielding 44 alleged violations of statutes and common law doctrines, explaining:

> Much of plaintiff's shotgun approach states only conclusions. Where it does allege facts, it fails to connect them to valid legal claims. The complaint frequently states that certain defendants have violated certain statutes without pleading any associated factual allegation of conduct. Throughout the complaint, plaintiff consistently fails to either adequately allege conduct or to match alleged conduct with a cognizable cause of action.

2014 WL 5341984, at *3 (D. Kan. Oct. 21, 2014), *amended in part*, 2015 WL 248998 (D. Kan. Jan. 20, 2015), *affirmed*, 627 F. App'x 732 (10th Cir. 2015). This analysis applies equally to Sperry's complaint, which purports to allege dozens of claims ranging from breach of fiduciary

duty to violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) based solely on vague, conclusory allegations without matching facts to the cause of action. It fails to "explain what each defendant did to him . . . ; when the defendant did it; how the defendant's action harmed him . . . ; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Sperry's complaint should be dismissed for failing to satisfy the pleading standards.

**B.  Sperry's indiscriminate lists of potential causes of action unconnected to facts do not state claims.**

A very liberal construction reads Sperry's complaint as attempting, and largely failing, to allege constitutional violations based on various conditions of his confinement under § 1983. These claims will be addressed below. The complaint does not, however, state any plausible claims by merely listing out potential causes of action without matching facts to support any of the elements under them. "Neither the court nor the Defendants are required to guess in order to determine the specific factual allegations that are being asserted in support of each claim." *Washington v. Colo. State Univ. Ft. Collins*, No. 12-CV-01034-BNB, 2012 WL 4929105, at *3 (D. Colo. Oct. 16, 2012). Accordingly, the following purported claims should be dismissed:

*Outrageous conduct.* In every count, Sperry lists "the tort of outrageous conduct." Elsewhere, the Court construed this language as "referring to the tort of outrage, which is the same as the tort of intentional infliction of emotional distress under Kansas law." *Sperry v. Corizon*, No. 18-3119, Doc. 42 at 7 (citing *Hallam v. Mercy Health Center of Manhattan, Inc.*, 97 P.3d 492, 494 (Kan. 2004)). "A claim for the intentional infliction of emotional distress or the tort of outrage requires: (1) the defendant act intentionally or in reckless disregard of the plaintiff; (2) the actions must be 'extreme and outrageous'; (3) the plaintiff has to experience 'extreme and severe' mental distress; and (4) the plaintiff's mental distress has to be causally connected to the defendant's

9

actions." *Estate of Randolph v. City of Wichita*, 459 P.3d 802, 825 (Kan. Ct. App. 2020) (quoting *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 391 (Kan. 2010)). Because Sperry does not plead any of these four elements in any count or make any factual allegations related to them, he fails to state a claim for outrage. The Court should not comb through the 6,900-word "supporting facts" narratives associated with these ten counts to search for a sufficiently "extreme or outrageous act" when Sperry has made no attempt to allege one.

**Battery.** Sperry lists battery in Counts II and III, which are about the presence of roaches in a cell house and his inability to get eight hours of uninterrupted sleep each night due to the prison schedule. "Battery is defined as 'the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive.'" *Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007) (citation omitted). Sperry does not allege that any defendant touched or struck him, let alone that a defendant touched or struck him with the requisite intent. He fails to state a claim for battery.

**Mistreatment of a confined person.** Sperry lists this phrase in six of the counts. As the Court has explained: "[M]istreatment of a confined person is not a tort in Kansas. Rather, it is crime. *See* K.S.A. 21-5416. There is no indication that Kansas courts have found the criminal statute can be used as the basis for a civil action." *Sperry v. Corizon*, No. 18-3119, Doc. 42 at 7. This claim is frivolous and must be dismissed.

**Property deprivation.** Sperry lists "property deprivation" in Count V. This, too, is a crime not a tort. *See* K.S.A. 21-5308. In any event, Sperry has no tort claim based on the seizures alleged. "[T]here is a difference between the right to own property and the right to possess property while in prison." *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002). Because Sperry admits he was

given an option to send the property he could not possess to a location of his choosing, Doc. 48 at

8; 48-12, he was not deprived of his property. *Hatten*, 275 F.3d at 1210.

*Breach of fiduciary duty.* Sperry includes this inapplicable legal theory in nine counts.

"The requirements of a claim of breach of fiduciary duty are existence of a duty, breach of that

duty, and damages resulting from the breach." *Schneider v. Kansas Sec. Comm'r*, 397 P.3d 1227,

1247 (Kan. Ct. App. 2017) (citing *Horosko v. Jones*, No. 91375, 2004 WL 2926665, at *1 (Kan.

2004)). As explained by the Court, "Kansas courts have not recognized an action for breach of

fiduciary duty in the prison context, and courts in other states have found no fiduciary duty between

prison officials and prisoners." *Sperry v. Corizon*, No. 18-3119, Doc. 42 at 6 (citing *Hernandez v.

Cate*, 2014 WL 6473769, *3 (C.D. Cal. Oct. 16, 2014); *Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D.

Mass. 2014)). Sperry does not allege a fiduciary relationship between the defendants and himself

or any facts supporting one. This claim should be dismissed.

*Negligence.* In all ten counts, Sperry lists negligence as a potential cause of action. "To

succeed on a negligence claim, the plaintiff must establish the existence of a duty, a breach of that

duty, an injury, and proximate cause." *Montgomery v. Saleh*, 466 P.3d 902, 907 (Kan. 2020) (citing

*Hale v. Brown*, 197 P.3d 438 (Kan. 2008)). "Proximate cause has two components: causation in

fact and legal causation. Causation in fact means a cause-and-effect relationship exists between a

party's conduct and the resulting harm. Legal causation means a party's conduct might foreseeably

create a risk of harm and cause or contribute to the resulting harm." *Id.* at 911 (citing *Drouhard-

Nordhus v. Rosenquist*, 345 P.3d 281 (Kan. 2015)). While Sperry lists negligence in each of his

ten counts, he does not allege what duty each defendant owed to him, how each defendant breached

a duty owed to him, or how each defendant's conduct proximately caused injury to him. He does

not properly plead any negligence claim.

11

***RICO.*** In Count VII, Sperry lists "a violation of the Racketeer Influence [sic] and Corrupt Organization Act." The Court has already found this claim subject to dismissal. *See* Doc. 31 at 9. "In order to bring a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hall v. Witteman*, 569 F. Supp. 2d 1208, 1225 (D. Kan. 2008) (quoting *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir.2007)). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any 'act which is indictable' under federal law and specifically includes mail fraud and wire fraud. These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'" *Id.* at 1225-26 (quoting *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir.1999)). "A private RICO claim can only be brought by a plaintiff claiming a personal injury arising from the use or investment of racketeering income." *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (citation omitted). Because Sperry does not allege a RICO enterprise, predicate acts, or related injury, he fails to state a RICO claim.

***Conversion.*** Sperry lists conversion in Counts VII and VIII, where he complains of property limitations. "A plaintiff asserting a conversion cause of action must prove that the defendant intentionally exercised wrongful dominion or control over property of the plaintiff that so severely interferes with the plaintiff's right to control the property that the court may justly require the defendant to pay full value of the property." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1022-23 (D. Kan. 2003). Sperry does not allege facts supporting that any defendant intentionally deprived him of property that he was entitled to control. Having to comply with the KDOC property control policy, IMPP 12-120, is not actionable. Seizure of an inmate's property authorized under a prison regulation does not constitute conversion. *See Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 639 (10th Cir. 2001). And Sperry admits that he was given the opportunity

to mail out any property beyond the permissible limits. Doc. 25 at 14. Again, "there is a difference between the right to own property and the right to possess property while in prison." *Hatten*, 275 F.3d at 1210 (10th Cir. 2002). Because Sperry was given an option to send the property he could not possess to a location of his choosing, he was not deprived of his property and fails to state a claim for conversion.

### C.  Sperry cannot bring general grievances or claims on behalf of others.

As noted in the Court's initial screening order, Sperry "makes numerous allegations about experiences of other inmates and claims on behalf of the inmate population in general." Doc. 9 at 12. Sperry lacks standing to bring complaints on behalf of others or general grievances about prison conditions and management. Doc. 9 at 12-13 (citing *Whitington v. Ortiz*, 307 F. App'x 179, 195 (10th Cir. 2009) (inmate "lacks standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself")). Insofar as Sperry attempts to do so, his claims must be dismissed for lack of standing.

### D.  Some claims are barred by the statute of limitations.

Sperry filed his original complaint on November 7, 2016. Doc. 1. Some of his factual allegations pertain to incidents outside of the two year statute of limitations. In Count V, Sperry complains of an April 2014 censorship/seizure of the book "Full Blast." Doc. 25 at 11. "[T]he appropriate statute of limitations for § 1983 actions arising in Kansas is two years." *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991). A plaintiff's § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 1301 (internal citations omitted). Any claim based on the censorship of "Full Blast" accrued on April 1, 2014 when Sperry received the Notice of Publication Seizure/Censorship, Doc. 48-13, and was time barred when Sperry filed his complaint more than two years later. Also time

barred are any claims based on disciplinary hearings in 2012 or June 2014 alleged in Count X. Doc. 25 at 15-16; Doc. 48-26. These claims—as well as any other based on events more than two years before Sperry filed his complaint—are barred by the statute of limitations.

### E.  Mere conclusory allegations cannot support a plausible claim.

When analyzing a complaint to see if it states a plausible claim, the Court begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitations of the elements'" and "conclusory . . . allegations" are "disentitle[d] . . . to the presumption of truth." *Id.* at 681 (citing *Twombly*, 550 U.S. at 554-55). The Court looks to "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

Sperry's complaint contains many allegations that are entirely conclusory and so are not entitled to the assumption of truth. For instance, his sweeping allegation that "every member in the [KDOC] administration conspires with every other member to violate the constitutional and civil rights of plaintiff and every other inmate," Doc. 25 at 4, should be disregarded as it is not supported by factual allegations. The same treatment applies to Sperry's many bald assertions that "defendants specifically targeted" him for mistreatment "in retaliation for his successful litigation against KDOC and its staff members" and "conspired together to violate [his] rights." Doc. 25 at 5, 16. Insofar as Sperry does not support his legal conclusions with factual allegations, his claims lack facial plausibility and must be dismissed.

***Conspiracy.*** In every count, Sperry alleges a "conspiracy to violate his civil rights." Whether construed as a 42 U.S.C. § 1985 claim or as conspiracy under § 1983 or Kansas law, Sperry's conclusory allegations do not state a claim. To establish a claim under § 1985, "the

plaintiff must allege and prove the following elements: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom," as well as "class-based or racially discriminatory animus." *Hall*, 569 F. Supp. 2d at 1224 (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993); *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994)). To state a § 1983 conspiracy claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (citing *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). "Conclusory allegations of conspiracy are insufficient." *Id.* Under Kansas law, there are five elements to a civil conspiracy claim: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Kincaid v. Dess*, 298 P.3d 358, 369-70 (Kan. Ct. App. 2013) (quoting *Stoldt v. City of Toronto*, 678 P.2d 153 (Kan. 1984)). The complaint fails to state any conspiracy claim under federal or Kansas law because Sperry makes only conclusory assertions of conspiracy and does not allege any facts about an agreement or meeting of the minds between the 18 defendants as a whole or in various combinations. Nor can one be inferred from Sperry's repetition of the word "conspired." The complaint fails to state any conspiracy claim.

## II. Sperry fails to state plausible claims under § 1983.

### A. Failure to allege facts supporting each defendant's liability.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege acts by defendants that caused the deprivation of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988). A named defendant must have personally participated in the alleged deprivation of a plaintiff's constitutional rights to be liable. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). This holds

true for supervisors, who "are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Collective allegations against the state or against "defendants" as a whole are insufficient to meet a plaintiff's burden to provide fair notice of the grounds for the claims made against each party. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). An official's "mere response and denial of [an inmate's] grievance are insufficient to establish the requisite personal participation under § 1983." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).

Despite being advised of these standards and his failure to adequately plead each defendant's personal involvement in any alleged violations, *see* Doc. 9 at 10-12, Sperry's amended complaint repeats the same mistakes the Court identified. Each count lists numerous defendants and various constitutional provisions allegedly violated by them without alleging specific facts supporting each defendant's personal liability. *See* Doc. 25 at 5-19. Each count names defendants based solely on their involvement in the grievance process. And each count makes allegations against "the defendants" as a whole or in groups without specifying each's personal participation.

***No Proper Defendants.*** The Court has found Count III fails to name any proper defendant, as Sperry "does not make a single allegation that any of the named defendants personally participated in the alleged violation, other than responding to grievances." Doc. 31 at 8. Similarly, Count XI lists eight defendants but does not contain a single factual allegation about any one of them specifically. Doc. 25 at 16-18. The entire count is based on collective and conclusory allegations against "KDOC administrators" and "[p]rison officials" as a group "conspiring together to manipulate th[e] grievance procedure" and "work[ing] as a unit to manipulate and undermine the [admistrative review] system." Doc. 25 at 16-18. Count XII, also, lists six defendants without

a single specific factual allegation about any one of them. Doc. 25 at 18-19. Counts III, XI, and XII must be dismissed for failure to name any proper defendant.

*Improper Defendants.* Defendant Winklebauer is named in Counts I and V without any allegations of personal participation. The narrative in Count I does not include Winklebauer. And the only allegations about Winklebauer in Count V relate to her involvement in the admistrative process for appealing censorship decisions, which is insufficient to establish personal participation. Similarly, Defendant Burris is named in multiple counts based on his denial of administrative appeals and grievances. While Sperry repeatedly asserts that this makes him a knowing co-conspirator in the alleged civil rights violation, Doc. 25 at 11-12, and liable as if he himself had committed the alleged violation, Doc. 25 at 15, that is not the law. *See Gallagher*, 587 F.3d at 1069 ("Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation."). There are no factual allegations in the complaint suggesting that either Burris or Winklebauer were personally involved in any of the alleged violations. They must be dismissed.

*No Supervisor Liability.* Sperry names former Secretary of Corrections Roberts and Deputy Secretary Goddard based on their being "personally involved in directing and permitting every violation alleged" and "perpetuat[ing] a system that permits every staff member to violate the rights of prisoners knowingly, and . . . remain unchecked throughout the admistrative review process." Doc. 25 at 5. These legal conclusions, however, are not supported by sufficient factual allegations. The references to Roberts and Goddard in the complaint are almost entirely limited to their imputed awareness of every alleged violation based on their role in the grievance process. The same is true for the allegations against Warden Pryor and Warden Heimgartner. Sperry does

not allege that the wardens were directly involved in any of the violations or that there was the required "affirmative link" to hold them liable as supervisors. *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) ("The requisite showing of an 'affirmative link' between a supervisor and the alleged constitutional injury has '[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.'"). Sperry's allegations fail to state a plausible claim against these defendants as they rest entirely on conclusions unsupported by facts and do not suggest any culpable involvement on their part.

  ***Injunctive Relief.*** Sperry asks for various injunctions against "the defendants" ordering them to "implement" various protocols and procedures and cease certain activities. Sperry does not direct these claims for relief at any specific defendant or allege that each or any defendant has the ability or authority to comply with such an order, if granted. He fails to state a plausible claim for injunctive relief.

## B.  Defendants are entitled to qualified immunity.

  Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Burke v. Regalado*, 935 F.3d 960, 1001-02 (10th Cir. 2019) (quoting *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015)). It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (internal citations and quotations omitted).

  In light of qualified immunity, Sperry must "allege that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the violation." *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, -- F.3d --, No. 19-2039, 2020 WL 5087899, at *2 (10th Cir. Aug. 28, 2020) (citations omitted). The Tenth Circuit "ha[s] described this burden

as 'heavy,' in large part because [its] qualified-immunity inquiry 'is designed to spare a defendant not only unwarranted liability, but [also] unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" *Id.* (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

As explained below, Sperry does not allege plausible constitutional violations by defendants. Nor can he allege that each defendant's acts violated a specific constitutional right and that the right was clearly established at the time of the violation. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stewart v. Beach*, 710 F.3d 1322, 1331 (10th Cir. 2012) (quoting *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)). Because Sperry's allegations are insufficient to overcome qualified immunity, the claims against defendants in their individual capacities must be dismissed.

### C.  Failure to allege plausible constitutional violations.

***Eighth Amendment.*** Sperry alleges Eighth Amendment violations in Counts I, II, and III. To state a claim under the Eighth Amendment against a prison official, an inmate must allege both a "sufficiently serious" deprivation and a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The standard of culpability necessary to an Eighth Amendment violation is one of deliberate indifference." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Under this standard, "even if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Id.*

In Count I, Sperry alleges that his time in administrative segregation "was extremely punitive in that it denied him . . . [various] privileges enjoyed by general population inmates." Doc. 25 at 8. "The denial of privileges which normally accompanies confinement in administrative segregation does not amount to a denial of life's necessities or present a sufficiently serious potential for harm." *Speed v. Stotts*, 941 F. Supp. 1051, 1056 (D. Kan. 1996). Sperry does not allege facts supporting a sufficiently serious deprivation under the Eighth Amendment or that any defendant acted with deliberate indifference to a substantial risk of serious harm to him.

Count II is based on the presence of roaches in his cell from September 23 to early December 2015. Doc. 25 at 8. He submitted a grievance to Officer Wildermuth about the situation, who informed him that an exterminator was spraying regularly to address the issue. Doc. 25 at 8-9; Doc. 48-9 at 3. The only factual allegations against the other four defendants is that they received the appeal of his grievance. Doc. 25 at 9. As the Court has already found, living in a cell with roaches for ten weeks, "while unsavory," does not rise to the level of a sufficiently serious deprivation. Doc. 31 at 6. And the fact that prison officials were taking reasonable steps to address the problem by having the facility sprayed monthly for bugs undermines any finding of deliberate indifference. Doc. 31 at 6 (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Shannon v. Graves*, No. 98-3395-KHV, 2000 WL 206315, *9 (D. Kan. Jan. 5, 2000)). Count II fails to state an Eighth Amendment claim.

Count III complains of the "staff at El Dorado Correctional Facility" and prison schedule preventing him from "get[ting] the recommended 8 hours sleep." Doc. 25 at 9. The Court has found the conditions alleged do not amount to a "depriv[ation] of the minimal civilized measure of life's necessities." Doc. 31 at 8. Intermittent disruptions to an inmate's sleep do not state an Eighth Amendment claim. *Chrisco v. Raemisch*, No. 17-CV-01036-PAB-MEH, 2018 WL 949319,

at *11 (D. Colo. Feb. 20, 2018), *report and recommendation adopted*, No. 17-CV-01036-PAB-MEH, 2018 WL 1517023 (D. Colo. Mar. 27, 2018) (collecting cases). Count III fails to state a claim.

      ***Retaliation*.** As the Court pointed out it in its initial screening order, "[t]he main claim Mr. Sperry seems to be making is one he never specifically makes: retaliation." Doc. 9 at 4. The Court advised Sperry that if he "decides to pursue a retaliation claim in an amended complaint, he must adequately allege plausible facts supporting all elements of the claim." Doc. 9 at 6. Sperry failed to heed this advice, relying on general conclusory allegations of retaliation.

      "To state a claim for retaliation in violation of his First Amendment rights," an inmate must "plead facts sufficient to establish 'that [each] defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.'" *Guy v. Lampert*, 748 F. App'x 178, 180 (10th Cir. 2018) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). An inmate must "'allege specific facts' showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Id.* (quoting *Peterson*, 149 F.3d at 1144; *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)). Mere assertions that defendants acted with retaliatory motive are insufficient.

      Sperry alleges in conclusory fashion that various acts of defendants were in retaliation for his complaints and litigation against KDOC: his placement in administrative segregation, the censorship of a photo "of a sexily dressed woman" he had ordered from a magazine, and his limited access to the law library while in segregation. He alleges that "as a prominant [sic] 'jailhouse lawyer'" he has assisted hundreds of inmates with administrative grievances, disciplinary hearings, and civil rights cases, in addition to litigating his own civil rights cases and "filing over a hundred

grievances and other administrative actions" for himself. Doc. 25 at 4, 16-17. Sperry does not allege a plausible retaliation claim based on these facts.

While Sperry's filing of grievances and civil rights litigation on his own behalf constitutes protected First Amendment activity, "acting as a jailhouse lawyer is not a constitutionally protected activity." *Brooks v. Colo. Dep't of Corr.*, 762 F. App'x 551, 560 (10th Cir. 2019). In any event, "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144. He must allege specific facts supporting that each defendant's "action was not motivated by legitimate grounds and . . . why the particular official would be motivated to improperly harm the prisoner." *Guy*, 748 F. App'x at 181. Sperry fails to allege specific facts showing that each defendant's adverse action was substantially motivated by Sperry's filing of grievances or lawsuits. Nor does he allege facts supporting that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Id.* at 180 (quoting *Peterson*, 149 F.3d at 1144).

Sperry's disagreement with KDOC staff about whether a "picture of a sexy woman" he ordered from Pulchritudinous Assets was sexually explicit does not support an inference that the photo was censored because he had recently filed a Form 9 about a different censorship decision. *See* Doc. 48-17 at 1-2. Mere temporal proximity between Sperry's protected activity—which was frequent and ongoing—and an alleged adverse action is insufficient. *Guy*, 748 F. App'x at 181. And "'[a] plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient' to establish retaliatory motive." *Waterman v. Cherokee Cty. Jail*, No. 18-3092-SAC, 2018 WL 4334526, at *2 (D. Kan. Sept. 11, 2018) (quoting *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). Nor does the allegation that

"KDOC officials" were "greatly upset" by a June 2015 court order in *Sperry v. McKune* support an inference that Sperry's placement in admistrative segregation four months later was retaliatory. Doc. 25 at 5. *See Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1204 (10th Cir. 2008) (citations omitted) ("[A] 'three-month period of time between [the] protected activity' and this first alleged instance of retaliation is 'insufficient to establish a causal connection' as a matter of law.").

Finally, Sperry's dissatisfaction with his limited access to the law library while in segregation based on a general order that applied to all inmates on restriction status does not support a retaliation claim, despite his belief that defendants "have a strong incentive for interfering with [his] access to the library." Doc. 25 at 12; Doc. 48-19. Sperry fails to state a retaliation claim because he does not allege facts supporting an inference of causation between his protected activity and the adverse actions.

***Access to Courts.*** In Count VI, VII, X, XI, and XII, Sperry alleges a violation of his right to access the courts based on his limited access to the law library and his legal files while in admistrative segregation. Doc. 25 at 12, 14. He complains of the EDCF policy requiring inmates on restrictive status to request legal materials via Form 9s and the lack of legal advisors, as well as having to store some of his excess legal files outside of his cell. He also complains about the general unfairness of disciplinary proceedings and "sham" grievance system. Doc. 25 at 15-18.

The Tenth Circuit has explained:

> The right to access the courts does not . . . guarantee inmates "the right to a law library or to legal assistance," but merely to "the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." . . . The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."

*Brooks*, 762 F. App'x at 560. To state a claim, then, Sperry must "allege more than that the prison library or legal access policies are 'subpar in some theoretical sense.'" *Id.* at 558 (quoting *Lewis*

*v. Casey*, 518 U.S. 343, 351 (1996)). He is "required to allege 'actual injury' to his right to access the courts, that is, to allege facts showing how the allegedly deficient law library and challenged [KDOC] policies impaired his ability to pursue a nonfrivolous claim." *Id.*

Sperry does not allege such facts. While he alleges he lost his appeal in *Sperry v. State*, No. 112,143, "because he was unable to get to the library and prepare the requisite amended brief or petition for review," Doc. 25 at 12, this does not show he was injured in pursuing a nonfrivolous claim. In that case, the Kansas Court of Appeals affirmed the district court's dismissal of his second K.S.A. 60-1507 motion as untimely and successive. *Sperry v. State*, No. 112,143, 2016 WL 2942280, at *1 (Kan. Ct. App. May 20, 2016). "[I]nmates do not have a right to file excessive motions, pleadings, exhibits or other documents simply because they either do not understand the rules or because they are inclined to keep pressing their case with afterthoughts, continuing argument, new examples or events, or the like." *Whitington v. Ortiz*, 307 F. App'x 179, 195 (10th Cir. 2009). Sperry cannot allege facts showing that his limited access to the law library and his excess legal files prejudiced him in pursuing a nonfrivolous argument in this case.

Nor does Sperry state a violation of his right to access the courts based on the prison disciplinary hearing process or grievance system. As the Court explained, "the right of access to the courts is not implicated by his allegations of deficient process in disciplinary hearings. Constitutional standards are satisfied if inmates are given 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.' 'The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'" Doc. 31 at 11 (quoting *Lewis v. Casey*, 518 U.S.

343, 35-56 (1996)). Sperry "has not alleged any actual prejudice to contemplated or existing litigation, such as the inability to meet a particular filing deadline or that a non-frivolous legal claim has otherwise been dismissed, frustrated, or impeded" based on the grievance system. Doc. 31 at 13 (citing *Lewis*, 518 U.S. at 350, 353). He does not state any denial of access claim.

 ***Equal Protection.*** Sperry lists equal protection as a cause of action in Counts VI, VII, VIII, X, and XII. "The threshold requirement of an Equal Protection claim is a showing that the government discriminated among groups." *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001). "A plaintiff must prove that he 1) is a member of a protected class and 2) was subjected to treatment different from those similarly situated to establish a violation of his right to equal protection under the Fourteenth Amendment." *Strope v. McKune*, No. 04-3204 JTM, 2009 WL 1874027, at *3 (D. Kan. June 30, 2009), *aff'd*, 372 F. App'x 896 (10th Cir. 2010). Because Sperry does not allege that he is a member of a protected class, he does not state an equal protection claim.

 Insofar as the Court liberally construes the complaint to allege a class-of-one claim, this too fails. Sperry "must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment;" "must establish that others, similarly situated in every material respect[,] were treated differently;" and "must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity." *Rocha v. Zavaras*, 443 F. App'x 316, 319 (10th Cir. 2011) (internal citations and quotations omitted). Sperry does not allege facts in any of these counts suggesting that he was treated differently than similarly-situated inmates. He fails to state any equal protection claim.

*Due Process.* In Counts VI, VII, VIII, X, and XII, Sperry also lists due process as a claim. These counts concern his limited access to the law library, the seizure or loss of certain items of his property, the process in disciplinary hearings, and the conditions of administrative segregation.

"To establish a due-process violation, a prison inmate challenging the conditions of his confinement must show that the defendants deprived him of a constitutionally protected liberty interest." *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018) (citing *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006)). "[A] prisoner is entitled to due process before he is subjected to conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' or disciplinary actions that 'inevitably affect the duration of his sentence.'" *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Sperry's allegations about the duration and conditions of administrative segregation, including the limitations on his access to the law library and his legal files, do not implicate a liberty interest. "Ordinarily, a prisoner does not have a liberty interest independently protected by the Due Process Clause to be placed in the general prison population, rather than in segregation." *Schmitt v. Rice*, 421 F. App'x 858, 861 (10th Cir. 2011). Moreover, the conditions Sperry alleges are not extreme. *See Stallings v. Werholtz*, 492 F. App'x 841, 845 (10th Cir. 2012); *McAdams v. Wyo. Dep't of Corr.*, 561 F. App'x 718, 721-22 (10th Cir. 2014) (inmate's placement in long-term administrative segregation for over three years not protected liberty interest where he "is confined to his cell for twenty-three hours a day; he is limited to one hour of recreation five days a week and three showers a week; the property he is allowed to keep in his cell is restricted; his visits are non-contact; and the lights are on twenty-four hours a day."). As to the disciplinary hearing

process, the Court has found that Sperry does not allege any specific hearings that impacted the length of his sentence. *See* Doc. 31 at 11.

Nor does the alleged taking of his property state a claim. "The procedural requirements of due process are not violated where the deprivation of property is 'random and unauthorized' and 'the plaintiff has an adequate [post-deprivation] state remedy.'" *Cary v. Goodrich*, No. 20-1112, 2020 WL 3638824, at *1 (10th Cir. July 6, 2020) (citations omitted). The Court has found that Sperry "had post-deprivation remedies in the form of the prison property claim process, which he utilized" and he did "not suggest[] that the state courts provided no meaningful post-deprivation remedy." Doc. 31 at 10. Sperry fails to state any due process claim.

**Freedom of Association.** Sperry lists freedom of association in Count XII, alleging that he was denied contact visits with family and friends while in administrative segregation. "[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Court has found no constitutional deprivation based on the limitation or even prohibition of contact visits for prisoners. *See McDiffett v. Stotts*, 902 F. Supp. 1419, 1427 (D. Kan. 1995). Sperry fails to state a claim on this theory.

### III.   Sperry failed to exhaust his administrative remedies for several claims.

Under the Prison Litigation Reform Act (PLRA), an inmate must exhaust all available administrative remedies before bringing a § 1983 action about prison conditions or occurrences. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*

*v. Blake*, 136 S. Ct. 1850, 1862 (2016). Courts cannot take into account special circumstances or create other exceptions to this rule, as "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857.

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 93). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Jones*, 549 U.S. at 218).

The KDOC Grievance Procedure for Inmates is set forth in Article 15 of Chapter 44 of the Kansas Administrative Regulations. *See* K.A.R 44-15-101 et seq. An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See* K.A.R. 44-15-101(b) and (d), -102(a), (b), and (c). The grievance procedure applies to "a broad range of matters that directly affect the inmate" but "shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure." K.A.R. 44-15-101a(d). Here, several of Sperry's claims must be dismissed based on his failure to exhaust available administrative remedies.

***Count I.*** Sperry alleges various constitutional and state law violations based on his placement in administrative segregation in October 2015 as an Other Security Risk (OSR). Doc.

25 at 6-7. Sperry submitted an inmate grievance form complaining that he did not qualify for OSR status or administrative segregation, seeking to "get this administratively exhausted so [he could] get the matter into court." Doc. 48-6 at 1. At each level of review, the grievance was rejected as invalid and Sperry was informed that issues of housing location and custody status are part of the classification decision-making process and so no action could be taken through the grievance process. Doc. 48-6 at 1-4. Yet, Sperry failed to comply with the proper procedure.

The process to challenge a custody classification is set forth in KDOC's Internal Management Policy and Procedure (IMPP) 11-206 at III.B.3. Doc. 48-5 at 4. An inmate must submit a Form 9 to the warden through the unit team counselor within 72 hours after receiving the custody classification decision. *Id.* Sperry received a copy of his administrative segregation report on November 4, 2015. Doc. 48-4. He did not file a classification appeal. Doc. 48-7. Because Sperry failed to comply with the KDOC procedure for challenging his custody classification, Count I must be dismissed for failure to exhaust his administrative remedies.

*Count XII.* Similarly, in Count XII Sperry alleges various violations based on the fact that while he was "illegally housed in administrative segregation" he did not enjoy various privileges that are "available to the general population." Doc. 25 at 18-19. He states that "his 'particular circumstances' for being placed in to administrative segregation did not warrant any limitations or restrictions." Doc. 25 at 19. Again, Sperry's claims based on his placement in admistrative segregation as an OSR and its implications—that he would not be treated identically to an inmate in general population—are barred because he never properly challenged his placement in administrative segregation or classification as an OSR.

When Sperry filed a grievance asking that he be given all the privileges enjoyed by inmates in the general population, he was informed by a unit team member that if he wanted "to enjoy all

of the privileges afforded to General Population offenders [he] need[ed] to work with the Segregation Review Board to set a plan in place that would allow [him] to reach that goal." Doc. 48-29 at 4, 5. Sperry then submitted the grievance to the warden and appealed to the secretary of corrections, who both reminded him that the grievance procedure could not be used to challenge the classification decision-making process. Doc. 48-29 at 1-3. Sperry's failure to properly challenge his placement in administrative segregation as an OSR precludes him from bringing claims based on this classification decision and its implications.

*Censorship of "Full Blast" in Count V.* Sperry complains of the censorship of various publications, including the book "Full Blast" by Janet Evanovich. Doc. 25 at 10-11. The process to challenge a censorship decision is set forth in IMPP 12-134 and 12-134A at V. Doc. 48-12 at 3-4, 9. When an inmate's publication is withheld, he receives a Notification of Publication Seizure/Censorship identifying the publication and the reason why it was withheld. Doc. 48-12 at 5, 12. To appeal this decision an inmate must complete the appeal section of the notice form and submit it through his unit team within 15 business days. *Id.* Sperry received notification of the seizure of "Full Blast" in April 2014. Doc. 48-13. He never appealed this censorship. Doc. 50-1 ¶ 3. Thus, any claims based on the withholding of "Full Blast" must be dismissed.

*Count VII.* In Count VII, Sperry alleges he was not permitted to keep all of his property, including some of his legal work, when he was placed in segregation in September 2015 as it exceeded the property limits. Doc. 25 at 13-14. He alleges that when he was transferred to EDCF in January 2016, he was required to reduce his property to comply with the property limits and the rest would be either mailed out or destroyed. Doc. 25 at 14. He also alleges he was denied access to his excess legal files despite a memorandum allowing it. Doc. 25 at 14; Doc. 48-21.

While Sperry alleges he grieved some of these claims, KDOC records show that he did not

30

file an appeal of any grievances for these issues. Doc. 50-1 ¶ 4. Nor did he file a property claim alleging a property loss in January 2016. Doc. 50-1 ¶ 5. Because Sperry did not complete the grievance process for any of these claims and did not file a property claim related to his alleged property loss, Count VII must be dismissed for failure to exhaust his admistrative remedies.

**Count VIII.** Sperry alleges that when he was moved to segregation on September 23, 2015, some of his property was taken to the property department and his fan was lost. Doc. 25 at 14. He alleges that defendant Ross then seized several of his legal manuals and a book manuscript as illegal "homemade books." Doc. 25 at 14. He also alleges the loss of a laundry bag in November 2015. Doc. 25 at 15. Sperry filed property claims for losses alleged to have occurred on September 23, 2015 for $150 and November 13, 2015 for $25. Doc. 50-1 ¶ 6.

To the extent Sperry is attempting to bring state tort claims under Kansas law based on these property losses, he must show he complied with the property claim process under Article 16 of Chapter 44 of the Kansas Administrative Regulations. *See* K.S.A. 75-52,138 ("Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted."); *Sperry v. McKune*, 384 P.3d 1003, 1013 (2016) ("Sperry had to file proof that he had exhausted admistrative remedies when filing his petition in order to bring state law claims."); *Vann v. Ash*, No. 15-3192-SAC-DJW, 2016 WL 6680997, at *2 (D. Kan. Nov. 14, 2016) ("[U]nder Kansas law, an inmate must exhaust administrative remedies and submit proof of exhaustion with his petition.). As he has not done so, his state property loss claims must be dismissed.

As for Sperry's constitutional claims, he was required to follow the Article 15 grievance process. "A violation of an inmate's rights under the law is addressed through the administrative grievance procedure, not as a claim for property loss." *Bohanon v. Keen*, 468 P.3d 342 (Kan. Ct.

App. 2020) (citing K.A.R. 44-15-101a (d)(1)(B)); *see also Vann*, 2016 WL 6680997, at *2 (explaining the distinct roles of Article 15 and Article 16 administrative procedures). Sperry never filed any grievances about his property being seized and destroyed by prison staff for retaliatory purposes or as part of a conspiracy to violate his rights. Doc. 50-1 ¶ 4. To the extent Sperry attempts to bring constitutional claims based on these theories, they must be dismissed.

**IV.    The official-capacity claims for money damages and declaratory relief are barred by the Eleventh Amendment, as is the injunctive relief for Count V.**

Among the relief sought, Sperry requests a declaratory judgment stating that the defendants have violated his rights and compensatory damages. Doc. 25 at 23. Insofar as these claims are against defendants in their official capacities, they are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). "A suit against state officials in their official capacities is considered a claim against the state, and thus likewise barred." *Gosselin v. Kaufman*, 656 F. App'x 916, 918 (10th Cir. 2016). As officials and employees for the KDOC during the events alleged in the complaint, defendants share the State's immunity for the claims against them. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). Moreover, state officials sued in their official capacities are not "persons" amenable to suit under § 1983. *See Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989). Sperry's claims against defendants in their official capacities for money damages and declaratory relief are barred by the Eleventh Amendment.

Additionally, some of the injunctive relief Sperry requests is also barred as he does not allege any related ongoing violations of federal law and so the relief does not fall under the *Ex parte Young* exception. For example, Sperry requests that defendants be ordered to stop seizing publications and mail, Doc. 25 at 22, but the complaint only alleges discrete wrongful seizures that occurred on specific dates in 2014, 2015, and 2016. Doc. 25 at 11-12. He does not allege an unconstitutional practice or policy of wrongful seizures so as to merit prospective relief. Sperry's requested injunctive relief related to Count V is barred by the Eleventh Amendment.

### Conclusion

This case should be dismissed because the complaint does not comply with the pleading requirements of Rule 8 and fails to allege plausible claims. Additionally, several claims are barred by the Eleventh Amendment or because Sperry failed to exhaust his administrative remedies. Defendants thus ask the Court to dismiss the complaint or, alternatively, grant summary judgment in their favor.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT

s/ Kathleen M. Barceleau
Kathleen M. Barceleau, KS No. 28401
Natasha M. Carter, KS No. 26074
Assistant Attorneys General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: kathleen.barceleau@ag.ks.gov
Email: natasha.carter@ag.ks.gov
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I certify that on September 1, 2020, the foregoing was electronically filed with the clerk of the court using the CM/ECF system and a copy was mailed first-class mail, postage prepaid to:

Jeffrey J. Sperry, #47031
El Dorado Correctional Facility
P.O. Box 311
El Dorado, Kansas 67042
Plaintiff pro se

s/ Kathleen M. Barceleau
Kathleen M. Barceleau
Assistant Attorney General

34