## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JEFFREY J. SPERRY,**

**Plaintiff,**

v.                                    CASE NO. 16-3222-SAC

**LINDSEY WILDERMUTH, et al.,**

**Defendants.**

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 52) filed by Defendants.  Defendants' motion is granted for the reasons stated herein.

### Background

Mr. Sperry describes the nature of his case as follows: "In September 2015, prison officials started targeting plaintiff for mistreatment and retaliation.  The KDOC has a system established where every member in the administration conspires with every other member to violate the constitutional and civil rights of plaintiff and every other inmate."  ECF No. 25 at 4.   He then goes on to bring ten (10) counts.[1]   To summarize, Plaintiff claims: (1) he was illegally placed in administrative segregation for 17 months; (2) he was held for just over two months in a cell infested with roaches; (3) he has been systematically prevented from getting an 8-hour period of continuous sleep since January 25, 2016; (4) Defendants have illegally seized two of Plaintiff's books, three

---

[1]  Plaintiff originally brought fourteen (14) counts, but Counts IV, IX, XIII, and XIV were severed as improperly joined, leaving Counts I, II, III, V, VI, VII, VIII, X, XI, and XII in this action.

periodicals, and one photograph; (5) he was denied access to the law library while he was held in administrative segregation; (6) and (7) some of Plaintiff's personal property, including some of his legal materials, was illegally seized; (8) none of the 25+ disciplinary hearings he has received have been fair, unbiased, or properly documented; (9) the prison grievance system is meaningless and manipulated by Defendants to automatically deny all relief and to create obstacles between prisoners and judicial review; and (10) he was denied all of his rights while housed in administrative segregation.

On September 1, 2020, Defendants filed a Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 52) and accompanying Memorandum in Support (ECF No. 53), along with the required Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment (ECF No. 54), which explains Plaintiff's burden under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Under D. Kan. Rule 6.1(d), Plaintiff had twenty-one days to respond to the motion. Plaintiff has filed three motions requesting extensions of time to respond, which were all granted. In granting Plaintiff's third, and final, request for an extension, the Court set a deadline of December 16, 2020 for Plaintiff to file a response to Defendants' motion.  *See* ECF No. 62. Plaintiff has failed to file a response by the deadline.

### Standard of Review

The Court must construe *pro se* filings liberally.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  The Court does not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Id*.  Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants."  *Id*.

**Rule 12(b)(6)**

A court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**Summary Judgment**

Because the Court has considered the *Martinez* report (ECF No. 48) filed in this case in evaluating Plaintiff's claims, it decides the motion under the request for summary judgment contained therein.  *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) (district court's dismissal under Rule 12(b)(6) of a prisoner's complaint filed pro se characterized as "irregular" where court had not limited its review to the complaint).

Summary judgment is appropriate if the pleadings and other materials before the Court show no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.

On summary judgment, the initial burden is with the movant to point out the portions of the record which show the movant is entitled to judgment as a matter of law.  *Thomas v. Wichita*

*Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013 (1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor.  *Id.* The non-movant's "burden to respond arises only if" the movant meets its initial burden of production.  *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.

The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.  *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).  However, Plaintiff's *pro se* status does not exempt him from complying with the essential federal rules of civil procedure, including Rule 56, *Birbari v. United States*, 2012 WL 2087180 at *3 (10th Cir. Jun. 11, 2012), or a court's local rules, *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006).

Local Rule 7.4(b) provides that a party or attorney who does not timely file a response to a motion waives the right to later file a response and that the Court "will consider and decide the motion as an uncontested motion.  Ordinarily, the court will grant the motion without further notice."  *See Bigler v. U.S. Bank Tr.*, 2017 WL 2362087, at *1 (D. Kan. 2017).  However, such a ruling may not be consistent with Tenth Circuit law.  *See Ellison v. English*, 2019 WL 3716448, at *1 (D. Kan. 2019) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003)) ("[T]he Tenth Circuit has directed that a district court may not grant a motion to dismiss or a motion for

summary judgment based solely on the plaintiff's failure to respond.")  Therefore, the Court will analyze Defendants' motion on its merits despite Plaintiff's failure to abide by the local rules, but in doing so, the Court deems Defendants' facts undisputed to the extent they are supported by the record.  *See* Fed. R. Civ P. 56(e).

## Analysis

Having considered the matter, the Court finds Defendants' motion should be granted.

## Count I – Administrative Segregation

Plaintiff alleges that his placement and confinement in administrative segregation violates the Eighth Amendment to the United States Constitution.  The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment.  *See* U.S. Const. amend. VIII.  The Supreme Court has rejected arguments that segregation or solitary confinement are cruel and unusual punishment, generally, finding that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  *Hewitt v. Helms,* 459 U.S. 460, 468 (1983).  "To the extent that such conditions are restrictive and even harsh," but not cruel and unusual, "they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  "[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt,* 459 U.S. at 468.  *See also Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir. 1996).

However, specific conditions of a prison's administrative segregation unit may violate the Eighth Amendment.  To be considered cruel and unusual, the conditions of confinement must: 1) be grossly disproportionate to the severity of the crime warranting punishment, 2) involve the wanton and unnecessary infliction of pain, or 3) deprive an inmate of the minimal civilized

measure of life's necessities.  *See Rhodes,* 452 U.S. at 346–47.  Under the Eighth Amendment, prisons are required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Tafoya v. Salazar*, 516 U.S. 912, 916 (10th Cir. 2008).

"An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency" claimed.  *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001).  "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes,* 452 U.S. at 347).  "Alternatively, a condition must be sufficiently serious so as [to] constitute a substantial risk of serious harm."  *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993)). "The subjective component requires that a . . . prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety."  *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).  The subjective component is met if the prisoner shows the defendants "knew he faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'"  *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)).  "[T]he Eighth Amendment requires only 'reasonable safety,'" so that "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'"  *Howard v. Waide,* 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer,* 511 U.S. at 844–45).

Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Prison officials are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). However, "[o]nly when a prison administrator's actions are taken in bad faith and for no legitimate purpose are they not insulated from our review." *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 754–55 (10th Cir. 2014) (citing *see Whitley v. Albers,* 475 U.S. 312, 322 (1986)).

Plaintiff alleges a list of conditions he endured in administrative segregation. Starting from the position that "restrictive and even harsh" conditions are not unconstitutional, *see Rhodes*, Plaintiff has the burden of alleging conditions sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or subject him to a substantial risk of serious harm. Plaintiff has not met this burden. The most serious allegations Plaintiff makes are that he was kept in 24-hour lockdown with no human interaction, he was subjected to 24-hour lighting, he was denied visitation privileges, and his time outdoors was limited to four 1-hour sessions per week. While these conditions are certainly harsh and restrictive, they do not rise to the level of cruel and unusual punishment so as to constitute an Eighth Amendment violation. *See Ajaj v. United States,* 293 F. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an 8th Amendment violation). Plaintiff has failed to allege that he has been deprived of life's basic necessities or that he has been subjected to a

substantial risk of serious harm.  Therefore, Plaintiff's Eighth Amendment claim in Count I is subject to dismissal.

Plaintiff also alleges violation of his rights under the First Amendment.  He claims he was placed in segregation "in retaliation for his successful litigation against KDOC and its staff members."  ECF No. 25 at 5.  As with his other claims, he relies on sweeping statements, failing to plead the specific facts necessary to state a plausible claim for retaliation in violation of his First Amendment rights.  Plaintiff does not "plead facts sufficient to establish 'that [each] defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.'"  *Guy v. Lampert*, 748 F. App'x 178, 180 (10th Cir. 2018) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).

Plaintiff lists the Fourteenth Amendment in the opening paragraph of Count I but gives no indication what Fourteenth Amendment right was allegedly violated.  However, whether he believes his right to equal protection or his right to due process was violated, he fails to state a claim.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City of Cheyenne,* 427 F.3d 775, 792 (10th Cir. 2005) (quotations omitted); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006).  Since Plaintiff does not explain how he believes his right to equal protection was violated, the Court will consider two possibilities.  If Plaintiff is claiming that he was treated differently than inmates in the general population, to succeed he would have to demonstrate that he was "similarly situated" to those general population inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (quoting *Turner v. Safley,* 482 U.S. 78,

89 (1987)).  This claim must fail because Plaintiff is, by definition, was not similarly situated to inmates in the general population because he was in administrative segregation.

If Plaintiff is claiming he was treated differently than other inmates in administrative segregation, Plaintiff could meet the "similarly situated" requirement.  However, he includes no allegations of unequal treatment among such similarly situated inmates.

Plaintiff's equal protection claim fails because he does not allege facts establishing the essential elements.  *See Rider v. Werholtz,* 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th Cir. 1996)).  He fails to allege any facts suggesting that he was treated differently from other similarly situated inmates because he is a member of a suspect classification, or that defendants' acts did not serve a legitimate penological purpose.  *See Fogle,* 435 F.3d at 1261; *Barney,* 143 F.3d at 1312.  Plaintiff has failed to state a claim for violation of his equal protection rights.

If Plaintiff intended to claim a violation of his right to due process under the Fourteenth Amendment, he needed to show (1) that he has a constitutionally protected liberty interest in avoiding placement in administrative segregation, and (2) that the procedures used to place and maintain him in administrative segregation did not satisfy constitutional requirements.  *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Kentucky Dept. of Cor. v. Thompson*, 490 U.S. 454, 460 (1989).  Plaintiff does not specify what liberty interest he claims.  However, in his amended complaint, Plaintiff repeatedly refers to and quotes IMPPs on segregation and discusses the ways Defendants failed to comply with those regulations.  From this, the Court infers that Plaintiff believes the IMPPs create a protected liberty interest.  That is simply not the case.  Denying an individual certain process, however mandatory under state law, does not itself deny liberty.  *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  The regulatory provisions upon which

Plaintiff relies in this action are neither due nor required under the United States Constitution. *See Lloyd v. Suttle,* 859 F. Supp. 1408, 1410 (D. Kan. 1994). Thus, to the extent Plaintiff complains that state administrative requirements were not followed when he was placed in administrative segregation, no constitutional due process is implicated. *Id.*

Nor does the Constitution provide Plaintiff with a liberty interest in remaining in the general population of the prison. *Wilkinson*, 545 U.S. at 221; *Hewitt*, 459 U.S. at 468; *Templeman*, 16 F.3d at 369. However, prison conditions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may create a liberty interest protected by the Due Process Clause. *Fogle*, 435 F.3d at 1259 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In determining whether prison conditions impose such an atypical and significant hardship that a liberty interest exists, the Tenth Circuit has considered several factors, including whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . .." *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). Courts making this determination must be mindful that prison officials "should be free from second-guessing or micromanagement from the federal courts." *Id.*

Plaintiff alleges his placement in administrative segregation was supported by largely fabricated or inaccurate evidence and was in retaliation for pursuing legal claims on behalf of himself and other prisoners. But, he does no more than make the allegation and offers no substantiation. His claim of a vast conspiracy against him does not offer plausible support. Plaintiff fails to state a claim for violation of his Fourteenth Amendment rights.

Plaintiff also claims his placement in administrative segregation violated state law, constituted a conspiracy to violate his civil rights, and further constituted the torts of outrageous conduct, mistreatment of a confined person, breach of fiduciary duty, and negligence.

Plaintiff's conclusory claims of violations of Kansas law do not state a claim of federal constitutional violation and are not a proper basis for a federal civil rights complaint. Thus, Plaintiff's claims that Kansas statutes, regulations, or common law have been violated do not entitle him to relief under § 1983.

"To properly allege a conspiracy under § 1983, a plaintiff must allege specific facts that plausibly show (1) an agreement and concerted action between the defendants and (2) an actual deprivation of constitutional rights." *Turnbough v. Wantland*, 676 F. App'x 811, 814 (10th Cir. 2017), citing *Shimomura v. Carlson*, 811 F.3d 349, 359 (10th Cir. 2015). "Conclusory allegations of conspiracy w[ill] not suffice." *Shimomura,* 811 F.3d at 359.  The plaintiff must show, either by direct or circumstantial evidence, that there was "a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences." *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990) (citations omitted).  Plaintiff has done no more than make repeated broad, conclusory allegations of conspiracies.  In this count and in every other count of the complaint, he fails to state a plausible claim for conspiracy to violate his civil rights.

Plaintiff's listing of the "tort of outrageous conduct" here and in every other count of the complaint is confusing.  Kansas has no tort of outrageous conduct.  It may be Plaintiff is referring to the tort of outrage, which is the same as the tort of intentional infliction of emotional distress under Kansas law. *Hallam v. Mercy Health Center of Manhattan, Inc.*, 97 P.3d 492, 494 (Kan. 2004).  "A claim for the intentional infliction of emotional distress or the tort of outrage requires: (1) the defendant act intentionally or in reckless disregard of the plaintiff; (2) the actions must be

'extreme and outrageous'; (3) the plaintiff has to experience 'extreme and severe' mental distress; and (4) the plaintiff's mental distress has to be causally connected to the defendant's actions." *Estate of Randolph v. City of Wichita*, 459 P.3d 802, 805 (Kan. App. 2020) (quoting *Valadez v. Emmis Communications*, 229 P.3d 389, 391 (Kan. 2010)).  Plaintiff does not refer to any of these elements in the complaint.  He fails to state a claim for intentional infliction of emotional distress.

Plaintiff's listing of "mistreatment of a confined person" is similarly mystifying. Mistreatment of a confined person is not a tort under Kansas law.  Rather, it is a crime.  *See* K.S.A. 21-5416.  There is no indication that Kansas courts have found the criminal statute can be used as the basis for a civil action.  As a result, this claim is frivolous.

As for breach of fiduciary duty, Kansas courts have not recognized an action for breach of fiduciary duty in the prison context, and courts in other states have found no fiduciary duty between prison officials and prisoners.  *See Hernandez v. Cate*, 2014 WL 6473769, *3 (C.D. Cal. Oct. 16, 2014) (no authority for proposition that as a general matter a California state prison official has a fiduciary relationship with a state prisoner with respect to conditions of confinement); *Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D. Mass. 2014) (no fiduciary duty owed by jail supervisor to pretrial detainee who alleged numerous constitutional violations including deliberate indifference to health).  Plaintiff raises this claim in nine of his counts, again doing no more than listing it.  He fails to state a claim for breach of fiduciary duty.

Finally, Plaintiff's mention of negligence here and in every other count is also misplaced. To state a claim for negligence, the plaintiff must establish the existence of a duty, a breach of that duty, an injury, and proximate cause.  *Montgomery v. Saleh*, 466 P.3d 902, 907 (Kan. 2020). Plaintiff again does no more than list the claim and makes no allegation of duty, breach of duty, resulting injury, or proximate cause.  He fails to state a claim for negligence.

In summary, Plaintiff fails to state any claim upon which relief may be granted in Count I of his complaint.

## Count II – Roaches

In his second count, Plaintiff alleges that from September 23, 2015, until early December, 2015, after being placed in administrative segregation, he was housed in a portion of Lansing Correctional Facility that was infested with cockroaches.  He states that "[a]nywhere from 3 to 20 roaches could be observed crawling across" the cell at any given time and "[e]very single night [he] was awakened by roaches crawling over his body."  He filed Form-9s and grievances about the roaches.  Defendant Wildermuth responded that an exterminator sprays regularly but it doesn't do any good.  Plaintiff states Defendant Wildermuth "finally" moved him after more than ten weeks.  Plaintiff also states that Defendants Pryor, Burris, Goddard, and Roberts failed to take any corrective measures to eradicate the roaches.

Plaintiff alleges that his exposure to roach infested cells violates the Eighth Amendment to the United States Constitution.  Plaintiff has not stated a claim for a constitutionally inadequate condition of confinement.  He has not alleged a condition that is sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or sufficiently serious so as to constitute a substantial risk of serious harm.  *Shannon,* 257 F.3d at 1168.  The condition Plaintiff describes, while unsavory, does not reach this threshold.

However, even if Plaintiff's allegations were found to meet the objective component, they do not meet the subjective one.  To meet the subjective component, Plaintiff must allege the defendants acted with deliberate indifference.  This he has not done.  His allegations show that an exterminator was treating the unit regularly.  Prison officials were taking reasonable measures to abate the condition.  *See Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992) (insect infestation

may violate Eighth Amendment, but court would not intervene where the problem addressed by monthly treatment); *see also Shannon v. Graves*, No. 98-3395-KHV, 2000 WL 206315, *9 (D. Kan. Jan. 5, 2000). Plaintiff fails to state an Eighth Amendment claim in Count II.

Plaintiff also lists conspiracy to violate his civil rights and "the torts of battery, outrageous conduct, mistreatment of a confined person", breach of fiduciary duty, and negligence. All but battery are discussed and disposed of under Count I above. As for battery, defined as "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive" (*Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007)), Plaintiff does not allege contact by any defendant or the requisite intent.

Count II of the complaint is dismissed for failure to state a claim upon which may be granted.

## Count III – Sleep Deprivation

In Count III, Plaintiff complains of two conditions at EDCF that result in depriving him of sleep. First, he states that the staff at EDCF "purposely awaken every inmate every few hours to assure that his sleep is disrupted." ECF Doc. 25, at 9. Plaintiff then provides the schedule:

| | |
|---|---|
| 00:00 – 03:00 | Cleaning crew in the unit. |
| 02:00 – 03:00 | Sheet exchange, sweat turn in, blanket exchange. |
| 04:00 – 04:30 | Breakfast served. |
| 05:00 – 05:30 | Breakfast trays collected. |
| 06:30 – 08:30 | Yard, cell cleaning, or barber |
| 06:30 – 08:30 | Ice passed out. |
| 10:30 – 11:00 | Lunch served. |
| 12:00 – 14:00 | Unit Team and Mental Health counselors make rounds. |
| 14:30 – 16:30 | Showers. |
| 17:00 – 17:30 | Dinner served. |
| 17:30 – 18:00 | Dinner trays collected. |
| 18:00 – 22:00 | Sheets, sweats, blankets, toilet paper passed out. |
| 22:30 – 23:00 | Standing I.D. count. |

The second condition Plaintiff complains of is a fluorescent night light in his cell that shines 24 hours a day.

Plaintiff claims he should be allowed an 8-hour block of time to get continuous sleep. He alleges this "[c]onsistent and extended sleep deprivation or interruption" has caused him to lose weight, made him irritable, causes extreme stress, exacerbates his Hepatitis-C infection, caused diabetes, and causes inflammation of his joints.

Plaintiff states he submitted several Form-9s and grievances to Defendants Patterson, Jackson, Heimgartner, Burris, Goddard, and Roberts, but "they refused to take any corrective measures." Plaintiff claims these defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He also alleges the named defendants conspired to violate his civil rights by "failing to prevent or correct the sleep deprivation."

To be properly named as a defendant in a § 1983 action, a person must personally participate in the alleged violation of constitutional rights. *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). It is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who

actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Plaintiff does not make a single allegation that any of the named defendants personally participated in the alleged violation, other than responding to grievances.  Plaintiff does not claim any of these defendants created the schedule or any facts pointing to a conspiracy directed at Plaintiff to deprive him of sleep.  The schedule he provides was presumably applicable to all inmates.

Further, Plaintiff's allegations do not demonstrate that he has been deprived of the minimal civilized measure of life's necessities.  *See Chrisco v. Raemisch*, No. 17-CV-01036-PAB-MEH, 2018 WL 949319, at *11 (D. Colo. Feb. 20, 2018) (finding awakening prisoner three or four times a night to perform restraint checks was not sufficient to show deprivation of the "minimal civilized measure of life's necessities"); *Silverstein v. Fed. Bureau of Prisons*, No. 07–cv–02471–PAB– KMT, 2011 WL 4552540, at *18 (D. Colo. Sept. 30, 2011) (finding that conditions where a prisoner was able to get 4–5 hours of sleep "do[ ] not objectively amount to a serious deprivation of the basic human need for sleep"); *Walton v. Grounds*, No. SA–10–CA–60–NSN, 2011 WL 632842, at *2 (W.D. Tex. Feb. 11, 2011) (finding "intermittent disruptions" to a prisoner's sleep insufficient to state an Eighth Amendment claim without injury); *Blakely v. Snively*, No. C07– 1803RAJ, 2008 WL 4643831, at *6–7 (W.D. Wash. Oct. 17, 2008) (finding conditions where an inmate heard an hourly "vibrating bang" from a security door during his sleep not "sufficiently serious" to state and Eighth Amendment claim).

Plaintiff's allegations also do not show a condition sufficiently serious so as to constitute a substantial risk of serious harm to Plaintiff.  Plaintiff supplies only a conclusory list of alleged harms.  Count III is subject to dismissal for failure to state a claim.

**Count V – Seizure/censorship of publications received in mail**

In Count V, Plaintiff describes six incidents of seizure of his non-legal mail.  The first occurred in April of 2014, outside the limitation period.  The remaining five incidents are:

1. December, 2015 –Plaintiff's issue of *US Weekly* was rejected.  He was sent a notice stating the rejection was because the magazine posed a threat to the safety and security of the facility due to the inclusion of drink recipes.  Plaintiff appealed, and his appeal was denied because the content met the criteria for censorship of mail.  See ECF No. 48, at 9.

2. January, 2016 – Plaintiff's January issue of *Wired* magazine was rejected because it posed a threat to the security of the facility in that it contained information and direction for construction of a weapon.  Plaintiff's appeal was denied.

3. April, 2016 –Plaintiff's April issue of *Wired* magazine was rejected because it included content to incite violent behavior.  Plaintiff's appeal was denied.

4. April 8, 2016 – Plaintiff was sent a notice of mail censorship of photographs on the basis that they were sexually explicit.  Plaintiff appealed the seizure, and his appeal was denied.

5. Plaintiff received in the mail titled *The Target* by David Baldacci.  The seizure notice Plaintiff received listed particular pages of the book and stated the content posed a threat to the safety and security of the facility.   Plaintiff appealed the seizure, and his appeal was denied.

Plaintiff alleges violation of his First and Fourteenth Amendment rights, conspiracy, and the torts of property deprivation, outrageous conduct, mistreatment of a confined person, breach of fiduciary duty, and negligence.

While the First Amendment protects a prisoner's right to receive mail, prison officials may regulate that right as long as the regulation is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 407, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).   Plaintiff does not seem to be challenging the regulations on which the censorship was based, K.A.R. 44-12-313 and 44-12-601.   Rather, he seems to dispute the application of the regulations.   In each case, the prison officials had a reasonable basis for the censorship decision based on the state regulations.   Plaintiff has not shown that "there is a plausible inference to be drawn that the basis for that censorship was not reasonably related to a legitimate penological interest." *Vreeland v. Griggs*, No. 12-CV-01921-PAB-KMT, 2015 WL 13236349, at *4 (D. Colo. Aug. 28, 2015) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1187–88 (10th Cir. 2010).   Plaintiff only continues to make conclusory claims of retaliation.    "In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene." *United States v. Gordon,* 168 F.3d 1222, 1228 (10th Cir. 1999) (internal quotation marks and citation omitted).   Plaintiff has failed to state a plausible claim in Count V for a violation of his rights under the First Amendment.

Plaintiff also alleges in Count V a violation of his Fourteenth Amendment rights.   Under the Fourteenth Amendment, a prison must use minimal procedural safeguards before prison officials can censor an inmate's communication. *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004).   These safeguards include: (1) notification of censorship; (2) ability of the inmate to protest the censorship decision; (3) and complaints must be handled by a prison official other than the person who made the initial censorship decision. *Id.*

Plaintiff received a notification of censorship in each instance.   The notice stated he could appeal the censorship, which he did, and his appeal was considered by a prison official other than the mailroom staff.  Defendants provided the required minimal procedural safeguards.

As for the deprivation of his property, the regulations provide that the inmate must make disposition of censored publications by either sending the publication to a location of his choosing as his expense or having the publication destroyed.  IMPP 12-134 at VI (ECF No. 48-12 at 4). Because Plaintiff was given the option to send the censored items to a location of his choosing, he was not unlawfully deprived of his property.  *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).

If Plaintiff claims he was deprived of his property by an official in defiance of the state regulations and policies, "neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy...."  *Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir. 1989), *overruled on other grounds by Clark v. Wilson,* 625 F.3d 686, 691 (10th Cir. 2010); *see also Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (holding that an unauthorized intentional deprivation of property by a state employee does not violate due process if an adequate post-deprivation remedy for the loss is available).  Even if the administrative remedies provided by KDOC are not an adequate post-deprivation remedy, an adequate post-deprivation remedy in state court is sufficient.  *See, e.g., Cooper v. Belcher,* 2010 WL 3359709, at *15 (D. Colo. Aug. 25, 2010) (unpublished) (noting that "[a]dequate state remedies are not limited to the filing of grievances, but include filing complaints in state court.").  Plaintiff does not allege any facts that demonstrate he lacks an adequate remedy in state court.  Absent such an allegation, the taking of his property does not violate due process. *See Harris v. Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (citing *Freeman v. Dep't of Corrs.,*

949 F.2d 360, 362 (10th Cir. 1991)).  Plaintiff has failed to state a claim in Count V for denial of his due process rights.

As for Plaintiff's claims of state torts, all have been previously discussed except for "deprivation of property."  The Court is unsure what tort Plaintiff refers to and will not construct legal arguments for Plaintiff despite his *pro se* status.  *See Garrett,* 425 F.3d at 840.

Count V is dismissed for failure to state a claim.

**Count VI – Denial of access to law library**

In this count, Plaintiff complains he was not provided with "legal advisors or access to persons trained in the law" while in segregation, could not personally access the online legal research terminal, and had to submit requests for legal research via Form 9s.  He asserts he should "have been escorted to the library for several hours a week."  ECF No. 25 at 12.

Prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  However, prisoners do not have an abstract, free-standing right to physically access a law library.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To state an actionable claim, a prisoner must demonstrate the alleged shortcomings of the legal assistance provided by the jail hindered his efforts to pursue a nonfrivolous legal claim.  *Id.*  In other words, a claimant must show he suffered actual harm or prejudice as a result of the lack of legal resources.

Here, Plaintiff alleges that he "lost the appeal of his K.S.A. 60-1507 motion . . . because he was unable to get to the library and prepare the requisite amended brief or petition for review."  ECF No. 25 at 12.  In that case, the Kansas Court of Appeals affirmed the district court's dismissal of Plaintiff's second 60-1507 motion as untimely and successive.  *Sperry v. State*, No. 112,143, 2016 WL 2942280, at *1 (Kan. App. May 20, 2016).  "[I]nmates do not have a right to file excessive motions, pleadings, exhibits or other documents simply because they either do not

understand the rules or because they are inclined to keep pressing their case with afterthoughts, continuing argument, new examples or events, or the like." *Whittington v. Ortiz*, 307 F. App'x 179, 195 (10th Cir. 2009). Plaintiff does not plead facts demonstrating his limited access to the law library prejudiced him in pursuing a meritorious argument in his successive state habeas action. Because Plaintiff has not shown his lack of physical access to the law library hindered his efforts to pursue a nonfrivolous legal claim, he has not stated a claim for violation of his right to access the courts in Count VI.

Plaintiff also claims violation of his equal protection and due process rights. He makes no allegation in Count VI that Defendants have treated him disparately than other similarly situated inmates in his access to the law library. Nor does he describe how he believes his due process rights have been violated. He has not alleged a deprivation of a liberty or property interest in connection with this claim. Plaintiff fails to state a claim for violation of his equal protection or due process rights.

As for Plaintiff's conspiracy claim, since he has not adequately pleaded a violation of his federal rights in Count VI, he cannot show Defendants' engaged in a conspiracy to violate those rights. *See Snell,* 920 F.2d at 701.

Finally, Plaintiff's alleged state tort claims are without merit, as discussed previously. Count VI is dismissed for failure to state a claim.

**Count VII – Seizure of personal property and racketeering**

In Count VII, Plaintiff complains of Defendants' enforcement of a KDOC regulation limiting the amount of property a prisoner may keep in his cell to what will fit into one 15" x 13.75" x 21" box. Plaintiff alleges this regulation was not enforced against him until his transfer to EDCF, and that he "always maintained several (4-5) boxes of legal files in his cell and it was

never an issue." He further alleges that the regulation is "never enforced" unless an inmate gets transferred to another facility or "if an officer has a vendetta against" a particular prisoner. Plaintiff states he was allowed to keep in his cell one property box and one legal box and was forced to mail out books and other items.

Regulation of the type and quantity of personal property inmates may possess in their cells is not an atypical, significant hardship of prison life. *Cosco v. Uphoff,* 195 F.3d 1221, 1224 (10th Cir. 1999) (permanent separation of an inmate from his property does not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life). Instead, such regulation is an ordinary incident of prison life and well within the bounds of what a sentenced inmate may reasonably expect to encounter during incarceration. Plaintiff has not alleged facts showing that the property deprivations of which he complains were an "atypical and significant hardship" that subjected him to conditions significantly different from those ordinarily experienced by inmates serving their sentences.

As long as Plaintiff had a chance to say where the property would be sent, Defendants satisfied procedural due process. *Scott v. Case Manager Owens (SCF),* 80 F. App'x 640, 643 n. 2 (10th Cir. 2003) (unpublished) (citing *Searcy v. Simmons,* 299 F.3d 1220, 1229 (10th Cir. 2002) (Due process is satisfied when a prison disposes of an inmate's property after providing a meaningful opportunity for the inmate to send it to someone outside the prison.)).

Plaintiff also alleges as one of his claims in Count VII that Defendants "are operating a racket of selling him property that they later come and illegally seize just so they can sell him more stuff." He claims Defendants' actions constitute a "clear violation of commerce laws and the RICO act." This claim is subject to dismissal. The Court finds no factual support for Plaintiff's claim of racketeering. Among other things, Plaintiff fails to allege he has been "injured in his

business or property by reason of" the alleged violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c); *see also Peterson v. Shanks*, 149 F. 3d 1140, 1145 (10th Cir. 1998) ("A private RICO claim can only be brought by a plaintiff claiming a personal injury arising from the use or investment of racketeering income."). Plaintiff fails to state an actionable civil RICO claim.

Count VII is dismissed for failure to state a claim.

## Count VIII – Seizure or loss of personal property

Plaintiff alleges he lost several books and a fan when he was taken to segregation at LCF. He further alleges several of his legal manuals and a book manuscript were seized when he complained of the property loss. Plaintiff also claims his laundry bag containing several articles of clothing was lost. He filed property claims for all of the lost or seized property, which were denied.

As previously discussed, a negligent or intentional deprivation of property under color of state law is not cognizable as a cause of action under § 1983 if the plaintiff has adequate state remedies. *Hudson*, 468 U.S. at 532-34; *see also Gillihan*, 872 F.2d at 939. Plaintiff had post-deprivation remedies in the form of the prison property claim process, which he utilized. The fact that his claims were denied, standing alone, does not demonstrate a violation of due process. In addition, Plaintiff has not suggested that the state courts provided no meaningful post-deprivation remedy, such as a tort action under state law. *See Scott,* 80 F. App'x at 643 (citing *see Hudson,* 468 U.S. at 532–34; *Winters v. Bd. of County Comm'rs,* 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures.")). The Court concludes that Plaintiff has failed to state an arguable claim for relief with regard to the taking of his property, and that this claim is subject to dismissal.

**Count X – Unfair disciplinary proceedings generally**

Plaintiff claims Defendants have failed to give him fair, unbiased, and properly documented disciplinary hearings.  In other words, he appears to be challenging the procedures used in disciplinary hearings, not the validity of a particular disciplinary conviction.  He claims violation of his Fourteenth Amendment right to due process and First Amendment right of access to the courts, as well as his laundry list of state law violations.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law."  *Wilson v. Jones,* 430 F.3d 1113, 1117 (10th Cir. 2005).  This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).  Disciplinary actions implicate a liberty interest entitled to procedural due process protection only when they inevitably affect the duration of the prisoner's sentence. *Sandin,* 515 U.S. at 484, 487; *Klein v. McClaury*, 221 F.3d 1352 (10th Cir. 2000) (Table).

While he makes many broad, conclusory statements about disciplinary hearings in Kansas prisons, Plaintiff only briefly mentions four specific disciplinary hearings.  One occurred in 2012, well outside the limitation period of two years.  *See Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008); Kan. Stat. Ann. § 60–513(a)(4).  The other three, according to Plaintiff's allegations, apparently did not affect the duration of his sentence.  Consequently, he was not entitled to due process under the Fourteenth Amendment.

As for Mr. Sperry's First Amendment claim, the right of access to the courts is not implicated by his allegations of deficient process in disciplinary hearings.  Constitutional standards are satisfied if inmates are given "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  *Lewis,* 518 U.S. at 356.  "The

tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Count X of the complaint fails to state a claim and is subject to dismissal.

**Count XI – Prison grievance system is "meaningless mockery"**

Plaintiff alleges that he has filed over a hundred grievances and has assisted other inmates with thousands more grievances and "not a single time has the proceeding resulted in a finding in favor of the inmate." He claims the grievance system is a "sham" and a "mockery that serves no purpose other than to prevent inmates from receiving relief from abuses" by prison staff.

Even if Mr. Sperry alleged more than conclusory statements to support his general claims of grievance mishandling, the Court would find that he states no constitutional claim. This is because a prison inmate has no federal constitutional right to a prison grievance procedure. *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished). It therefore follows that he has no constitutional right to relief through such a procedure. For these reasons, allegations that "KDOC administrators" manipulated the grievance procedure to "automatically deny all relief" and to "create multiple obstacles" and "delay relief indefinitely" do not rise to the level of a federal constitutional claim. *See Walters v. Corrections Corp. of America,* 119 F. App'x 190, 191 (10th Cir. 2004) (unpublished) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), *cert. denied,* 546 U.S. 865 (2005); *Sims v. Miller,* 5 F. App'x 825, 828 (10th Cir. 2001) (unpublished) ("[I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance

procedures, he failed to allege the violation of a federal constitutional right."); *see also Walker v. Mich. Dept. of Corrections,* 128 F. App'x 441, 445 (6th Cir. 2005) (unpublished) (collecting cases).

Plaintiff claims that Defendants have denied him access to the courts by "making a meaningless mockery out of the prison grievance system."  However, to state a denial of access claim, Plaintiff must demonstrate that the act of which he complains actually "hindered his efforts to pursue a legal claim" in court and thus caused him "actual injury."  *Lewis,* 518 U.S. at 348, 350.  Plaintiff has not alleged any actual prejudice to contemplated or existing litigation, such as the inability to meet a particular filing deadline or that a non-frivolous legal claim has otherwise been dismissed, frustrated, or impeded.  *Id.* at 350, 353.  Thus, he has not alleged facts showing this essential element of a denial of access claim.

Count XI is subject to dismissal.

**Count XII – Denial of all rights while in segregation**

The majority of Plaintiff's allegations in Count XII are repetitive and have been addressed by the Court above.  He does, however, list freedom of association as one of his rights that Defendants denied him while in administrative segregation, complaining that he was denied contact visits with family and friends.  "[F]reedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131 (citations omitted).  "[T]he Constitution allows prison officials to impose reasonable restrictions upon visitation." *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004).  "When a prison regulation, like the visitation policy at issue herein, is challenged on constitutional grounds, the burden 'is not on the State to prove the validity of the prison regulations but on the prisoner to disprove it.'" *Burnett v. Jones*, No. CIV-10-257-M, 2010 WL 5125718, at *16 (W.D. Okla. Nov. 8, 2010) (quoting *Overton,* 539 U.S. at 132).  Plaintiff has not

met that burden.  Further, this Court has previously found that the limitation or even prohibition of contact visits, particularly while in segregation, is not violation of a prisoner's constitutional rights.  *See McDiffett v. Stotts*, 902 F. Supp. 1419, 1427 (D. Kan. 1995); *Jiminez v. Stotts*, No. 92-3042, 1994 WL 377021, *2 (D. Kan. June 27, 1994) (citing *Block v. Rutherford*, 468 U.S. 576, 587-88 (1984)); *Kimball v. Stotts*, No. 92-3413, 1993 WL 455266 (D. Kan. Oct. 27, 1993) (rejecting inmate's challenge to being allowed only noncontact visitation for 90 days).

## Conclusion

The pleadings and other materials before the Court show no genuine issue as to any material fact and show that Defendants are entitled to judgment as a matter of law.  Therefore, Defendants' motion is granted, and the case is dismissed.


**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 52) is **granted**.  This matter is **dismissed** for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

**Dated in Topeka, Kansas, on this 30th day of December, 2020.**


**s/  Sam A. Crow**
**SAM A. CROW**
**U. S. Senior District Judge**