## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEFFREY J. SPERRY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case. No. 16-CV-3222-SAC** |
| | ) | |
| LINDSEY WILDERMUTH, *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Lindsey Wildermuth, Andrew Lucht, K. Lee, Bill Shipman, Hanna Booth, and Robert Sapien, by and through counsel, Assistant Attorney General Michael J. Duenes, in accordance with D. Kan. Rule 7.1(a) and D. Kan. Rule 7.6, submit this Memorandum in Support of their Motion for Summary Judgment under Fed. R. Civ. P. 56. The Notice required by D. Kan. 56.1(f) is also provided with this Memorandum. Defendants respectfully request that judgment be granted in their favor and state the following in support.

### NATURE OF THE CASE

Jeffrey Sperry filed his original § 1983 complaint in this matter on November 7, 2016. (Doc. 1 at 1). He filed an amended complaint on November 28, 2017, which included 14 counts, four of which were subsequently severed as improperly joined. (Doc. 25 at 1, 5-20; Doc. 63 at 1, n. 1). Defendants moved for dismissal, or in the alternative, for summary judgment. (Doc. 52 at 1).

In a December 30, 2020, Memorandum and Order, this Court granted Defendants' motion, stating that Sperry's ten counts were "dismissed for failure to state a claim upon which relief can be granted." (Doc. 63 at 1, 27). On appeal, the Tenth Circuit Court of Appeals affirmed the

1

dismissal of eight of Sperry's counts, but reversed and remanded the dismissal of the following two claims: Count I – The First Amendment retaliation claim against Officers Wildermuth and Lucht; and Count V – The First Amendment claim against Defendants Lee, Shipman, Booth, and Sapien for withholding of Sperry's mail. *Sperry v. Wildermuth*, No. 21-3009, 2022 WL 946936, at *9 (10th Cir. 2022). However, the panel noted that "[b]ecause the district court did not rule on the defendants' alternative argument for summary judgment, the court should consider that argument on remand, if appropriate, as to the claims involving (1) retaliation against defendants Wildermuth and Lucht and (2) censorship of a photograph, the book *The Target*, and the magazines *Us Weekly* and *Wired Magazine*." *Id*. at *9, n. 15.

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## NO GENUINE ISSUE EXISTS

1.      Jeffrey J. Sperry is an inmate in the custody of the Kansas Department of Corrections (KDOC) who was housed at Lansing Correctional Facility (LCF) from October 10, 1997 to January 22, 2016, when he was transferred to El Dorado Correctional Facility (EDCF). *See* Exhibit 1 (KASPER Profile for Jeffrey J. Sperry, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007)).

2.      On September 23, 2015, after searching Sperry's cell, correctional officers found dangerous contraband. Based on this, Sperry was issued a disciplinary report for the contraband and placed in segregation for prehearing detention. (Doc. 25 at 6; Doc 48-2 at 1).

3.      Sperry pled no contest to the disciplinary report. (Doc. 25 at 6).

4.      On October 23, 2015, Sperry was classified by the Segregation Review Board as "Other Security Risk" (OSR) and placed in administrative segregation. He was approved for transfer from LCF to "another Kansas facility or another State or Federal facility[.]" (Doc. 48-3 at 1).

5.      On October 30, 2015, Officer Wildermuth filed an Administrative Segregation Report (ASR), concluding that "[b]ased off inmate Sperry's malicious and maladaptive behavior he has been recommended by the Lansing Correctional Facility Segregation Review Board for a change in status to other Security Risk and be sent to El Dorado Lockdown." (Doc. 48-4 at 1).

6.      As support for Sperry's recommended "change in status to other Security Risk," Officer Wildermuth noted Sperry's "(26) Twenty-six Disciplinary Reports" during his incarceration at LCF. (Doc. 48-4 at 1; Decl. of James Gift at ¶ 5 and Exhibit A).

7.      Sperry's change in status to OSR was further supported by his previous placements in administrative segregation in January 2008, February 2010, May 2014, and September 2015. (Doc. 48-4 at 1; Decl. of Gift at ¶ 6 and Exhibit A).

8.      The process to challenge a custody classification is provided in KDOC's Internal Management Policy and Procedure (IMPP) 11-106 at III.B.3, which requires an inmate to submit a Form 9 to the warden through the unit team counselor within 72 hours after receiving a custody classification decision. (Doc. 48-5 at 4).

9.      Although Sperry received a copy of Wildermuth's ASR on November 4, 2015, he did not file a classification appeal of that decision. (Doc. 48-4 at 1; Doc. 48-7 at 1 [Affidavit of Brett Peterson at ¶ 3]).

10.     Instead, Sperry filed a grievance on October 6, 2015, claiming that "Unit Team Ball tried to release me from seg and was told no by Lucht who said I was being O.S.R.ed." Sperry claimed he "do[es] not qualify for O.S.R. status[.]" (Doc. 48-6 at 1).

11.     In response to Sperry's grievance, Wildermuth informed him that "the grievance process shall not be used in any way as a substitute for, or as part of … the classification decision-making process … specified in the Secretary's internal management policy and procedure." (Doc.

3

48-6 at 1).

12.     The warden also responded to Sperry's grievance, reiterating that "[n]o action can be taken through the grievance process" because classification challenges have a specified procedure outside the grievance procedure. (Doc. 48-6 at 2).

13.     Sperry appealed his grievance to the Secretary of Corrections, who responded: "Your complaint is clearly about the classification decision-making process. KAR 44-15-101(a)(d)(2) [*sic*] probits use of the grievance procedure to address this concern." (Doc. 48-6 at 3-4).

14.     On December 14, 2015, Sperry was sent a notice by Defendant Shipman that the December 21, 2015 issue of *Us Weekly* had been rejected because contents of the magazine (*i.e.*, drink recipes) posed a threat to the safety and security of correctional facilities, pursuant to K.A.R. § 44-12-601. (Doc. 48-14 at 2).

15.     On January 6, 2016, Sperry was sent a notice by Defendant Shipman that the January 2016 issue of *Wired* magazine had been rejected because contents of the magazine (*i.e.*, DIY weapons) posed a threat to the safety and security of correctional facilities, pursuant to K.A.R. § 44-12-601. (Doc. 48-15 at 2).

16.     The April 2016 issue of *Wired* magazine was censored because it posed a threat to the safety and security of the correctional facility, pursuant to K.A.R. § 44-12-601. (Doc. 48-16 at 1-2).

17.     On April 8, 2016, Sperry was sent notice by Defendant Sapien that a picture of a "sexy woman" from Pulchritudinous Assets was being censored on the basis that it "poses a threat to institutional safety, order or security," and it contains sexually explicit materials. (Doc. 48-17 at 1).

4

18.     On May 24, 2016, Sperry was sent a notification by Bill Shipman that the book, *The Target*, by David Baldacci, had been rejected because of content that posed a threat to the safety and security of correctional facilities, pursuant to K.A.R. § 44-12-601. (Doc. 48-18 at 2).

## QUESTIONS PRESENTED

I.     **Are Defendants Wildermuth and Lucht entitled to summary judgment on Sperry's claim that they placed him into administrative segregation as retaliation, in violation of his First Amendment rights?**

II.    **Are Defendants Lee, Shipman, Booth, and Sapien entitled to summary judgment on Sperry's claim that they seized and censored his mail as retaliation or due to incompetence, in violation of his First Amendment rights?**

## ARGUMENTS AND AUTHORITIES

### *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). This Court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *McCoy*, 887 F.3d at 1044. "[T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant." *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation and quotations omitted).

Facts must be identified by reference to affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Relying on mere pleadings or conclusory allegations without supporting factual averments is not enough. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). Moreover, "while courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 Fed. Appx. 559, 560 (10th Cir. 2002) (citing *Hall*, 935 F.2d at 1110); *see McCoy*, 887 F.3d at 1044. ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (Internal quotations omitted)).

The nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

I.    **Defendants Wildermuth and Lucht are entitled to summary judgment on Sperry's First Amendment retaliation claim regarding his placement in administrative segregation.**

Sperry claims Wildermuth and Lucht violated his First Amendment rights when they "specifically targeted [him] for … illegal placement [into long-term administrative segregation] in retaliation for his successful litigation against KDOC and its staff members[.]" (Doc. 25 at 5). However, on the undisputed material facts, Sperry did not exhaust his administrative remedies, and he has not presented evidence showing that Defendants' alleged retaliatory motives were the cause of their actions.

A prison official cannot "retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). Sperry may prove retaliation by showing the following: "(1) that [he] was engaged in constitutionally protected

activity; (2) that Defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Defendants' adverse action[s] [were] substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed. Appx. 845, 848 (10th Cir. 2001) (citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

### A.   *Sperry did not exhaust his administrative remedies.*

Sperry claims his placement in administrative segregation as an Other Security Risk (OSR) in October 2015 was unlawful. (Doc. 25 at 5-7). He submitted an inmate grievance form complaining that he did not quality for OSR status or administrative segregation, and he sought to "get this administratively exhausted so [he could] get the matter into court." (Doc. 48-6 at 1). In so doing, he improperly used the grievance process as a substitute for the classification decision-making process specified in the KDOC's IMPP, thereby failing to properly exhaust his administrative remedies.

7

Under the Prison Litigation Reform Act (PLRA), an inmate must exhaust all available administrative remedies before bringing a § 1983 action about prison conditions or occurrences. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). Courts cannot take into account special circumstances or create other exceptions to this rule, as "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id*. at 1857.

The PLRA requires proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" Gray v. Sorrels, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 93). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 Fed. Appx. 682, 684 (10th Cir. 2011).

K.A.R. § 44-15-101 *et seq*. provides the KDOC grievance procedure for inmates. An inmate must take four steps to complete the grievance process. *See* K.A.R. § 44-15-101(b) and (d); 44-15-102(a)-(c). The grievance procedure applies to "a broad range of matters that directly affect the inmate" but "shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure." K.A.R. § 44-15-101a(d).

Here, Sperry submitted a grievance form at each level of review, but each grievance was rejected as invalid, and Sperry was informed that issues of housing location and custody status are part of the classification decision-making process and so no action could be taken through the grievance process. (Doc. 48-6 at 1-4). Thus, Sperry failed to comply with the proper procedure.

The process to challenge a custody classification is set forth in the KDOC's IMPP 11-106, Section III.B.3. (Doc. 48-5 at 4). An inmate must submit a Form 9 to the warden through the unit team counselor within 72 hours after receiving the custody classification decision. (Doc. 48-5 at 4). Sperry received a copy of his administrative segregation report on November 4, 2015. (Doc. 48-4 at 1). He did not file a classification appeal as required by the IMPP. (Doc. 48-7, Peterson Affidavit at ¶ 3). Because Sperry failed to comply with the KDOC procedure for challenging his custody classification, in violation of K.A.R. § 44-15-101a(d)(2)—thereby failing to exhaust his administrative remedies—Wildermuth and Lucht are entitled to summary judgment on this issue.

### B. *Sperry provides no evidence showing that Defendants' alleged retaliatory motives caused them to place him in administrative segregation.*

Even if this Court finds that Sperry exhausted his administrative remedies, his conclusory argument that he was placed in administrative segregation in retaliation for his complaints and litigation against the KDOC does not defeat summary judgment for Defendants here.

Sperry must show he was engaged in constitutionally protected activity. *Shero*, 510 F.3d at 1203. His argument that he was retaliated against because he assisted other inmates in their lawsuits against the KDOC does not support his claim here because rendering such assistance is not a constitutionally protected activity. *Brooks v. Colo. Dep't of Corr.*, 762 Fed. Appx. 551, 560 (10th Cir. 2019) ("[A]cting as a jailhouse lawyer is not a constitutionally protected activity.").

The only constitutionally protected activity asserted by Sperry is his "asbestos/lead paint exposure case" that the Kansas Court of Appeals remanded to the state district court approximately

four months prior to his placement in administrative segregation (*i.e.*, *Sperry v. McKune*, No. 112,455, 2015 WL 3632752 (Kan. App. June 5, 2015) (unpublished opinion)). (Doc. 25 at 5). Sperry claims this remand decision "greatly upset KDOC officials[.]" (Doc. 25 at 5). But this in no way supports an inference that Wildermuth and Lucht in particular placed Sperry in administrative segregation as retaliation for the Court of Appeals' decision. In the first place, Sperry's general reference to "KDOC officials" cannot be read to include Wildermuth and Lucht. He provides no evidence that they even knew about the decision, much less that they were upset by it. His conclusory and unsupported implication does not create a triable issue of fact for summary judgment purposes. *See Hall*, 935 F.2d at 1110; *Harris*, 550 U.S. 372, 378-81.

Further, the four months that elapsed between the date of the *McKune* decision and the date Sperry was placed in administrative segregation shows that Sperry has failed to establish the necessary causal nexus for a retaliation claim. (Doc. 25 at 5). *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) (citations omitted) ("[A] 'three-month period of time between [the] protected activity' and this first alleged instance of retaliation is 'insufficient to establish a causal connection' as a matter of law."); *Leek v. Miller*, 698 Fed. Appx. 922, 926 (10th Cir. 2017) (holding that, by itself, temporal proximity between protected activity and a challenged prison action "does not constitute sufficient circumstantial proof of a retaliatory motive to state a claim").

In addition, Sperry has not demonstrated that, but for Wildermuth and Lucht's retaliatory motives, he would not have been placed in administrative segregation. After all, he admits that officers found contraband in his cell, for which they sent him to segregation and issued a disciplinary report. (Doc. 25 at 6). Indeed, Sperry pled no contest to the disciplinary report. (Doc. 25 at 6). Moreover, the ASR's from September and October of 2015 accurately show that Sperry

has received twenty-six (26) disciplinary reports at LCF and was four times put into administrative segregation. (Doc. 48-2 at 1; Doc. 48-4 at 1; Decl. of Gift at ¶¶ 5-6 and Exhibit A). Thus, notwithstanding some of the inaccuracies in the October 30, 2015, ASR, a legitimate penological rationale supported Sperry's designation as OSR and placement in administrative segregation. (See Decl. of Gift at ¶¶ 6-7). Simply put, Sperry's reliance on mere pleadings or conclusory allegations of retaliation without supporting factual averments is not enough. *See May*, 929 F.3d at 1234; *Hall*, 935 F.2d at 1110.

Despite Sperry's extended allegations on this issue, he never explains the specific constitutional activity he engaged in, for which Wildermuth and Lucht ostensibly retaliated against him—save for his reference to the *McKune* case. And he does not allege that the *McKune* decision specifically affected Wildermuth or Lucht. Sperry has not shown that Wildermuth and Lucht were aware of his *McKune* lawsuit nor that his placement in administrative segregation was in close temporal proximity to his filing of that lawsuit. *See Allen v. Avance*, 491 Fed. Appx. 1, 6 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)). Furthermore, he has not shown that, but for his engagement in protected activity, he would not have been placed in segregation. Sperry has done nothing more than allege his personal belief that he is the victim of retaliation, which is insufficient. *See Jones*, 188 F.3d at 325. Therefore, Wildermuth and Lucht are entitled to summary judgment.

## II. Defendants Lee, Shipman, Booth, and Sapien are entitled to summary judgment on Sperry's First Amendment retaliation claim regarding the seizure and censorship of his mail.

Sperry claims Lee, Shipman, Booth, and Sapien seized and censored his "non-pornographic publications, books and photographs in retaliation for his complaints and litigation and/or based upon incompetence, [in] clear violation of his First … Amendment rights[.]" (Doc.

25 at 10). However, Sperry has produced no triable issue of fact regarding retaliation nor the officers' legitimate penological interest in censoring his mail.

### A.      There is no triable issue regarding retaliation.

Sperry makes only a conclusory claim of retaliation. He argues that his magazines, book, and photograph were censored and seized "in retaliation for his complaints and litigation," yet he fails to specify any particular complaints or litigation that may have sparked a retaliation. His vague assertion is insufficient to create a triable issue because "an inmate claiming retaliation must allege *specific facts* showing retaliation because of" his exercise of constitutional rights. *Fogle*, 435 F.3d at 1264.

Sperry's only allusion to retaliation is his claim that "after [he] stirred up the stink about the seizure of his Wired Magazine and *apparently* angered defendants Lee and Sapien, these two defendants seized a photograph that [Sperry] had ordered out of a magazine of a sexily dressed woman[.]" (Emphasis added) (Doc. 25 at 11). But these assertions do not create a genuine issue of material fact for retaliation because they are speculative and conclusory, and therefore, show nothing more than Sperry's subjective belief about why the officials took action. *See Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *2 (10th Cir. 2021) (Summary judgment cannot be defeated "through 'mere speculation, conjecture, or surmise'"); *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient" to establish retaliatory motive); *Guy v. Lampert*, 748 Fed. Appx. 178, 181 (10th Cir. 2018) (mere temporal proximity between inmate's protected activity and alleged adverse action is insufficient).

### B.      Defendants' censoring and seizing of Sperry's mail was reasonably related to a legitimate penological interest.

In each case of censorship alleged by Sperry, the prison officials had a reasonable basis for

their decision based on state regulations.

K.A.R. § 44-12-601(d) gives prison officials discretion to censor incoming mail "when there is reasonable belief" that the mail poses "a threat to institutional safety, order, or security[,] or "[t]he mail contains sexually explicit material, as defined and proscribed by K.A.R. 44-12-313." Material is sexually explicit if its purpose is "sexual arousal or gratification and the material" either "[c]ontains nudity" ("defined as the depiction or display of any state of undress in which the human genitals, pubic region, or female breast at a point below the top of the aerola is less than completely and opaquely covered"), or contains any display, actual or simulated, or description of sexual intercourse or sodomy, masturbation, bestiality, or sadomasochistic abuse. K.A.R. § 44-12-313(b).

The United States Supreme Court has noted that, when it comes to prisoners interacting with incoming written materials, "prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Thus, the Court has "acknowledg[ed] the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management." *Id*. at 407-08. In so acknowledging, the Court "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id*. at 408. Further, the Tenth Circuit has held that, "[i]n the case of unprivileged incoming … prison mail, regulation by prison officials is 'essentially an administrative matter in which the courts will not intervene.'" *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999).

Here, Sperry's magazines (*Us Weekly* and *Wired*), book (*The Target*), and photograph (*Pulchritudinous Assets*) were seized because they posed a threat to the safety and security of the

correctional facility, pursuant to K.A.R. § 44-12-601. (Doc. 48-14 at 2; Doc. 48-15 at 2; Doc. 48-16 at 1-2; Doc. 48-17 at 1; Doc. 48-18 at 2). It is not for Sperry to determine whether "drink recipes," "DIY weapons," "a sexily dressed woman," or other material in a magazine, book, or photograph are innocuous. (Doc. 25 at 11; Doc. 48-15 at 3). Rather, prison officials have the discretion to make the "difficult and delicate" determination that such material has "potentially significant implications for the order and security of the prison," even if it is "seemingly innocuous to laymen" like Sperry. *See Thornburgh*, 490 U.S. at 407-08. And although Sperry attempts to summarize the material on the offending pages in *The Target*, his highly vague and non-specific summaries do not refute the prison officials' finding that material in those pages poses a threat to institutional safety, order, or security. *See Adler*, 144 F.3d at 674 ("Vague, conclusory statements do not suffice to create a genuine issue of material fact.").

With specific regard to the photograph of the sexily dressed woman, prison officials censored it, in part, because it "Contains Sexually Explicit Materials as described in KAR 44-12-313." (Doc. 48-17 at 1). Sperry counters that "it was not nude or otherwise pornographic." (Doc. 25 at 11). But this does not give any meaning or content to the word "pornographic." Similarly, Sperry's general assertion that the woman was not nude does not refute the prison officials' specific finding that the photograph was sexually explicit. While the woman may not have been nude in general, Sperry has produced no evidence showing that the woman in the photograph was not depicted or displayed in any state of undress in which her genitals, pubic region, buttock, or breast at a point below the top of the aerola was less than completely and opaquely covered. *See* K.A.R. § 44-12-313(b)(1). Thus, Sperry has not created a triable issue of fact for summary judgment purposes.

Sperry has relied on unsupported, generalized assertions solely from his pleadings that are

conclusory and self-serving. *See Scott*, 550 U.S. at 378-81 (nonmoving party does not create genuine issue of fact with allegations that are clearly unsupported by the record as a whole); *API Americas Inc. v. Miller*, 380 F. Supp. 3d 1141, 1150 (D. Kan. 2019) ("conclusory and self-serving affidavits are not sufficient"). Hence, he has not come forward with any evidence indicating a triable issue on this claim. *See Burnett v. Fallin*, 785 Fed. Appx. 546, 549 (10th Cir. 2019) ("To avoid summary judgment, a plaintiff must come forward with evidence and cannot rely on 'mere speculation, conjecture, or surmise."); *Allen v. T.G.&Y. Stores Co*., 669 F. Supp. 867, 869 (W.D. Okla. 1987) (holding that "generalities and conclusory statements" are not enough "to defeat a motion for summary judgment" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Defendants are entitled to summary judgment.

## CONCLUSION

Defendants respectfully request that this Court enter summary judgment on their behalf because the material facts, which are not subject to genuine dispute, entitle Defendants to judgment as a matter of law on Sperry's two claims.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Michael J. Duenes*
Michael J. Duenes, KS No. 26431
Assistant Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendants*

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that on this 19th day of May, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Jeffrey Sperry #47031
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043-0002
*Plaintiff, pro se*

*/s/ Michael J. Duenes*
Michael J. Duenes
Assistant Attorney General
