IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

    **Plaintiff,**

    v.

LINDSEY WILDERMUTH, et al.,

    **Defendants.**

Case No. 5:16-CV-3222-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Jeffrey J. Sperry brought this action against various employees of the Kansas Department of Corrections ("KDOC") at Lansing Correctional Facility ("LCF") and El Dorado Correctional Facility ("EDCF"), asserting claims under 42 U.S.C. § 1983 relating to his incarceration. On December 30, 2020, the Honorable Sam A. Crow granted Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment and dismissed all of Plaintiff's claims asserted in the Amended Complaint.[1]

On appeal, the Tenth Circuit Court of Appeals characterized Judge Crow's ruling as a dismissal under Fed. R. Civ. P. 12(b)(6). The court affirmed in part and reversed in part, finding that two claims were plausible under Rule 12(b)(6): a claim against Defendants Lindsey Wildermuth and Andrew Lucht for retaliation through placement in administrative segregation; and a claim against Defendants K. Lee, Bill Shipman, Hannah Booth, and Robert Sapien for withholding from Plaintiff's mail several magazines, a book, and a photograph.[2] The court explained that since "the district court did not rule on the defendants' alternative argument for

---

[1] Doc. 63.
[2] Doc. 73 at 2.

summary judgment, the court should consider that argument on remand if appropriate," on these remaining two claims.[3] This case was reassigned to the undersigned after remand.[4] Now before the Court is Defendants Wildermuth, Lucht, Lee, Shipman, Booth, and Sapien's post-remand Motion for Summary Judgment (Doc. 75) on the remaining claims. For the reasons set forth in detail below, the Court grants in part and denies in part Defendants' motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[5] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[6] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[7] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[8] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[9]

---

[3] *Id.* at 23 n.15.

[4] Doc. 81.

[5] Fed. R. Civ. P. 56(a).

[6] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[7] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[8] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[10] Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[11] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[12] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[13] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[14] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[15] A genuine issue of material facts must be supported by "more than a mere scintilla of evidence."[16]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.'"[17] In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary.[18]

---

[10] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[12] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[13] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[14] *Adler*, 144 F.3d at 671.

[15] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[16] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[18] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

In deciding this motion, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court must construe his pleadings liberally.[19] However, pro se plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a general issue of material fact exists.[20] The Court cannot assume the role of advocate,[21] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[22]

## II.     Plaintiff's Untimely Response

Plaintiff requested three extensions of time to respond to Defendants' motion for summary judgment and was granted a total of 116 additional days—through October 3, 2022—within which to file his response.[23] The Court's third extension Order cautioned Plaintiff that if he failed to timely file his response by the October 3 deadline, the uncontroverted facts in Defendants' motion would be deemed admitted for purposes of summary judgment.[24] Still, Plaintiff did not file a timely response. Instead, Plaintiff's response was dated November 8, 2022, and was not received by the Court until November 17, 2022.[25] The response is therefore untimely; Plaintiff's pro se status does not excuse his noncompliance.[26]

Pro se litigants must follow rules of procedure, including local rules.[27] The same day that

---

[19] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[20] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[21] *Hall*, 935 F.2d at 1110.

[22] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[23] Docs. 80, 82–86.

[24] Doc. 86.

[25] Doc. 87.

[26] *See Lynn v. Cline*, No. 19-3003-EFM, 2021 WL 2104981, at *4 (D. Kan. May 25, 2021) (accepting the defendants' uncontroverted facts due to pro se plaintiff's failure to respond after notice under D. Kan. R. 56.1(f) sent), *aff'd sub nom. Lynn v. Kelly*, No. 21-3094, 2022 WL 1043752 (10th Cir. Apr. 7, 2022).

[27] *Smith v. Jones*, 606 F. App'x 899, 901 (10th Cir. 2015); *Smith v. Hollinghead*, No. 20-3179-SAC, 2022 WL 2355401, at *2 (D. Kan. June 30, 2022).

the remaining Defendants filed their motion for summary judgment, they sent Plaintiff a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," explaining Plaintiff's burdens under Federal Rule of Civil Procedure 56 and District of Kansas Local Rule 56.1.[28] Under D. Kan. Rule 7.1(c), the Court is permitted to grant a motion as uncontested when no responsive brief or memorandum is filed. But this standard is modified in the context of a motion for summary judgment: "It is improper to grant a motion for . . . summary judgment simply because it is unopposed."[29] Under Fed. R. Civ. P. 56(e), the Court may deem a fact undisputed where the nonmoving party fails to address it.[30] The rule also permits the Court to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[31] Under Rule 56(e)(2), the Court will deem undisputed the facts presented in Defendants' summary judgment brief, to the extent they are supported by the record.

### III. Uncontroverted Facts

Defendants rely on the *Martinez* report to support most of their statements of uncontroverted facts. On summary judgment, the *Martinez* report "'is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence.' Accordingly, a court may not rely on a *Martinez* report to resolve material disputed facts."[32] As described above, because Plaintiff failed to timely respond, the Court may accept

---

[28] Doc. 77.

[29] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986)).

[30] Fed. R. Civ. P. 56(e)(2).

[31] Fed. R. Civ. P. 56(e)(3).

[32] *Breedlove v. Costner*, 405 F. App'x 338, 342–43 (10th Cir. 2010) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)) (citation omitted).

the findings presented in the *Martinez* report. Nonetheless, the Court has considered Plaintiff's untimely response out of an abundance of caution, to the extent it relies on nonconclusory and nonspeculative facts, and to the extent it is supported by evidence. With these considerations in mind, the following facts are uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff has been an inmate in the custody of the KDOC since March 1997. In September 2015, Plaintiff was housed at LCF. On September 23, 2015, LCF officers issued a disciplinary report after they searched Plaintiff's cell and found dangerous contraband, including tobacco and syringes. As a result of this disciplinary report, Plaintiff was placed in administrative segregation at LCF. He then pled no contest to the report and was placed in disciplinary segregation.

On October 30, 2015, Defendant Wildermuth prepared a report indicating that the LCF Segregation Review Board had determined that Plaintiff had shown "malicious and maladaptive behavior" and that his custody status should be changed to "other security risk" ("OSR") under KDOC policies.[33] Wildermuth's report indicated that Plaintiff had received 26 disciplinary reports since his initial 1997 admission[34] and that he had been placed in segregation nine times during that period. Plaintiff received this status report five days later.

When Wildermuth's custody status report was delivered to him, Plaintiff filed a grievance form directed to Wildermuth, asserting that the report contained numerous "falsehoods" and indicating that he had not been segregated on some of the occasions listed; he

---

[33] Doc. 48-4; *see* Internal Management Policies and Procedures ("IMPP") 20-104.1.B.13.

[34] By the Court's count, the KDOC's records reflect disciplinary reports issued on 25 different dates during this period. Doc. 48-1; 76-3 at 3–4.

6

also disputed the nature of several other incidents included in the report.[35]  Plaintiff presented another grievance form to Wildermuth two days later claiming that his reclassification as OSR was discriminatory and retaliatory.  In response, Wildermuth advised Plaintiff that the inmate rule book did not permit challenges to custody classifications through the grievance procedure.  Several days later, LCF's Warden rejected Plaintiff's appealed grievance, citing the administrative regulation that barred the use of the grievance procedure when addressing custody classification issues.  The designee of the KDOC Secretary also confirmed LCF's conclusion that Plaintiff's use of the grievance procedure was contrary to applicable state regulations and KDOC policies.  Plaintiff continued to insist that his complaint could properly be pursued through the grievance procedure.  Plaintiff was ultimately transferred to EDCF in January 2016.

In 2015 and 2016, KDOC personnel screened incoming prisoner mail and censored various items mailed to Plaintiff under K.A.R. § 44-12-601(d), which provides the following grounds for censorship:

> (1) Incoming or outgoing mail, other than legal, official, or privileged mail, may be censored only when there is reasonable belief in any of the following:
>
> (A) There is a threat to institutional safety, order, or security.
>
> (B) There is a threat to the safety and security of public officials or the general public.
>
> (C) The mail is being used in furtherance of illegal activities.

---

[35] Doc. 87-1 at 8.  Defendants concede that Wildermuth's original report contained errors relating to various infractions or "notes" of events which, contrary to Wildermuth's report, did not result in Plaintiff's placement in restricted housing.  The most recent of the alleged errors related to an incident in mid-2013.  Plaintiff has not presented any evidence challenging disciplinary reports that were issued against him in May 2014 (sexual activity), December 2014 (dangerous contraband), and July 12, 2015 (possession of an unauthorized communication device).  *See* Doc. 48-1 at 2–3.  He also does not dispute that he pled no contest to disciplinary charges in September 2015 for possession of dangerous contraband.  *See* Docs. 25 at 6; 48-2; 48-23 at 16.  The majority of disciplinary reports listed in his KDOC records were for or included Class I violations, the most serious level of disciplinary violations within the KDOC.  *See* K.A.R. § 44-12-1301.

> (D) The mail is correspondence between offenders, including any former inmate regardless of current custodial status, that has not been authorized according to subsection (e). Correspondence between offenders may be inspected or read at any time.
>
> (E) The mail contains sexually explicit material, as defined and proscribed by K.A.R. 44-12-313.

In December 2015, LCF personnel notified Plaintiff that it was refusing to deliver a copy of the December 21, 2015 issue of *Us Weekly* to him because it contained drink recipes which were determined to pose a threat to safety and security.[36] Plaintiff appealed that decision and the Secretary's designee rejected his appeal.[37]

On January 6, 2016, KDOC personnel censored a copy of the January 2016 issue of *Wired* magazine on the basis that it included a "DIY" article relating to the making of weapons.[38] Prison officials censored a copy of the April 2016 issue of *Wired* because it posed a "threat to the safety and security of the facility."[39] The Secretary's designee rejected Plaintiff's appeals of both decisions.

In April 2016, EDCF personnel censored a photograph mailed to Plaintiff from "Pulchritudinous Assets" on the grounds that it contained sexually explicit materials. EDCF personnel also censored a book entitled "The Target" by author David Baldacci in June 2016 on the grounds it posed a threat to the safety and security of the prison, citing specific pages of the book. The Secretary's designee denied Plaintiff's appeals of these decisions.

---

[36] Doc. 48-14 at 2.

[37] *Id.* at 1.

[38] Doc. 48-15.

[39] Doc. 48-16 at 2.

8

## IV. Analysis

### A. Retaliation Claim Against Wildermuth and Lucht

Defendants Wildermuth and Lucht contend that they are entitled to summary judgment on Plaintiff's claims relating to his change in custody status because he failed to exhaust the required administrative remedies, and because he fails to create a genuine issue of material fact about whether Defendants' retaliatory motives caused them to place him in administrative segregation. Plaintiff insists he exhausted his administrative remedies and that there is a genuine issue of material fact on causation sufficient to deny summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[40] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[41] Failure to exhaust is an affirmative defense; therefore, Defendants bear the burden of pleading it and demonstrating that it applies.[42]

"[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."[43] Even if the inmate begins the grievance procedure, if he does not complete it, he is barred from pursuing relief under § 1983.[44] The exhaustion requirement is not left to the district court's discretion but rather is mandatory, with one

---

[40] 42 U.S.C. § 1997e(a).

[41] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[42] *Jones v. Bock*, 549 U.S. 199, 211–12 (2007); *Freeman v. Watkins*, 479 F.3d 1257, 1259–60 (10th Cir. 2007).

[43] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[44] *Id.* (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

9

qualifier—the administrative "remedies must indeed be 'available' to the prisoner."[45] "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy unavailable and a court will excuse the prisoner's failure to exhaust."[46]

It is undisputed that Plaintiff completed the four steps required under the KDOC's grievance procedure as to this claim. At each stage of that process, however, KDOC personnel advised Plaintiff that use of the grievance procedure was not allowed for challenges to his custody classification. Under the plain language of the regulations, the grievance procedure cannot be used as a substitute for the IMPP procedures for "the inmate disciplinary procedure, the classification decision-making process, . . . or the procedure for censorship of publications."[47] Because Plaintiff's ongoing segregation status was based on a change in his custody classification, the grievance procedure was not the proper vehicle to challenge that decision.

Section III.B.3 of the KDOC's IMPP 11-106 contains the process by which a prisoner can challenge a custody classification:

> 3. Within 72 hours after receiving a custody classification decision, the offender may appeal the decision to the Warden by submitting the appeal through the Unit Team Counselor on a form 9.
>
> a. If the Warden did not participate in the custody classification decision, the Warden shall review the decision and the offender's written appeal, and return a written response to the offender within 15 working days of receipt.
>
> b. If the Warden was a participant in the custody classification decision, the offender's appeal shall be forwarded to the Deputy Secretary of Facilities Management or designee for review, who

---

[45] *Ross v. Blake*, 578 U.S. 632, 639 (2016).

[46] *Lindsey v. Cook*, No. 5:19-CV-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (quoting *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020)).

[47] K.A.R. § 44-15-101a(d)(2).

> shall return a written response to the offender within 15 working days of receipt.
>
> c. The decision of the Warden or Deputy Secretary or designee shall be final.[48]

Plaintiff contends he properly notified the Warden of his challenge to the classification decision, but the record does not support this assertion. The change of custody report prepared by Wildermuth was signed by the Warden on November 3, 2015, and delivered to Plaintiff at 2:13 p.m. the next day.[49] Plaintiff submits with his response a request directed to Warden Pryor bearing that same date, but that request indicated that he had not yet been served with "OSR papers" and stated that he should be released from segregation. Other handwriting on that same document states the request was "[b]rought back by Wildermuth with a fraudulent O.S.R. report after I turned it in."[50] Plaintiff does not show that he filed a request thereafter directed to the Warden or Deputy Secretary of Facilities Management challenging the classification decision.[51]

Plaintiff was repeatedly notified of deficiencies of his grievances and of the controlling regulation, but he never refiled this challenge using the correct procedure. Instead, Plaintiff asserted that because he was claiming his reclassification violated his civil rights, it was proper to use the grievance procedure. Plaintiff has failed to show that he attempted to file an appeal under the correct procedure after being informed the grievance process was improper. This failure is enough to bar his retaliatory classification claims under the PLRA.[52] Plaintiff cannot

---

[48] Doc. 48-5.

[49] Doc. 48-4.

[50] Doc. 87-1 at 6.

[51] Plaintiff presents a hand-written ledger purportedly showing that he filed two inmate request forms on November 4, 2015. Doc. 87-1 at 4. The only two inmate request forms from Plaintiff bearing that date are the pre-OSR complaint to the Warden and the grievance submitted to Wildermuth challenging inaccuracies in the OSR report. Docs. 48-4, 87-1 at 6.

[52] *See Gray v. Sorrels*, 818 F. App'x 787, 791 (10th Cir. 2020) (holding that prisoner's failure to pursue correct administrative procedures, especially when advised of the proper process, barred his claims under PLRA).

11

rely on his own interpretation to decide which procedure applies to challenge his custody status when that interpretation is contrary to the plain language of the regulations.[53]

Defendants Wildermuth and Lucht's motion for summary judgment on the claim for retaliation through placement in administrative segregation is granted because of Plaintiff's failure to exhaust administrative remedies. Thus, the Court need not address Defendant's arguments on the merits of this claim.

### B. Withholding of Book, Magazines, and Photograph Against Lee, Shipman, Booth, and Sapien

In his second claim, Plaintiff contends that Defendants Lee, Shipman, Booth and Sapien violated his First Amendment rights by censoring four pieces of incoming mail and that these decisions were in retaliation for his prior complaints and litigation. Specifically, Plaintiff asserts that Lee and Shipman improperly seized a December 21, 2015 issue of *Us Weekly* and a January 2016 issue of *Wired* magazine; he asserts that Defendants Booth, Lee, and Sapien illegally seized an April 2016 issue of *Wired* magazine, a photograph Plaintiff ordered, and the novel, *The Target*, by David Baldacci. None of these materials have been submitted with the summary judgment record. Instead, Defendants stand on the information in the *Martinez* report, which includes the censorship forms completed by prison officials at the time of seizure.

Defendants argue that summary judgment is warranted because their censorship of these materials served a legitimate penological interest, and that the Court should defer to prison officials' judgment that such materials threaten the safety and security of the correctional facility under the governing regulations. Plaintiff responds that Defendants engaged in arbitrary and

---

[53] *See Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) ("Plaintiff's disagreement with prison officials as to the appropriateness of a particular procedure under the circumstances, or his belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process." (quoting *Abdulhaseeb v. Calbone*, No. 05–CV–1211–W, slip op. at 25 (W.D. Okla. Feb. 12, 2008))).

capricious censorship of these particular materials, and that prison officials are not entitled to unfettered discretion when applying the prisoner regulations to prisoner mail. Plaintiff further asserts that the censorship decisions were made in retaliation for Plaintiff's grievances and lawsuits.

"Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."[54] The United States Supreme Court holds that prison regulations about incoming mail are analyzed under a reasonableness standard; they are "valid if [they are] reasonably related to legitimate penological interests,"[55] and are not "an 'exaggerated response' to such objectives."[56] In applying this standard, courts look to the so-called *Turner* factors:

> (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives.[57]

"The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."[58] These four factors also apply when determining whether a particular regulation is unconstitutional on its face or as applied in a particular case.[59] Courts consider these factors with "'substantial deference' to prison authorities."[60]

---

[54] *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citations omitted).

[55] *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (alteration in original) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[56] *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Turner*, 482 U.S. at 87).

[57] *Jacklovich*, 392 F.3d at 426 (quoting *Turner*, 482 U.S. at 89–90).

[58] *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

[59] *See Frazier v. Ortiz*, 417 F. App'x 768, 774–75 (10th Cir. 2011); *Fogle v. Palomino*, 687 F. App'x 730, 733 (10th Cir. 2017).

[60] *Frazier*, 417 F. App'x at 774 (citing *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1991)).

Plaintiff does not bring a facial challenge to the KDOC regulations on prisoners' incoming mail.[61] Instead, he brings an as-applied challenge to Defendants' censorship decisions as to the five pieces of mail at issue. Defendants submit evidence that they censored the materials under KAR § 44-12-601 because they determined that they either posed a risk to the safety and security of the prison, or included sexually explicit material, as defined by K.A.R. § 44-12-313. The only evidence in the record on these decisions are the forms completed by Defendants at the time each censorship decision was made, which include the appeal denials.

The Court is mindful that Plaintiff failed to timely respond to Defendants' motion for summary judgment, and that he fails to offer nonconclusory assertions to dispute the statements of fact relevant to this claim. But Defendants' assertion that the Court should defer to prison officials' judgment as to the censorship decisions without further evidence or explanation about the reasonableness of those decisions is incorrect and insufficient under the authority cited above. The censored materials are not in the record, and importantly, there is no affidavit from any prison official explaining or describing their content in more than superficial terms.[62] Moreover, Defendants wholly fail to address the *Turner* factors in their motion. Therefore, Defendants do not meet their initial burden under Rule 56 of showing the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law on Plaintiff's First Amendment claim.

---

[61] Indeed, Plaintiff's prior effort to facially challenge the KDOC's regulation prohibiting sexually explicit material was unsuccessful. *See Sperry v. Werholtz*, 413 F. App'x 31, 40–42 (10th Cir. 2011).

[62] *See, e.g.*, *Strope v. Collins*, No. 06-3150-JWL, 2008 WL 2435560, at *1 (D. Kan. June 12, 2008) (deciding renewed summary judgment motions that included affidavits from prison officials regarding mail regulations and censorship decisions after finding original record insufficient); *Mashaney v. Call*, No. 09-3105-JTM, 2010 WL 5463879 (D. Kan. Dec. 29, 2010) (granting summary judgment as to facial and as-applied censorship decisions based on application of *Turner* factors and affidavit from mail review officer regarding the basis for his decisions).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Wildermuth, Lucht, Lee, Shipman, Booth, and Sapien's Motion for Summary Judgment (Doc. 75) is **granted in part and denied in part**.  The motion is granted as to Defendants Wildermuth and Lucht on the retaliation claim related to Plaintiff's custody status.  The motion is denied without prejudice as to Defendants Lee, Shipman, Booth, and Sapien on the First Amendment claim.

**IT IS SO ORDERED.**

Dated: February 21, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
