## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

      Plaintiff,

      v.

LINDSEY WILDERMUTH, et al.,

      Defendants.

Case No. 5:16-CV-3222-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Jeffrey J. Sperry brought this action against various employees of the Kansas Department of Corrections ("KDOC"), asserting claims under 42 U.S.C. § 1983 relating to his incarceration. Now before the Court is Defendants K. Lee, Bill Shipman, Hannah Booth, and Robert Sapien's renewed Motion for Summary Judgment (Doc. 93) on the remaining claim in this case under the First Amendment. Plaintiff has not responded and the time to do so has passed. The Court has reviewed Defendants' brief, exhibits (including those submitted for in camera review), the *Martinez* Report, and Plaintiff's Verified Complaint, and is prepared to rule. For the reasons set forth in detail below, the Court grants Defendants' renewed motion for summary judgment.

## I.    Procedural History

On December 30, 2020, the Honorable Sam A. Crow granted Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment and dismissed all of Plaintiff's claims asserted in the Amended Complaint.[1] On appeal, the Tenth Circuit Court of Appeals affirmed in

---

[1] Doc. 63.

part and reversed in part, finding that two claims were plausible under Rule 12(b)(6): a claim against Defendants Lindsey Wildermuth and Andrew Lucht for retaliation through placement in administrative segregation; and a claim against Defendants Lee, Shipman, Booth, and Sapien for withholding from Plaintiff's mail several magazines, a book, and a photograph.[2]  The court explained that since "the district court did not rule on the defendants' alternative argument for summary judgment, the court should consider that argument on remand if appropriate," on these remaining two claims.[3]  This case was reassigned to the undersigned after remand.[4]

The remaining Defendants moved for summary judgment on the remanded claims and this Court granted in part and denied in part.[5]  The Court granted the motion as to Defendants Wildermuth and Lucht on the retaliation claim related to Plaintiff's custody status.  The Court denied the motion without prejudice as to Defendants Lee, Shipman, Booth, and Sapien on the First Amendment claim.  In denying summary judgment on the First Amendment claim, the Court noted that the censored materials were not in the record, and there was no affidavit from any prison official explaining or describing their content in more than superficial terms.  Moreover, the Court explained that Defendants failed to address the applicable legal factors in their motion.

The remaining Defendants—Lee, Shipman, Booth, and Sapien—have now filed a renewed motion for summary judgment on the remaining First Amendment claim.  Along with their motion, Defendants submitted the censored materials for in camera review,[6] attached a

---

[2] Doc. 73 at 2.

[3] *Id.* at 23 n.15.

[4] Doc. 81.

[5] Doc. 91.

[6] Docs. 98–103.

declaration from KDOC Corrections Manager Darcie Holthaus about the KDOC's incoming

mail policies in general and as applied to Plaintiff,[7] and addressed in their brief the issues the

Court found lacking in their last motion for summary judgment.

## II.     Plaintiff's Failure to Respond

Plaintiff's response was due on June 16, 2023—a deadline that was set by presiding

Magistrate Judge Teresa J. James at a May 2, 2023 telephonic status conference at which he

appeared, pro se.[8]  Plaintiff did not file a response, and the time to do so has passed.  Plaintiff's

pro se status does not excuse his noncompliance with the filing deadline.[9]

Pro se litigants must follow rules of procedure, including local rules.[10]  The same day that

the remaining Defendants filed their motion for summary judgment, they sent Plaintiff a "Notice

to Pro Se Litigant Who Opposes a Motion for Summary Judgment," explaining Plaintiff's

burdens under Federal Rule of Civil Procedure 56 and District of Kansas Local Rule 56.1.[11]

Under D. Kan. Rule 7.1(c), the Court is permitted to grant a motion as uncontested when no

responsive brief or memorandum is filed.  But this standard is modified in the context of a

motion for summary judgment: "It is improper to grant a motion for . . . summary judgment

simply because it is unopposed."[12]  Under Fed. R. Civ. P. 56(e), the Court may deem a fact

---

[7] Doc. 94-1.

[8] Doc. 109.

[9] *See Lynn v. Cline*, No. 19-3003-EFM, 2021 WL 2104981, at *4 (D. Kan. May 25, 2021) (accepting the defendants' uncontroverted facts due to pro se plaintiff's failure to respond after notice under D. Kan. R. 56.1(f) sent), *aff'd sub nom. Lynn v. Kelly*, No. 21-3094, 2022 WL 1043752 (10th Cir. Apr. 7, 2022).

[10] *Smith v. Jones*, 606 F. App'x 899, 901 (10th Cir. 2015); *Smith v. Hollinghead*, No. 20-3179-SAC, 2022 WL 2355401, at *2 (D. Kan. June 30, 2022).

[11] Doc. 95.

[12] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986)).

undisputed where the nonmoving party fails to address it.[13]  The rule also permits the Court to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[14]

Accordingly, under Rule 56(e)(2), the Court will deem undisputed the facts presented in Defendants' summary judgment brief, to the extent they are supported by the record.

## III.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[15] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[16]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[17]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[18]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[19]

---

[13] Fed. R. Civ. P. 56(e)(2).

[14] Fed. R. Civ. P. 56(e)(3).

[15] Fed. R. Civ. P. 56(a).

[16] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[17] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[18] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[19] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[20]  Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[21]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[22]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[23]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[24]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[25]  A genuine issue of material facts must be supported by "more than a mere scintilla of evidence."[26]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.'"[27]  In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary.[28]

---

[20] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[21] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[22] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[23] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[24] *Adler*, 144 F.3d at 671.

[25] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[26] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[28] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

In deciding this motion, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court must construe his pleadings liberally.[29]  However, pro se plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a general issue of material fact exists.[30]  The Court cannot assume the role of advocate,[31] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[32]

## IV.   Uncontroverted Facts

Defendants partially rely on the *Martinez* report to support their statements of uncontroverted facts.  On summary judgment, the *Martinez* report "'is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence.' Accordingly, a court may not rely on a *Martinez* report to resolve material disputed facts."[33]  Plaintiff failed to respond to Defendants' summary judgment motion or otherwise controvert the facts set forth therein, so the Court may accept the findings presented in the *Martinez* report since there is no conflicting evidence.  With these considerations in mind, the following facts are uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff has been an inmate in the custody of the KDOC since March 1997.  In September 2015, Plaintiff was housed at Lansing Correctional Facility ("LCF").  Plaintiff was ultimately transferred to El Dorado Correctional Facility ("EDCF") in January 2016.

---

[29] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[30] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[31] *Hall*, 935 F.2d at 1110.

[32] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[33] *Breedlove v. Costner*, 405 F. App'x 338, 342–43 (10th Cir. 2010) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)) (citation omitted).

In 2015 and 2016, KDOC personnel screened incoming prisoner mail and censored various items mailed to Plaintiff under K.A.R. § 44-12-601(d), which provides the following grounds for censorship:

> (1) Incoming or outgoing mail, other than legal, official, or privileged mail, may be censored only when there is reasonable belief in any of the following:
>
> (A) There is a threat to institutional safety, order, or security.
>
> (B) There is a threat to the safety and security of public officials or the general public.
>
> (C) The mail is being used in furtherance of illegal activities.
>
> (D) The mail is correspondence between offenders, including any former inmate regardless of current custodial status, that has not been authorized according to subsection (e). Correspondence between offenders may be inspected or read at any time.
>
> (E) The mail contains sexually explicit material, as defined and proscribed by K.A.R. 44-12-313.

When publications are censored from incoming mail, they are censored in their entirety. If KDOC staff was instead required to remove only the prohibited portions of a publication, it "would require an exponential increase in staff in order to do this for all publications received by each of the nearly ten thousand inmates in the custody of KDOC."[34]

On December 14, 2015, Shipman notified Plaintiff that his December 21, 2015 issue of *Us Weekly* was "rejected" because it contained drink recipes, which were determined to pose a threat to safety and security under K.A.R. § 44-12-601.[35] The Court has reviewed Defendants' in camera submission of this magazine article and confirms that it contains alcoholic drink

---

[34] Doc. 94-1 ¶ 23.

[35] Doc. 48-14 at 2.

recipes.[36]  Alcohol is considered contraband for inmates in KDOC custody as an intoxicant and a security risk.  Therefore, alcohol-related materials such as drink recipes have been rejected from incoming mail on the basis that they can encourage inmates to make contraband alcohol.

On January 6, 2016, Shipman notified Plaintiff that KDOC censored his January 2016 issue of *Wired Magazine* on the basis that it included a "DIY" article relating to making weapons.[37]  The notice states that it was censored because it posed a "threat to the safety and security of the facility."[38]  The Court has reviewed Defendants' in camera submission of this article and confirms that it contains instructions on how to make a DIY weapon and body armor.[39]  KDOC considers weapons and armor contraband for inmates in the custody of KDOC in order to prevent violence and maintain the safety and security of the facility.  Some KDOC prison staff and inmates have been injured and some have even lost their lives to violent acts by inmates in the past.

KDOC officials censored Plaintiff's April 2016 issue of *Wired Magazine* because it posed a threat to prison safety and security under K.A.R. § 44-12-601.  The Court has reviewed Defendants' in camera submission of the pages from that issue identified by Defendants as violative of policy, and confirms that they contain an article on radical terrorist propaganda from ISIS.[40]  This article includes numerous statements on social media by members and followers of ISIS expressing support for terrorism.  KDOC maintains that radical terrorist propaganda is

---

[36] Doc. 98 (submitted ex parte under seal).

[37] Doc. 48-15.

[38] Doc. 48-16 at 2.

[39] Doc. 99 (submitted ex parte under seal).

[40] Doc. 101 (submitted ex parte under seal).

rejected from incoming mail because it helps prevent radicalization of inmates, which could

likely hinder their rehabilitation or lead to talking or planning of violent activity.

On April 8, 2016, Sapien issued a notice to Plaintiff that the mailroom censored mail

addressed to Plaintiff from "Pulchritudinous Assets" on the grounds that it contained sexually

explicit material.  The Court has reviewed this censored mail, which was submitted for in camera

review.[41]  It appears to be a flyer or brochure.  On one side is an array of photographs of women,

primarily clad only in bathing suits, undergarments, or short, tight clothing.  The photographs

emphasize the pictured women's buttocks, pubic region, or breasts that are less than completely

or opaquely covered.  The mailer includes pricing for "52 Weeks Club Memberships," as well as

photo prices and shipping costs.  KDOC's ban on sexually explicit materials aims to prevent

violence, sexual harassment, lewd acts, and sexual assaults within the prison and to promote

offender rehabilitation.  Sexually explicit materials have historically resulted in increased sexual

harassment of prison staff.

On May 24, 2016, Shipman notified Sperry that KDOC censored a book entitled "The

Target," by David Baldacci, on the grounds it posed a threat to the safety and security of the

prison, citing specific pages of the book.  The Court has reviewed the page numbers cited in the

notice, which Defendants submitted for in camera review.[42]  They include the following: a

discussion between inmate characters about escaping from prison; a suggestion by an inmate

character that violence would be justified against "Jews or Presbyterians or coloreds";[43] a

description of how a man violently incapacitated someone in a fight; a description of an inmate

inappropriately sexualizing a prison staff member; a description of an inmate imagining sexual

---

[41] Doc. 102 (submitted ex parte under seal).

[42] Doc. 103 (submitted ex parte under seal).

[43] *Id.* at 4.

acts with a prison staff member; and a description of an inmate masturbating at the sight of a prison staff member.

KDOC has rejected from incoming mail materials containing any promotion of racially or religiously motivated violence because they could lead to an increase in such violence. Materials that describe how to violently incapacitate someone have been rejected from incoming mail because they could lead to inmates attempting the behavior, leading to increased violence in the prison. Materials describing inappropriate, sexualized relationships between inmates and prison staff have been rejected from incoming mail because this type of mail tends to increase pressure from inmate to staff to participate in conversations of undue familiarity. KDOC has determined that they can lead to an increase in sexual harassment toward staff, lewd acts, sexual assault of staff through inappropriate touching, or undue familiarity with staff.

## V.      Analysis

Plaintiff alleges in his remaining claim for relief under 42 U.S.C. § 1983, that Defendants Lee, Shipman, Booth and Sapien violated his First Amendment rights by censoring the five pieces of incoming mail described above, and that the censorship decisions were in retaliation for his prior complaints and litigation. Defendants move for summary judgment on the basis that (1) Lee and Booth did not personally participate in the alleged constitutional violations; (2) Plaintiff fails to demonstrate retaliation; and (3) they are entitled to qualified immunity on the First Amendment censorship claim. The Court addresses each in turn, finding that summary judgment should be granted in favor of Defendants on each of these grounds.

### A.      Personal Participation—Lee and Booth

In order to recover under 42 U.S.C. § 1983, Plaintiff must demonstrate that each defendant personally participated "in the specific constitutional violation complained of."[44] Plaintiff alleges in the Verified Amended Complaint that Lee and Booth participated in the seizures of his mail.  Defendants argue that this statement is conclusory because it is not supported by the evidentiary record, which is devoid of any record that Lee or Booth were involved in the decisions to censor Plaintiff's mail.  The Court agrees that the record contains no evidence that either Lee or Booth directly or indirectly participated in the censorship decisions or had knowledge thereof.  The notices for each censorship decision either do not name the mail room employee that censored the mail, or they name Sapien or Shipman.  Plaintiff's Verified Amended Complaint does not indicate how he has personal knowledge that Lee or Booth were involved in these decisions.  Therefore, summary judgment on Plaintiff's First Amendment claims is granted in favor of Lee and Booth based on lack of personal participation.[45]

**B.    First Amendment Retaliation**

As part of his First Amendment claim, Plaintiff alleges that his mail was censored in retaliation for his prior litigation and complaints.[46]  It is well-settled that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."[47]

> Government retaliation against a plaintiff for exercising his or her
> First Amendment rights may be shown by proving the following
> elements:  (1) that the plaintiff was engaged in constitutionally
> protected activity; (2) that the defendant's actions caused the

---

[44] *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (citations omitted).

[45] The Court's subsequent analysis granting summary judgment on the First Amendment claims against Sapien and Shipman apply equally to Booth and Lee to the extent Plaintiff's allegations against them are sufficient to create a genuine issue of material fact on their personal participation.

[46] Doc. 87 at 11-12.

[47] *Brooks v. Gabriel*, 738 F. App'x 927, 932 (10th Cir. 2018) (alteration omitted) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.[48]

"To satisfy the third prong of the First Amendment retaliation test, an inmate must allege specific facts showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'"[49]  It is insufficient to simply state that certain acts were motivated by a retaliatory animus; instead, the plaintiff must present facts showing that "but for" the retaliatory motive, the actions "would not have taken place."[50]

Plaintiff generically asserts that prison officials started retaliating against him in September 2015 because of his prior litigation and complaints against the KDOC.  Plaintiff's Verified Amended Complaint does not support the first element of his claim because it wholly fails to specify which complaints or litigation constitutes the protected activity.

The Verified Amended Complaint also fails to support the third element.  The sole statement in the Verified Amended Complaint in support of the motivation prong of Plaintiff's retaliation claim is that "[o]n April 8, 2016, after plaintiff had stirred up the stink about the seizure of his Wired Magazine and apparently angered defendants Lee and Sapien, these two defendants seized [the Pulchritudinous Assets mail]."[51]  Plaintiff's assertion of retaliatory motive is entirely speculative and conclusory.  As stated in the last section, there is no evidence in the record that Lee took part in any censorship action or decision.  There is likewise no evidence that Shipman or Sapien harbored a retaliatory motive based on Plaintiff's past censorship complaints.

---

[48] *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).

[49] *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (quoting *Peterson*, 149 F.3d at 1144).

[50] *Peterson*, 149 F.3d at 1144 (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).

[51] Doc. 25 at 11.

As described below, the undisputed facts demonstrate that all five instances of censored mail were properly seized under the applicable prison regulations.  Therefore, Plaintiff has not demonstrated that, but for his complaints, Defendants would not have censored his mail. Defendants have demonstrated there is no genuine issue of material fact about whether they are liable for retaliation against Plaintiff for exercising his First Amendment rights.

### C.    First Amendment Violation Based on Censorship—Qualified Immunity

As for Plaintiff's claim that his First Amendment rights were violated when Defendants seized the five pieces of mail at issue in this case, Defendants invoke qualified immunity.  This changes the summary judgment burdens as follows:

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct.  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"[52]

As already discussed, Plaintiff has not responded to Defendants' summary judgment motion invoking qualified immunity.  Thus, he will fail to meet the two-part test set forth above unless his Verified Amended Complaint alleges sufficient facts to demonstrate that Defendants' conduct violated his First Amendment rights when they censored his mail, and that his right to receive those five pieces of mail was clearly established at the time of the censorship.

---

[52] *Est. of Beauford v. Mesa County*, 35 F.4th 1248, 1261–62 (10th Cir. 2022) (quoting *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018)) (citations omitted).

### 1.  Constitutional Violation

The Court first considers whether Plaintiff has demonstrated that Defendants violated his First Amendment rights by withholding the five pieces of mail at issue in this case.  "Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."[53]  The United States Supreme Court holds that prison regulations about incoming mail are analyzed under a reasonableness standard; they are "valid if [they are] reasonably related to legitimate penological interests,"[54] and are not "an 'exaggerated response' to such objectives."[55]  In applying this standard, courts look to the so-called *Turner* factors:

> (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives.[56]

These four factors also apply when determining whether a particular regulation is unconstitutional on its face or as applied in a particular case.[57]  Courts consider these factors with "'substantial deference' to prison authorities."[58]

---

[53] *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citations omitted).

[54] *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (alteration in original) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[55] *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Turner*, 482 U.S. at 87).

[56] *Jacklovich*, 392 F.3d at 426 (quoting *Turner*, 482 U.S. at 89–90).

[57] *See Frazier v. Ortiz*, 417 F. App'x 768, 774–75 (10th Cir. 2011); *Fogle v. Palomino*, 687 F. App'x 730, 733 (10th Cir. 2017).

[58] *Frazier*, 417 F. App'x at 774 (citing *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1991)).

Plaintiff does not bring a facial challenge to the KDOC regulations on prisoners' incoming mail.[59]  Instead, he brings an as-applied challenge to Defendants' censorship decisions. Defendants submit evidence that they censored the materials under KAR § 44-12-601 because they determined that the mail either posed a risk to the safety and security of the prison, or included sexually explicit material, as defined by K.A.R. § 44-12-313.  The Court considers each censorship decision in turn under the *Turner* factors.

### a.      *Us Weekly* **Drink Recipes**

Plaintiff asserts that seizing this magazine because it includes alcoholic drink recipes is "absurd because there is no rule against publications containing drink recipes and numerous other publications [that are] allowed . . . also contained the same advertisements in question."[60] Plaintiff's statement fails to meet his burden of showing a constitutional violation.  The Court has reviewed Defendants' in camera submission of the *Us Weekly* pages at issue and confirms that they contain alcoholic drink recipes.[61]  It is undisputed that alcohol is considered contraband for inmates in KDOC custody as an intoxicant and a security risk.  And Defendants have submitted evidence that alcohol-related materials such as drink recipes have been rejected from incoming mail on the basis that they can encourage inmates to make contraband alcohol. This showing demonstrates a valid and rational connection between the KDOC's regulation and the asserted legitimate governmental interest in maintaining security in Kansas prisons.[62]

---

[59] Indeed, Plaintiff's prior effort to facially challenge the KDOC's regulation prohibiting sexually explicit material was unsuccessful.  *See Sperry v. Werholtz*, 413 F. App'x 31, 40–42 (10th Cir. 2011).

[60] Doc. 25 at 11.

[61] Doc. 98 (submitted ex parte under seal).

[62] *See, e.g.*, *Jones v. Salt Lake County*, 503 F.3d 1147, 1156 (10th Cir. 2007) ("Prison security and safety are legitimate governmental objectives.").

Defendants have shown under the second factor that inmates can continue to exercise their constitutional rights because they are still allowed to subscribe to periodicals as long as they do not contain prohibited content under the regulation.[63]  Similarly, accommodating Plaintiff's right to receive mail including drink recipes would impact the safety and security of guards and other inmates by permitting information about using contraband that could put them at risk. Finally, ready alternatives to the KDOC policy do not exist—the least restrictive alternative is not required.[64]  Defendants have submitted uncontroverted evidence that KDOC lacks the staffing required to parse through each piece of mail and redact only offending pages, so the Court finds that the KDOC was justified in seizing the entire issue rather than only the drink recipes.

### b.    *Wired Magazine* DIY Weapons Article

Plaintiff asserts that seizing his December 2015 issue of *Wired Magazine* violated the First Amendment because Defendants did not state a specific reason why they seized it.  But this assertion in the Verified Amended Complaint is not supported by the record.  The notice of censorship informed Plaintiff that the issue was "rejected because contents of this magazine pose a threat to the safety and security of correctional facilities—DIY weapons."[65]

Defendants have also submitted evidence in support of their decision to censor this article under the *Turner* factors.  There is a clear link between the KDOC's interest in safety and security at the prison and its decision to withhold from an inmate an article about how to make weapons.[66]  As already discussed, Plaintiff continues to have access to periodicals so long as

---

[63] *See, e.g.*, *Sperry*, 413 F. App'x at 41.

[64] *Id.* at 42.

[65] Doc. 48-15 at 2.

[66] *See Jones*, 503 F.3d at 1156.

they do not violate the regulation.  Allowing Plaintiff access to this article would possibly threaten the safety of KDOC employees and other inmates.  And, no ready alternative exists given the KDOC's evidence that removing only the offending portions of a magazine would impose too great of a burden on staff.

### c.     *Wired Magazine* Terrorism Article

Plaintiff likewise asserts that seizing his April 2016 *Wired* issue violated the First Amendment because Defendants did not state a specific reason why they seized it.  The Court has reviewed Defendants' in camera submission of the pages identified by Defendants as violative of its mail policy, and confirms that they contain an article on radical terrorist propaganda from ISIS.[67]  This article includes numerous statements on social media by members and followers of ISIS expressing support for terrorism.  KDOC maintains that radical terrorist propaganda is rejected from incoming mail because it helps prevent radicalization of inmates, which could likely hinder their rehabilitation or lead to talking or planning of violent activity. The Court finds that the KDOC's decision to withhold this article from Plaintiff was in furtherance of the prison's legitimate penological interest in safety and security.  For the same reasons discussed above, the other three *Turner* factors are also met.

### d.     Pulchritudinous Assets

Plaintiff characterizes the Pulchritudinous Assets mail as a photograph he ordered out of a magazine "of a sexily dressed woman, but it was not nude or otherwise pornographic."[68] Defendants submitted the seized mail for the Court's review.  It appears to be a flyer or brochure. On one side is an array of photographs of women, primarily clad only in undergarments, bathing

---

[67] Doc. 101 (submitted ex parte under seal).

[68] Doc. 25 at 11.

suits, or short, tight clothing.  The other side contains ordering information and another

photograph.

Even assuming that Plaintiff has the requisite personal knowledge to aver in his Verified

Amended Complaint that the material in this mailing was not "pornographic," that is not the

standard under the governing regulation.  Instead, the regulation allows KDOC to seize material

that is "sexually explicit."   "Sexually explicit" is defined in K.A.R. 44-12-313 as follows:

> (b) The material shall be considered sexually explicit if the purpose
> of the material is sexual arousal or gratification and the material
> meets either of the following conditions:
>
> > (1) Contains nudity, which shall be defined as the depiction
> > or display of any state of undress in which the human
> > genitals, pubic region, buttock, or female breast at a point
> > below the top of the aerola is less than completely and
> > opaquely covered; or
> >
> > (2) contains any display, actual or simulated, or description
> > of any of the following:
> >
> > (A) Sexual intercourse or sodomy, including genital-genital,
> > oral-genital, anal-genital, and anal-oral contact, whether
> > between persons of the same or differing gender;
> > (B) masturbation;
> > (C) bestiality; or
> > (D) sadomasochistic abuse.[69]

Defendants submitted evidence that the mailing was seized because it included

photographs that emphasize the pictured women's buttocks, pubic region, or breasts, which are

less than completely or opaquely covered.  This meets the definition of "sexually explicit" under

K.A.R. § 44-12-313(b)(1).  Therefore, under the governing regulation, Defendants had a proper

basis to seize this mailing.

---

[69] K.A.R. § 44-12-313(b).

Defendants also submit evidence sufficient to satisfy the *Turner* factors.  Defendants submitted evidence that the KDOC ban on sexually explicit materials aims to prevent violence, sexual harassment, lewd acts, and sexual assaults within the prison and to promote offender rehabilitation.  Indeed, KDOC has submitted evidence that sexually explicit materials have historically resulted in increased sexual harassment of prison staff.  The Tenth Circuit has determined that this policy furthers the legitimate penological goal of protecting jail personnel and other inmates.[70]  Moreover, the Tenth Circuit described in detail why this regulation satisfies the *Turner* factors when it rejected Plaintiff's previous facial challenge to this regulation.[71]  The court's reasoning applies equally to his as-applied challenge to this piece of mail.

### e.  *The Target*

Finally, Plaintiff challenges Defendants' censorship of the book, *The Target*, by David Baldacci, on the grounds it posed a threat to the safety and security of the prison, citing specific pages of the book.  Plaintiff challenges the censorship decision, alleging that Defendants refused to state a basis for seizing the book and that the referenced pages did not include anything inappropriate or sexually explicit.  The Court has reviewed the page numbers cited in the notice, which Defendants submitted for in camera review, and finds that Plaintiff's descriptions of the contents of each page are either incorrect or patently misleading.[72]

Plaintiff characterizes page 2 of this book as "a dialog between two death row inmates in the medical wing of a fictional Alabama prison."[73]  While this may be true, he omits the substance of that dialog, which is prison escape.  Plaintiff contends that page 6 is "a dialog

---

[70] *Sperry*, 413 F. App'x at 40; *Jones*, 503 F.3d at 1156.

[71] *Sperry*, 413 F. App'x at 40–42.

[72] Doc. 103 (submitted ex parte under seal).

[73] Doc. 25 at 11.

between one of the inmates and a nurse about how long he had been incarcerated," but that dialog also includes a suggestion by the inmate character that violence would be justified against "Jews or Presbyterians or coloreds"—language that the KDOC determined promotes racially or religiously motivated violence, which is prohibited.  Plaintiff characterizes the remaining page numbers as merely dialog about the CIA, but the Court confirms on review that these pages also include a description of how a man violently incapacitated someone in a fight, a description of an inmate inappropriately sexualizing a prison staff member, a description of an inmate imagining sexual acts with a prison staff member, and a description of an inmate masturbating at the sight of a prison staff member.

Plaintiff cannot demonstrate that KDOC employees did not rationally apply the prison mail regulations to this book and reasonably determine that the content listed on these pages was prohibited.  For the same reasons explained above, Plaintiff is also unable to show that this censorship decision did not satisfy the *Turner* factors.

### 2.    Clearly Established

Assuming, *arguendo*, that Plaintiff could meet his qualified immunity burden of demonstrating that his constitutional rights were violated, he has not shown that Defendants' application of the prison mail regulation to the five pieces of mail at issue violate clearly established law.  "A right is clearly established for qualified immunity purposes if 'every reasonable official would have understood that what he is doing violates that right.'"[74]  This showing typically requires the plaintiff to identify "'an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct,' or 'the

---

[74] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[75]  "[P]laintiff bears the burden of citing to [the Court] what he thinks constitutes clearly established law," and the cited authority "must have placed the statutory or constitutional question beyond debate."[76]

Given Plaintiff's failure to respond to the motion for summary judgment, he has not met his burden of citing authority that his clearly established First Amendment rights were violated by the censorship decisions in this case.  Instead, the Court has cited to authority finding that the prison mail regulations here pass constitutional muster under the *Turner* factors, and the Court has determined that the censorship decisions in this case were permitted by the regulations and rejected his as-applied challenges.  The Court has located no on-point Supreme Court case or Tenth Circuit decision that demonstrates the unlawfulness of Defendants' alleged conduct here. Therefore, even if Plaintiff could show that his constitutional rights were violated by the censorship decisions, he could not show that his rights were clearly established at the time Defendants made those censorship decisions.  Accordingly, Defendants are entitled to qualified immunity on Plaintiff's remaining claim under § 1983 based on the First Amendment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Wildermuth, Lucht, Lee, Shipman, Booth, and Sapien's Motion for Summary Judgment (Doc. 93) is **granted**.

**IT IS SO ORDERED.**

Dated: August 2, 2023

---

[75] *George ex rel. Bradshaw v. Beaver County ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1258 & n.4 (10th Cir. 2022) (quoting *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019)).

[76] *Id.* (first quoting *Crane*, 15 F.4th at 1303; and then quoting *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021)).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE